## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**L. LEE WHITNUM,**
    **Plaintiff-Appellant,**

  :    **DOCKET NO. 3:17-CV-01362**

**vs.**

**THE TOWN OF WOODBRIDGE,**
**ROBERT B. CROWTHER (PERSONALLY**
**and PROFESSIONALLY), FRANK**
**P. CAPPIELLO (PERSONALLY and**
**PROFESSIONALLY),**
    **Defendants-Appellees.**

  :    **April 30, 2019**



### PETITION FOR
### WRIT OF MANDAMUS

1.    The plaintiff-appellant L. Lee Whitnum ("plaintiff") is seeking a Mandamus Order from the Second Circuit to compel Federal District Court Judge Janet Hall to:

    a.  Answer the Motion to Transfer / Disqualify on Judge Hall's relationship with Jane Emons which was filed more than 120 days ago on 11/28/2018 (Current Exhibit A).

| 11/28/2018 | 125 | MOTION to Transfer to Another District - *a district in New Jersey* by L. "Lee" Whitnum. (Whitnum, L.)  (Entered: 11/28/2018) |
|---|---|---|

Judge Janet Hall has ignored the above motion in order to protect her friend Jane Emons who must be cited into this case. Judge Halls' refusal to address this motion is to ignore the stated evidence and, is in contradiction to the rules of evidence.

2.    This litigant believes she should be granted the right to have a judge who is not biased.  It seems at the heart of all of Judge Hall's misinterpretation is the protection of former Judge Jane Emons, Judge Hall's personal friend.  Judge Hall is seemingly wearing blinders with three goals in mind:  A. To keep any evidence of Jane Emons' actions out of this case (Judge Hall did this by ordering the Amended Complaint be

further amended to remove Emons' actions ( interlocutory appeal #19-53 of her order

137 on the docket which is annexed as Current Exhibit E). This litigant had amended

her Complaint and this litigant was forced to remove all references to Emons from her

Amended Complaint. – actions that are pivotal to this case. Other less blatant evidence

of Judge Hall's motivation are: B. Prevent Jane Emons, and her alleged accomplice,

John Whalen from answering any deposition questions,  C. To prevent Jane Emons

from being citied in (( interlocutory appeal #19-51).  This litigant is asking to cite in Jane

Emons, as a defendant.  Many of these decisions have been ruled upon with either

blatant lies and the ability to amend the complaint to include Emons' actions is a

Interlocutory Appeal, please see (19--227).

3.     This litigant believes Judge Hall has employed selective blindness.  Case in point

in the attached recent order dated 3-22-2019 (Current Exhibit C) page 8, this judge

claims the following:

| 03/22/2019 | 200 | RULING: For the reasons stated above, Plaintiff's Motions for Reconsideration (Docs. No. 139 , 145 , and 153 ) are DENIED. The Plaintiff's Motion for Reconsideration (Doc. No. 147 ) is GRANTED IN PART. The defendants are ORDERED to submit an affidavit confirming that the copies of the protective orders, located at Exhibit C (Doc. No. 102 -1), pages 6-10, submitted in response to Whitnum's document requests, are complete and accurate. If the submitted documents are not complete and accurate, the defendants shall file a correction of any error along with a statement showing cause why the error should not result in sanctions. The defendants shall submit said affidavit or correction and statement by April 1, 2019. Signed by Judge Janet C. Hall on 3/22/2019. (Lewis, D) Modified on 3/27/2019 (Lewis, D). (Entered: 03/22/2019) |

This litigant highlights the following in the full written order which is annexed (Current

Exhibit C:

> However, Whitnum provides no support, in either filing, for a finding that there is
> new, previously unavailable evidence, to support her Motion to Cite in John
> Whalen and Jane Emons. Nor has Whitnum provided any basis to conclude that,
> in denying Whitnum's attempt to join parties to this case at this juncture, when
> motions to join parties were due by October 11, 2017, see Order (Doc. No. 79),
> the court committed a clear error or manifest injustice. The Motions for
> Reconsideration (Doc. Nos. 145 and 153) are denied.

4.      This is patently false and clearly the attached evidence was overlooked to protect

Jane Emons, Judge Hall's personal friend.  Judge Hall states, "Due by October 11,

2017!" An impossible benchmark, as this litigant did not get proof until October 29, 2018

– a year later.  The defense drags its feet and this litigant is punished for it? That is not

fair.

5.      Secondly, this litigant draws the Second Circuit's attention to the original motion

that was filed and the evidence submitted with it which was the newly disclosed police

report dated September 17, 2013 and produced in October 2018, on the penultimate

day of discovery.  It is the very same piece of evidence supplied to Judge Janet Hall in

the Motion for Reconsideration (Current Exhibit B with the attachment of Exhibit E).  For

this judge to state the following is outrageously false:

> "Whitnum provides no support, in either filing, for a finding that there is new,
> previously unavailable evidence, to support her Motion to Cite in John Whalen
> and Jane Emons"

6.      The Woodbridge Police report of the investigation prior to the unlawful arrest is

very clear of Jane Emons' involvement in the unlawful arrest. The following is cut

directly from the Motion for Reconsideration referring to Exhibit D of that Motion

(Current Exhibit B):

15.    … In the 2015 arrest for the violation of a protective order, a protective order that was not valid at the time of the arrest. The newly produced report of Judicial Marshal Kirchner and his prodding in August 2015 (Exhibit B), the two police officer defendants for arrest, is proof positive that Emons knew that there was no active protective order, that she knew the protective order was based on a bogus ring and run which she orchestrated in 2013. In 2015 she lied to Kirchner and he then lied to the Woodbridge police officers about the nature of the protective order. Emons did this through a third party Kirchner on purpose. She lied; he clearly unknowingly did her bidding. Emons needs to be cited in for her role in the 2015 arrest and the lie to Kirchner.

7.    The entire Motion for Reconsideration and the attached exhibits (Exhibit F) has

been annexed.  The evidence is contrary to the words of Judge Hall.  The evidence is

as clear as it can be and yet, to reiterate, Judge Hall states in her recent order:

However, Whitnum provides no support, in either filing, for a finding that there is new, previously unavailable evidence, to support her Motion to Cite in John Whalen and Jane Emons. Nor has Whitnum provided any basis to conclude that, in denying Whitnum's attempt to join parties to this case at this juncture, when motions to join parties were due by October 11, 2017, see Order (Doc. No. 79), the court committed a clear error or manifest injustice. The Motions for Reconsideration (Doc. Nos. 145 and 153) are denied.

A simple look at the motion for Reconsideration (Current Exhibit B) and specifically the

exhibits D and E in the motion proves that in 2015, a lie was told to Judicial Marshal

Kirchner by Emons and that lie was further told to the Woodbridge Police regarding the

protective order and that is was recently disclosed.

8.    A possible other motivation:  Judge Janet Hall may be protecting Emons out of

fear she may incur the wrath of Emons' powerful constituent group.  Emons is uber-rich

with a solid double digit millions net worth.  Emons' wealth, Emons' former status as a

judge, Emons' husband's power, this litigant believes, may be what motivates Judge

Janet Hall to not allow Emons to be compelled to answer questions, to not be cited

despite the evidence, and to issue the order to change the Amended Complaint to keep Emons out of it.

9.    During the February 2019 testimony Judge Janet Hall employs the judicial trick to fall on the schedule in order to avoid having to rule to allow Emons to be deposed. She also acknowledges Kirchner's role. Please read the attached transcript excerpt (Current Exhibit D pages 42 through 44.):

> THE COURT:...This case relates and these two defendants are sued for arresting you in 2015 based upon what I think you believe and you may be right but what you believe was a terminated protective order. In other words, a protective order that wasn't in effect so they had no basis to arrest you. No probable cause. And so that's what I would like you to focus on in the deposition for these two officers.

> MS. WHITNUM: But, Your Honor, there is, okay, maybe I don't have a strong legal argument to cite in John Whalen in 2015. But in 2015, jane Emons was wholly instrumental, the Woodbridge Police had already done an investigation that I did not ring her bell and run back in 2013. She put up Marshal Kirschner, and I didn't find this out until the penultimate day of discovery that she put up Marshal Kirshner who is a judicial marshal, to call up the Woodbridge Police Department. These poor guys I feel badly for them. I didn't mean to drag them into this. They were totally manipulated by Marshal Kirshner who was quite unabashed, according to Officer Karuther was put there by Jane Emons. These officers only knew what they were told. They are not telepathic. The problem is by not citing in Jane Emons, okay, by not citing, now should they have investigated when I was telling them you're wrong. There's no active protective order. This protective order was bogus from the get-go and based on an investigation that you guys had already concluded I was not guilty. They didn't believe me at the time. They believed people with position and authority. I'm a nobody. Jane Emons lied to Kirshner who then lied to the police officers. The police officers were negligent in not doing their investigation and believing me but you cannot, Your

Honor, you cannot not include Jane Emons and Marshal
Kirshner, Kirshner needs to be deposed. He was the one
who told the police officers that the protective order
was not based on what they had already investigated and
concluded –

**THE COURT:** Why didn't you depose them a year
ago?

**MS. WHITNUM:** Because I just got the document
the penultimate day of discovery. I have no way of
knowing Marshal Kirshner's involvement. I had no way of
knowing. Marshal Kirshner was put up to it --

**THE COURT:** I'm looking at an arrest warrant
application. I believe signed by Sergeant Cappiello, one
of the defendants. It is dated August 5, 2015. He
swears -- actually it is Officer Crowther being sworn and
deposed, et cetera, et cetera. Then he says paragraph 1
on Friday, July 31, 2015, this affiant received a call
from Robert Kirshner who is in charge of the Superior
Court operations. That he was notified by the victim
Jane Emons. I don't know. When you are charged in state
court, don't you get discovery? You never got a copy of
the warrant application?

**MS. WHITNUM:** Your Honor, that is another motion
that's coming. Okay. I never got any of the
documentation. When I was there to turn myself in they
gave me the arrest record. That report that you read
from I got it from him the penultimate day of discovery.
During discovery. I didn't have it. I don't know. Do
you think that when I went there --

**THE COURT:** I have to interrupt you. I
scheduled this for 30 minutes. I have a 12:00 conference
call in my chambers in a criminal matter so I have to
recess.

10.     To be clear, the protective order was based on the utter nonsense started by

Jane Emons, who claimed this litigant rang her bell and ran at "20 minutes to one" and

at 1:38 am on the early morning hours of June 22, 2013.  What this litigant is claiming is

an absolute lie and a criminal frame. Due to Emons power, charges were levied against this litigant. A protective order was based on the ring and run – this despite the fact that the Woodbridge Police had administratively closed the case on September 17, 2013 after a three-month investigation. Assistant Chief State's Prosecutor John Whalen picked up the case even after the case was closed. Whalen piled on additional charges and when asked by this litigant his motivation he stated the he was there for Jane Emons, his "buddy of 35 years since we were both prosecutors."

11.     The lie by Marshal Kirchner to the Woodbridge Police was instrumental to this litigant's arrest. Had the Woodbridge Police been told the truth by Marshal Kirchner, that the protective order was based on the ring and run, they would have believed this litigant and she would have avoided arrest as the Woodbridge Police was the investigative agency for the ring and run and determined on September 17, 2013 that there was no connection to this litigant and Jane Emons' doorbell.

12.     This is all clearly described in the attached evidence that was submitted with the Motion for Reconsideration. Since Judge Hall has selective blindness this litigant will spell it out again. Referring to the already submitted evidence, Kirchner states the following as told by the officer in his August 2015 report (Current Exhibit B sub-exhibit E), a report that was not given to this litigant until October of 2018. It states:

> 1. That on Friday, July 31, 2015, this Affiant received a call from Mr. Robert Kirchner who is in charge of Superior Court Operations for the State of Connecticut. Mr. Kirchner told this affiant that he was notified by the victim, Judge Jane Emons, that on Thursday, July 30, 2015, the victim received in her mailbox at her residence in Woodbridge, a document addressed to her with the return address of Whitnum, P.O. Box 7482, Greenwich, CT 06836.
> 2. That Mr. Kirchner told this Affiant that there is a "54-1K Order of Protection", which lists the victim as the Protected Person, and Lisa Whitnum-Baker, d.o.b. June 23, 1960, as the Respondent. Mr. Kirchner said that the victim has been harassed at her home in Woodbridge, Connecticut by Whitnum-Baker in the past,

and has been **arrested by the State Police for an incident that warranted this Order of Protection. This type of order specifically addresses harassment and stalking.** The order was signed by a judge and issued July 9, 2013 out of New Haven Superior Court, G.A. 23, reads in part, "Do not contact the protected person in any manner, including by written, electronic or telephone contact, and do not contact the protected person's home, workplace or others with whom the contact would be likely to cause annoyance or alarm to the protected person." A second similar order was issued out of Bridgeport Superior Court on October 25, 2013; it is signed by a judge and lists the same "Terms and Conditions of Protection".

3. That on Friday, July 31, 2015, this Affiant spoke with the victim who stated that on Thursday, July 30, 2015, her husband called and told her that when he retrieved the mail from their mailbox which is at the mouth of their driveway near the road, among the mail was a medium-sized manila envelope addressed to her. That when the victim's husband opened the envelope, he saw that it contained a multiple page legal document of an "Emergency Motion for Injunction". The document was dated July 27, 2015, and was supposedly filed in United States District Court-District of Connecticut.

13.    The bolded words above are the lie.  Drawing the Second Circuits attention to the

following exact words:

> **"arrested by the State Police for an incident that warranted this Order of Protection. This type of order specifically addresses harassment and stalking."**

This is a blatant lie that Judicial Marshal Kirchner, doing Emons' bidding, stated to the

Woodbridge Police.  The event that "warranted" the Order for protection was NEVER

the result of a State Police arrest for an "incident that warranted this Order of

Protection", but instead was the result of the harassment and stalking charge for the

bogus, June 22, 2013 ring-and-run – the very ring-and run the Woodbridge Police had

found <u>no link to this litigant</u>.

14.    To reiterate for clarity:  If Marshal Kirchner had told the truth, instead of lying or

being tricked into lying by Emons, the Woodbridge Police would never have arrested

this litigant (this ignored the fact that there was no active protective order at the time of

the arrest and the second fact that this litigant should never have been arrested for violation of the protective order for her assistant mailing court documents to a named defendant, something she is required by statute to do).

15.     To reiterate, the Woodbridge Police had determined on September 17, 2013 after a three month investigation that this litigant did not ring the bell and run at the home of Jane Emons. Despite that fact, John Whalen, Emons' friend picked up this case, piled on charges and continued the prosecution for three more years. This litigant was forced to take an Accelerated Rehabilitation for first time offenders rather than face trial. This is at the 41st court appearance after this litigant had tried to have more than six Motions to Dismiss heard but John Whalen would not allow them to be heard, burying the evidence which is a Brady Violation.

16.     In all, the bogus charges cost this litigant, in every possible way, from the destruction of her good name to four years of lost salary as a teacher as she could not work with pending charges.

17.     Discovery must continue as Emons and Marshall Kirchner's role are pivotal. For Judge Janet Hall to claim the following is outrageous. She is either not keeping up or she is displaying selective blindness to keep her friend Jane Emons out of the case.

> "Whitnum provides no support, in either filing, for a finding that there is new, previously unavailable evidence, to support her Motion to Cite in John Whalen and Jane Emons."

The new evidence is this very report that details Emons and Kirchner's role. It was not previously made available by the defendants or the defense, if it had been this litigant would have known it existed. This litigant is not telepathic.

18.     This litigant had gone to the Wooldridge Police Department and asked for all the police reports and she was never given this one which is an internal investigation.  This litigant cannot be held responsible for what she was never given until the penultimate date of discovery (October 2018).   Judge Hall stating the above is to reward the Defendants for being less than forthcoming.  Also, Judge Hall is holding this litigant responsible for the defendants' failure to provide all discoveries.

19.     This litigant feels forced to file a Petition for Writ of Mandamus as she feels this judge is quite simply not paying attention or purposefully wearing blinders in order to throw the case and keep her good friend, Jane Emons, out of harm's way. She may also have the added motivation of hurting this litigant.

**III.     Refusal to answer the Open Motion – more than 90 days old**.

20.     To reiterate:  Judge Janet Hall is motivated to protect Emons, she has refused to answer the Motion to Disqualify and the simple question of 'how well do you know Jane Emons' and to please transfer the case to another venue in Connecticut (or to another state) or to another judge in Connecticut who is non-biased and not personally acquainted with Emons or her husband.  This judge claimed in open court on February 5, 2019 hearing that she is impervious to intimidation and not throwing a case for friend and she sites her job security a reason.  Please see the excerpt (Exhibit B).

```
MS. WHITNUM: … These are powerful people and they are all
lawyers and they know the game. The only thing that's going
to get them to answer questions is someone who can peel the
layers of friendship, of camaraderie, of cocktail party
camaraderie and say to John Whalen, sir, this police report
differs from her phone records. Isn't it true, sir, that
you altered her phone records on your report 2013-213?
That's very, very hard. You're asking for the second
highest law enforcement person in the State to admit he
criminally framed a political candidate for a friend. That
is monstrously huge. I understand the situation you are in
```

which is why I asked you please, please, allow this case to be transferred to New Jersey or New York. It's too dangerous even for me. Please transfer this. You get to wash your hands of it. You keep your friendship circle. There's nobody mad at you. Everything is good. We need justice.

**THE COURT:** Do you know I have lifetime tenure?

**MS. WHITNUM:** I know that.

**THE COURT:** I don't care when people are mad at me. It is the beauty of the federal system. Unlike the state system. People are always mad at me. They don't like my rulings. I ruled against them. Why didn't I rule for them. It doesn't matter to me because, you know, I'm here and I will be here tomorrow and what people think is really not what drives a federal judge. I understand you don't agree with my rulings. And I could be wrong, you know, I'm not perfect but there's absolute. That's the beauty of the federal system. I just am not. I don't really care what people think. I hope they think I'm thoughtful and that I listen and that I spend time to try to figure out what's the right answer. Might not always get it right but I try. At the end of the day, that's all that matters to me…

21.    Hum, seems this judge doest protest too much.  As much as Judge Janet Hall insists that she is impervious to people being mad at her, there may be a much larger picture going on: Fear of the dreaded anti-Semitic label.   Emons is part of a powerful constituent group.  Emons and her friends during her failed judicial reconfirmation hearing on February 16, 2018, labeled Emons' detractors as "anti-Semites." This litigant believes that Judge Janet Hall, in the same way Judge Underhill was afraid, is afraid to rule anything against this powerful member of the Jewish Community.  The fear of the anti-Semitic label cuts across all other fears.  It is a phenomenon described in a 2004 Occidental Quarterly Kevin Macdonald PhD talks about this common practice

12

among member so the Jewish Community in an article *"Understanding Jewish Influence"* in the introduction Samuel Francis PhD writes:

> "What MacDonald offers largely explain why so many Jews
> have reacted so strongly to any perceived threat, why
> they tend to perceive even innocuous remarks and actions
> as threatening, and how they coordinate and mobilize
> financially, political, and public opinion recourse to
> crush what they perceive.  What his theory does not
> explain is why non-Jews put up with it and go along with
> it....."Jewish influence amounts to very little if those
> over who it is wielded recognize it and reject it."

22.     It is the same reason the press in Connecticut failed to report that Emons lack of judicial reconfirmation in 2018, a first in Connecticut's 275 year history, was due to her behavior but instead painted her detractors, many who were parents kept from their own children, as "anti-Semitic."

23.     For the history:  This litigant was a candidate for US Senate, US Congress and Governor was proudly against the US funding of Israel as counterproductive to the wellbeing of the United States. She believes Emons targeted her for that reason and used her power to hurt her in any possible way.  That power included the conspiracy with or the manipulation of the Woodbridge police to get an unlawful arrest.

**IV.     INFLUENCE PEDDLING SEEMS TO RUN THE CONNECTICUT JUDICIARY**

24.     As a minor political candidate, now retired, this litigant has suffered terribly in Connecticut, she believes, for stating the facts on Israel. Egged on by members of a powerful constituent group, the States Attorney, fought very hard to incarcerate this litigant. This litigant found herself facing 14 years in jail for 9 charges that were not crimes, or crimes orchestrated by Emons and/or Whalen. Crimes, she could prove she did not commit, but no judge would hear one of six motions to dismiss. The press failed

to cover the truth. This litigant fought hard not to go to prison and suffered 41 criminal court appearances before taking a plea deal for first time offenders rather than face trial in the lawless Connecticut court system. As a fledging candidate in the U.S. this litigant has suffered in every possible way for not regurgitating the AIPAC talking points. It is an unbelievable story for another day. Truly the only taboo in the U.S. is speaking of anything Israel related in less than glowing terms; you are either pro-Israel or an anti-Semite – no middle ground.

25.     This litigant has always stated that she believes Jane Emons' motivation was to hurt her in any possible way for her political beliefs.  Not only was this litigant kept from her husband, the financials never produced, conciliation unethically denied by Emons which was this litigant right by 46(b), and railroaded into divorce without a private conversion with own infirmed husband for 14 months leading up to the divorce. Railroaded into divorce and awarded not even a dime despite being married to a man worth $5 million. Emons, still not satisfied, next claimed this litigant rang her bell and ran and had her friend prosecute (Assistant Chief States Prosecutor John Whalen) this litigant up for 41 criminal court appearances and costing her 4 years of salary as a teacher (Whalen was fully aware of this fact). All this for an alleged crime that had been already "administratively closed" by the Woodbridge Police on September 19, 2013.

26.     This litigant believes Judge Janet Hall is doing her friend Emons a favor or Judge Hall may be afraid of offending Emons' powerful constituent group. In 2018, Emons was not reappointed as a judge, a first in Connecticut history for her role in keeping parents from their children and other violations.  Many people have described her as cruel. Despite, the press publications in Connecticut all reported that Emons wags the victim

of her detractors. Some even reported she was the victim of "antisemitism" one author a Mr. Pazniokas stating "first they come for the Jews." It was a ludicrous reference and charge, the parents and litigants aggrieved were not motivated by anti-Semitism. Emons was the victim of her own actions.

27.    Representative Minnie Gonzales said it best during the February 16, 2018 judicial reconfirmation hearing. She pointed out that despite more than 20 judges present for their re-nomination hearing on February 16, 2018, the mountains of complaints were about Judge Jane Emons. "I received email after email and all were complaining about you," said Rep. Minnie Gonzales to Judge Jane Emons. Gonzales is referring to the many people, not just Whitnum, who have been hurt by Emons and who have complained about her. Gonzales also refuted the anti-Semitic claims stating to Emons about Emons, that none of the letters mentioned "your religion or culture."

## V.    THE FORCED ALTERING OF THE AMENDED COMPLAINT TO REMOVE ANY REFERRENCE TO JANE EMONS EVEN THOUGH SHE WAS INTERGRAL TO THE UNLAWUL ARREST

28.    Currently under interlocutory appeal at the Second Circuit is this litigant's fight for the ability to amend the complaint to encompass the discovery provided on the penultimate day of discovery should have been litigant's right. Judge Janet Hall issued an Order (appeal #19-53) (Current Exhibit F). In this litigant's Amended Complaint she told the history but Hall's order was to remove all references to Emons from her Amended Complaint. There was no good reason provided as there is no good reason other than prejudice. This goes directly to the gravamen of this Petition for Mandamus, which is to compel Judge Janet Hall to address #125 on the docket. Judge Hall has refused to detail her relationship with Jane Emons, a woman whom this litigant is

seeking to site into the case (since the production of the document detailing her lie to Kirchner).  Hall has refused to detail her relationship.  Why won't Judge Hall answer this open motion?

## II.  LAW AND ARGUMENT

The writ of mandamus can also be issued in a mandamus proceeding, independent of any judicial proceeding. Generally, such a petition for a mandamus order is made to compel a judicial or government officer to perform a duty owed to the petitioner.

## III.  CONCLUSION

30.  The gravamen of the motion to transfer is the request that Judge Hall detail her relationship with Jane Emons and answer the motion.

| 11/28/2018 | 125 | MOTION to Transfer to Another District – *a district in New Jersey* by L. "Lee" Whitnum. (Whitnum, L.) (Entered: 11/28/2018) |
|---|---|---|

It is a simple question more than 90 days old and Judge Hall refuses to answer it.  The Second Circuit must please compel:

1.  Judge Janet Hall, answer the above open motion, and when she does, her obvious admittance that she is Emons' friend should require recusal.

31.  In a fair judicial system, the additional interlocutory appeal at the Second Circuit must be allowed to be answered before Summary Judgement replies as it effects the outcome of this case.  To reiterate: Judge Hall refuses to cite in Emons, she refuses to allow the Amended Complaint to encompass cause of action effecting Emons' and role and citing in, she refuses to accept newly discovered discovery (motion to open) and to allow this litigant to act on it.

32.     This litigant is asking that this court issue an order to: "compel a judicial or
government officer to perform a duty owed to the petitioner. To answer the follow open
motion #125. And if there is an admitted friendship between the two women, compel
Janet Hall to step down as her clear prejudice is unacceptable.

Sincerely,

s/L. Lee Whitnum

## CERTIFICATION

I hereby certify that on April 22, 2019, a copy of the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing.

Kirsten & Tallberg, LLC
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067

Notice of this filing will be sent by e-mail to all parties by operation of the Court's

electronic filing system or by mail to anyone unable to accept electronic filing. Parties

may access this filing through the Court's system.

Sincerely,

s/L. Lee Whitnum

## **Exhibits for Petition for Writ of Mandamus**

CURRENT EXHIBIT A
Motion to Transfer dated November 28, 2018

CURRENT EXHIBIT B
     Motion for Reconsideration (136) Of Motions (106 & 107)
     Exhibit A – Revised Order of Protection dated 10-25-2013
     Exhibit B – Original Order of Protection dated 7-9-2013 based on bogus ring-and-run
     Exhibit C – Court documents that state, with open end, Protective orders expire in one year
     Exhibit D – Woodbridge Police report administratively closing the ring-and-run. 7-2013
     Exhibit E – Woodbridge PD dated 8-5-15 which shows Kirchner and Emons input

CURRENT EXHIBIT C
     The 3-22-19 Order

CURRENT EXHIBIT D
     The transcript dated February 4, 2019

CURRENT EXHIBIT E
     The Order which limited the Amended Complaint to exclude all references of Jane Emons.

# CURRENT
# EXHIBIT
# A

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 20 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page20 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 1 of 14

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **L. LEE WHITNUM** | : | |
| **Plaintiff** | : | **No. 3:17-cv-1362(MPS)** |
| **v.** | : | |
| **Town of the Woodbridge, et al.** | : | **November 28, 2018** |

## MOTION TO
## TRANSFER

1.      This litigant is requesting that this case be transferred out of Connecticut to Federal Court in New Jersey as this litigant does not believe, based on experience, that it is possible to get a fairy trial in Connecticut.. If the Hon. Janet Hall refuses to transfer, this litigant believes it would be appropriate for Judge Janet Hall to answer some questions, please, on whether the Court can non biased regarding disgraced former judge Jane Emons – and also, please touch upon the Complaints of Judicial Misconduct against Federal Judge Underhill. This litigant has had a six year extreme contentiously relationships with Emons and Underhill.  Really transfer is appropriate as this litigant believes a fair trial in this matter cannot be had in this state.

2.      Ms. Hall lives in the New Haven Area as does Emons.  Judge Hall was probably aware of the Billboard on Route 91 about Emons and no-doubt she drew a conclusion about Emons' lack of reconfirmation.  As the highest ranking federal judge, Hall must be aware of this litigant's six-year contentious battle with Underhill.

https://www.leewhitnum.com/underhill.html

3.      Earlier this month Judge Kari Dooley stepped down based clearly on a working relationship with Jane Emons. This was the result of this litigant receiving subpoenaed evidence by the State Police and was surprised to see "Dooley, Kari" on the cc list from

February 22, 2018! This litigant brought this to Judge Dooley's attention and she stepped down.

4.      This is a reminder of a very serious problem this litigant has faced over-and-over again: can this litigant get a fair trial *anywhere* in the State of Connecticut. In three court cases this litigant has been denied the Requests for Production to make her case against Emons or the Statewide Prosecution Bureau. Clearly the judges are protecting one of their own and the state players. Those three cases have been dismissed for various contrived reasons and they are hanging in limbo as this litigant fights to bring them back. All of this is the result of judges who are clearly biased in favor of the state players.

5.      Jane Emons has proven to have no hesitation in going behind the scene to call on police agencies and other judges in order to get her way. Emons has clearly habitually demanded they do her bidding. Officer Thomas Keily of the State Police is, to date, the only police officer who refused to arrest on demand or do Emons' bidding. The most extraordinary example of this is the report by Office Crowther of the role of JUD Marshal Kirchner who allegedly lied to the Woodbridge Police about the reason for and the status of the protective order, it was that lie that brought about the unlawful arrest as defendants based their arrest for violation of protective order based on Kirchner's words clearly egged on by Emons and her husband. If with full knowledge - that in conspiracy, without negligence, or perhaps both

6.      This is the gravamen of this case but the situation of the powerful sticking up for the powerful in violation of the stated law, has presented itself over and over again. This litigant believes as soon as Judge Janet Hall was given this case she was probably

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 22 of 123
Case 19-1468, Document 1-2, 05/16/2019, 2563749, Page22 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 3 of 14

called by Jane Emons as Emons has no problem going behind the scenes to get her way. She may also have sent a friend to do her biding.

7.      This litigant would like to make the following fact clear: Emons is NOT the victim of her detractors, she is a predator and this litigant is not the only person whose life Emons has destroyed. Support for Emons seems to be drawn on two fronts: racial lines as the editorial by Joette Katz. And judges, who are clearly sympathetic to Emons or scornful of this litigant. This based on the circulated file and scuttlebutt - that is documented on the record - by three judges and counting. The scuttlebutt is so rampant that this litigant asked, in a recent motion, for the disqualification of Judge Povodator based on his admittance of being privy to hearsay. More about that later.

8.      This litigant has suffered a great deal. It has turned out to be six years and counting of full-time legalities trying to fix all the ills and fallout caused by Emons and Underhill in this litigant's life – if it is at all possible. Is it possible to get past the destruction of this litigant's life and her good name? Justice is the only cure and that is what this litigant is asking for. Make the guilty pay. Expose the truth – no matter how many wealthy political factions of our state kick and scream. This litigant does not believe it is possible. Judge Janet Hall has to live here – she had to socialize with peers. And doing it by the book is difficult when it means standing up for someone who is as unpopular as this litigant. This motion gets this judge off the hook. Please transfer.

9.      The Court should not take offense at this. We are all only human and this litigant has so many examples of Emons behind the scenes antics she scarily knows where to start. At her 2-16-2018 reconfirmation hearing Sen. Kissel was very clear that Emons had talked to him about the alleged ring-and-run. That bogus charge is the reason for

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 23 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page23 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 4 of 14

this case.  This litigant has always maintained that she never rang the bell and ran at

the home of then Judge Jane Emons on June 22, 2013 or at any time in her life.  This

litigant runs for public office and her life is an open book.  If she has something to say,

she says it.  What would ringing a bell and running accomplish?

10.     Here is the televised testimony of Emons' reconfirmation hearing; all of the single

spaced quotes are from this testimony.   http://ct-n.com/ctnplayer.asp?odID=15000

        February 16, 2018 aa JUDICIARY COMMITTEE 10:00 A.M. PUBLIC HEARING

        SENATOR KISSEL (7TH): … Let me move on to something else that came to my
        attention in speaking with you yesterday and that's the first time we ever met. Is
        that correct?

        HONORABLE JANE B. EMONS: Yes, absolutely.

        SENATOR KISSEL (7TH): You had communicated to me and we don't need to go
        into specific cases but there was at least one instance where a disgruntled
        litigant contacted you in the middle of the night at your house. Would you, without
        naming the case or the individual, can you explain what happened there?
        Because, again, I've had constituents who are upset with me for one reason or
        another on occasion they have come to my house and I have to tell you once my
        personal space with my children and my wife is invaded, it gets a little troubling. If
        someone wants to stand here in the LOB and say, Senator Kissel, you're the
        worst senator in the world. I guess I'm putting myself out there and that's fair
        game but once they come into the area that I consider safe for my family, then
        it's a little different, and so tell me what at least -- there was at least once
        instance and if you could just without naming the individuals of the case, what
        happened?

11.     Emons had clearly talked to Sen. Kissel about this litigant before her

reconfirmation hearing!  This is classic Emons and her behind the scenes manipulation.

She probably talked with all of them.  This litigant makes clear:  This litigant did call

Jane Emons on May 15, 2013 after being kept from her own husband and unlawfully

denied conciliation.  This litigant pled guilty and paid the disorderly conduct fine of $85,

she was a first time offender. Why would a 53-year-old housewife, a teacher call distraught. What would make someone crack like that? Injustice and grief. At that point this wife had been kept from her infirmed husband by Emons for 14 months this litigant paced every night not knowing if her husband was dead, alive, strapped down, grieving for her, drugged. All contact denied. On July 16, 2012 Emons quashed the conciliation which was court ordered by the Robert Villacis the clerk.

12. The day after the phone call, this litigant apologized and paid the $85 disorderly conduct charge. Because Emons wanted more charges pressed she allegedly orchestrated the ring-and-run allegation on month later on June 22, 2013. This litigant's phone records exonerated her as she was two hours south in New York City that night. But that didn't stop Emons from talking to Kissel; about it. Despite the fact that the Woodbridge Police on 9-19-2013, determine that this litigant did NOT ring Emons' bell on June 22, 2013. Stating the following in the police report of that day:

> "Based on the lack of further details or other pertinent information it is recommended that active investigation of this incident be suspended at this time and that this investigation be considered Administratively Closed."

Emons still talked with Kissel about the ring and run as Kissel states: "come into the area that I consider safe for my family." She goes on to talk about the phone call first but Kissel's choice of words, is proof positive she also bent his ear on the alleged ring and run. An event this litigant did not do, could prove she did not do, and yet no judge in the Norwalk courthouse would hear a motion to dismiss. This litigant has made the evidence public at:

https://www.leewhitnum.com/proof.html

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 25 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page25 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 6 of 14

13.    This litigant's phone records proved she never rang Emons bell and ran but that did not stop law enforcement under Emons' alleged direction from putting this litigant through 41 criminal court appearance across 3 ½ years and adding to what is now six years of legal hell in the quest for justice.  This litigant is still smeared all over the internet as a woman who stalked a judge – only that never happened – this litigant can prove it never happened but no one is listening.  This litigant worked her entire life, keeping her good name clean, going to college and Harvard for a masters degree only to have her good name and her life ruined by Jane Emons and powerful judges, cops and state employees willing to do her bidding.  The press certainly hasn't helped in their refusal to print the truth just regurgitating over and over gain "Whitnum was arrested for stalking a judge."  Heartbreaking – an event that never happened. This litigant can prove it never happened and yet no one - not one judge and not one member of the press will listen. The proof of is even filed online for the public to read:

https://www.leewhitnum.com/proof.html

14.    The scuttlebutt is rampant.  In the Povodator press release of the corresponding motion, Povodator admits on the record of being privy to scuttlebutt.  Judge Hall is mentioned, only in passing, in this press release which is published.  Please read it, as the scuttlebutt and hearsay is a real issue.

https://patch.com/connecticut/greenwich/whitnum-asks-judge-povodator-recusal-jane-emons-whalen-case

Before this litigant moves onto more proof of Jane Emons behind the scenes antics, she would like to talk about Emons' practice of keeping loved ones apart (as she did in the case of this wife and her husband) until people without priors break the law with a desperate phone call to beg for access or in the case of parents, custodial interference.

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 26 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page26 of 123
Case 3:17-cv-01362-JCH Document 125 Filed 11/28/18 Page 7 of 14

You seek the court to get justice and what you get is abuse. This litigant wishes she could go back in time and hire a Blackwater team to rescue her husband. She believed in justice, what a mistake.

15. The bottom line is that Emons abuses. Here is another example of a man who was unlawfully kept from his own children by Emons for 15 months before bringing in all kinds of state agencies. This is Emons' own words from the testimony:

> Having said that, as I mentioned in this paragraph, I received an ex parte custody application from Mr. Manchanda's ex-wife indicating in it that Mr. Manchanda called the Guilford police and indicated to them that he was on his way to Guilford with an armed bodyguard to retrieve his two young children and bring them to New Jersey for the weekend.
> Now, my memory, if it's correct, something like a year -- 15 months, perhaps -- where he had not seen his children. I granted the ex parte application giving the ex-wife custody and that began the process. Prior to coming to court, Mr. Manchanda filed two grievances, that he also copied to recipients such as the CIA, the FBI, the Hauge Convention, the U.S. Commission Against Torture, the New Haven FBI, the New York FBI, and a number of people, some media references and people that I certainly don't know and that was the first two. They came for a hearing. He was nothing but a consummate gentleman in the court at all times. There were never any disagreeable words. He came to an agreement with his ex-wife that he would do supervised visitation at Southern Connecticut State University to reestablish a relationship with the children. That's as far as we got. I approved and so ordered his agreement

16. The FBI! The Hauge Convention! Well if Emons hadn't kept this Mr. Manchanda from his children for 15 months perhaps he would not have needed to call in the CIA, The FBI, US Commission against Torture, etc. Finally Emons approved the agreement, well only after so many agencies were clearly bothered. Injustice begets more and more legal actions. What a herculean effort it took. Why did she keep a man from his

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 27 of 123
Case 19-1468, Document 1-2, 05/16/2019, 2585749, Page27 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 8 of 14

children? Why indeed.  Emons loves her job. In her own words.  This litigant believes –
she loves it a little too much.

17.     Emons kept the four-year-old Myers child who was finally mysteriously returned
to his father after two years! That child never would have been returned had Emons not
been taken out of power.  Children kept from parents – how incredibly cruel.   The
testimony of one the Myers' kids attorneys and Emons violation of general statutes are
available:

https://www.youtube.com/watch?v=uvy3S8lAsXo

Atty. Greenan

https://www.youtube.com/watch?v=TFQZWm37jSM

Atty. Garlinghouse

18.     This litigant's situation, where Emons allegedly goes behind the scenes and pulls
the necessary strings, maliciously and predatorily to get her way. Others were not as
outspoken as Mastrangelo but they make their experience known to the legislators
which is one of the reasons why Emons is no longer a judge.

19.     The silent ones, the shell-shocked ones are the most heartbreaking.  In the
attached letter this litigant received from a sweet woman clearly traumatized who now
lives in Texas. She fled Connecticut due to Emons. If this judge questions the veracity,
this litigant would be happy to provide the contact name to this judge under seal.  For
the purpose of this motion this woman will be called "Texas Mom." Emons manipulated
the Branford Police using her power which greatly harmed this poor woman,
traumatized her so much so, she fled the State of Connecticut and now lives in Texas.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 28 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2583749, Page28 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 9 of 14

In this case the Branford Police did Emons' bidding.  Here is Texas Mom's story in her own words:

> **Subject:**
> Perversions and abuses of power
> **Message:**
> I admire your spirit, your perserverance and your heart. Emons had the Branford PD cross city lines, into New Haven, against court ordered residency, and aid my ex in his kidnapping of my, then 5 year old daughter. The police action was done as a personal favor. Emons then put in place over a month long ex parte order (meant to last only 2 weeks). My daughter was then completely isolated with her father, who has a extensively documented violent and psychotic history and had been recently committed. Emons did this against my daughter's court ordered Yale PhD's advice. Emons then ORDERED that no one involved was allowed to ever speak to Yale. Yale attempted to protect my daughter to the best of their ability, but were thwarted by Emons. Clifford Beers family advocates and care coordinators also attempted to assist my daughter. My daughter was severly traumatized and remains a changed and fearful child. Dcf refused to enter her fathers home, stating that he was "too aggressive" and not trusting their safety to the Branford PD as escort. Additionally, Ct state troopers removed my ex's pistol permit due to his threats to the state to shoot state troopers. The story sounds insane, but unfortunately seems not to be an isolated case. I now reside in Texas, having left CT due to the systemic abuse my family was suffering under Emons "justice." If I can be of any assistance to any of the families, or yourself, you are very welcome to any help I can provide. I would be happy to produce any documentation needed to keep Emons from harming another child or family

20.    So the Branford Police on "special favor" from Emons destroyed Texas Mom's life in the same way Emons destroyed this litigant's life and the lives of so many others. This is evidenced by the fact that the first time in 275 years a Superior Court judge was not rubber stamped into power based on the receipt of more than 150 private emails to legislators asking that Emons not be reconfirmed. In the words of one senator "very credible letters."  Emons is no longer a judge because so many people complained about her.  It took a Herculean effort to get her out because there are no checks and

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 29 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page29 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 10 of 14

balance in Connecticut.  Multiply the experiences of this poor woman above and this litigant's experience by a hundred plus people who wrote to their legislators complaining about Emons.

21.    The Branford Police (in the case above) did Emons' bidding as a special favor. Cappiello, Crowther, Marshal Kirchner, and John Whalen (in this case) also did Emons' bidding – even judges. This was all contrary to the stated law, devoid of true facts but that didn't stop law enforcement from terrorizing this litigant clearly at the behest of Jane Emons.  Officer Keily of the state police wasthe only law enforcement officer who refused to do Emons bidding.  This brave and strong young man, put Emons right in her place. He repeatedly refused to arrest this litigant for going to the courthouse for her divorce instead encouraging her to modify the bogus protective order to allow court access. (The protective order was based on the ring and run – an event allegedly orchestrated by Emons for the sole purpose of getting a protective order).

22.    Clearly the officers of the police agencies are easily intimidated, like Office Keily – as he refused to do Emon's bidding and he called Emons on her predatory behavior. Officer Keily is the only Officer seemingly in the state of Connecticut who did not do Emons bidding on demand.  The defendants certainly did, and they need to pay the price especially since they were the law enforcement agency that determined that the ring and run was bogus. Stating: on 9-19-2013:

> "Based on the lack of further details or other pertinent information it is recommended that active investigation of this incident be suspended at this time and that this investigation be considered Administratively Closed."

They knew exactly what was going on and they allowed themselves to be manipulated and part of it. John Whalen allegedly purposefully altered his report #2013-0213 for

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 30 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page30 of 123
Case 3:17-cv-01362-JCH Document 125 Filed 11/28/18 Page 11 of 14

Emons. Her powers of persuasion, or that of her husband and other powerful players –

her friends, must be very strong. This litigant is giving Judge Janet Hall a way out.

Please send this case to New Jersey. No one will live in the same region as Emons

and know her socially. Incidentally, this litigant adds, whether the defense went along

due to money, manipulation, or ideology, it goes toward the conspiracy allegation.

23. Here is another example of Emons behind the scenes: the Mastrangelo case

where he talks about Emons' alleged manipulation of Judge Keneflix - a behind the

scenes manipulation. .

> HONORABLE JANE B. EMONS: Okay. That is not my
> recollection. When I entered into that pretrial, I
> entered into that pretrial with an understanding that
> both sides would engage in a discussion about formulating
> some type of agreement whereby we would try to put a
> mechanism in place to reunify Mr. Mastrangelo with his
> children. There is no question about that. My statement
> to Mr. Mastrangelo about not getting what you want -- I
> don't believe I used those words but I'm sure that I did
> tell him that it was not likely that a judge, after
> hearing evidence, would order three 17-year-old children
> to attend this camp. I thought that that request was
> unreasonable. At that point, my memory is that shortly
> after that discussion we realized that we were not able
> to come to a meeting of the minds for the purposes of
> furthering this pretrial discussion. Mr. Mastrangelo
> proceeded to Judge Kenefict's room and 34 days later
> evidence ended and Judge Kenefict wrote his decision.
> SENATOR GOMES (23RD): Entering that camp, was that what
> he was referring to in here when he said 4-day intensive
> program?
> HONORABLE JANE B. EMONS: Yes.

And then later....

> SENATOR GOMES (23RD): … I see the statements that you
> have made about he should have been able to see his
> children and that just goes alone with restoring his
> parental rights because from the beginning it says here
> he had no involvement with his children for 7 years
> despite having joint legal physical custody since they

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 31 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page31 of 123

Case 3:17-cv-01362-JCH Document 125 Filed 11/28/18 Page 12 of 14

were 6 years old, so something went on between him and
his wife if he had joint custody since they were 6 years
old, going back 10 years, and now he has nothing. All of
this doesn't make much sense.

24.    Of course, Senator Gomes, it doesn't make sense.  If something doesn't make

sense it usually means there is another agenda going on.  This litigant truly believes in

the case of Emons, she is a sadist who gets off on keeping loved ones apart, screaming

at people, filing rulings where no motion has been entered, banging down the gavel like

a psychopath, feigning judicial indignation in order to avoid the motion in front of her,

precluding pro-se litigants from filing motions, telling people to shut up, engaging in

endless litigation so she can scream, and violate stated rights. Manipulating behind the

scenes, smear campaigns, special favors, etc.

25.    People know when they are being treated unfairly and Rep. Minnie Gonzales

made it clear that out of all 21 judges there for reconfirmation the huge amount of

complaints letters was about Emons. She also made it clear she had not read any letter

that mentioned Emons race or culture as Emons had played the race card claiming her

detractors were anti-Semitic or crazy. It is important to note that at the end of the

testimony against Emons, Rep Minnie Gonzales pipes in about the fact that Emons was

wrong about "pre-trial" in the Mastrangelo case (it was actually during trial) and also that

Emons was also wrong about the $50,000- allegation by attorney Mark Sergeant.  This

litigant believes Emons may have committed perjury, but that is another story for

another day. She certainly lied about this litigant.

26.    This litigant is desperate to get on with her life – and justice is the only cure.  This

judge is the highest rank federal judge in the state and essentially Stefan Underhill is

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 32 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page32 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 13 of 14

below her despite the fact that no one has the power to fire him – an act that desperately needs to happen.  Emons and Underhill have terrorized this litigant for six long years. This litigant believes both are predators and this litigant has 15 complaints of judicial misconduct again Underhill.  This judge is well aware of Underhill; her subordinate, they would have to be in such a small federal system.   This case must be transferred out of state.  Too much has happened here.  This litigant needs justice.

27.     Please transfer this matter to New Jersey.  If not, please address the following questions in your order:

1.     Can you please detail your relationship with Judge Jane Emons?

2.     Do you dine with Emons, or have you?

3.     Do you socialize with Emons or her husband at any organization - religious, town or otherwise,

4.     Have you worked, socialized or in any way been associated with Emons or her husband?

5.     Do you believe you can be non-biased?

6.     Have you been exposed to gossip or a file on this plaintiff?

7.     Have you read the complaints against Underhill?

Thank you.

Sincerely,

L. Lee Whitnum

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 33 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page33 of 123
Case 3:17-cv-01362-JCH   Document 125   Filed 11/28/18   Page 14 of 14

## CERTIFICATION

I hereby certify that on November 28, 2018 a copy of the foregoing was sent via US mail to the following:

KARSTEN & TALLBERG, LLC - Attorneys At Law
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067
860-233-5600

Philip Miller
Office of the Attorney General
Attn. Philip Miller
55 Elm St.
Hartford, CT


Sincerely,

s/L.Lee Whitnum

CURRENT
EXHIBIT
B

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 35 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page35 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 1 of 24

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **L. LEE WHITNUM BAKER,** | **: 3:17-cv-01362** |
| **Plaintiff,** | **:**         **:** |
| **v.** | **:** |
| | **:** |
| **THE TOWN OF WOODBRIDGE, et al** | **: December 26, 2018** |
| **Defendants.** | |

### MOTION FOR RECONSIDERATION (136) of MOTIONS (106 & 107)

1. THIS JUDGE STATES: "Further, the Motions are essentially duplicative of Motions previously made, see Motions (Doc. Nos. 75 & 77) which were both denied, see Order (Doc. No. 79)." This is outrageous and this judge is overlooking the fact that Judge Kari Dooley has proven herself to be biased and has been disqualified. Any ruling she made prior is to be discounted as she is caught in her bias. The record of the motion details Judge Dooley's bias and her recusal on Nov. 1, 2018 fact.

| 11/01/2018 | 114 | MOTION to Transfer/Disqualify/Recuse Judge by L. "Lee" Whitnum. (Attachments: # 1 Exhibit State Police report where Judge Dooley was a recipient of an email)(Whitnum, L.) (Entered: 11/01/2018) |
|---|---|---|

2. This judge continues with her outrageous assessment stating:

> "There is nothing in the Motions or the Replies to the Opposition to these Motions (Doc. No. 118) that would support granting the Motions or reversing the prior rulings of this court."

Outrageous! This litigant proved a relationship between Judge Dooley and Jane Emons. Jane Emons had an active role in the 2015 arrest. She lied to Marshal Kirchner who then repeated the lie. She is directly responsible and this judge's refusal to cite her in is prejudice. Citing Dooley is also bias.

3. Judge Dooley was caught and her prejudicial prior rulings are therefore not grounds for this judge to even claim that the issue has already been adjudicated. By whom a judge with proven bias?

4. In addition, Judge Shea in recent discovery seems to be biased in his failure to alert this litigant he had received word of a discovery report from the Sprint Corporation. Please see the Motion for Order filed on December 27, 2018 on this issue and the motion for transfer of the same date.

1

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 36 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page36 of 123
Case 3:17-cv-01362-JCH Document 153 Filed 12/26/18 Page 2 of 24

5. The new information of prejudicial Judge Dooley's step down is relevant. This judge cannot rely on the past and must now please make mention of the facts that have previously been ignored. The fact that Judicial Marshal Kirchner made a report to Officer Crowther and was admittedly Emons' mouthpiece. Address the merits directly and please don't tell me again that "Judge Dooley already ruled on that. That was then, her prejudiced exposed, and this is now. Lying is unacceptable. Judge Dooley should have made her relationship with Emons clear from the get-go. Please be fair.

6. Marshal Kirchner's report was newly presented as part of the 68 pages that were turned over by the defense on the last day of discovery, September 30, 2018. In August 2015 Jane Emons allegedly lied to a judicial marshal to get him to prove the Woodbridge Police to make the arrest. This is fact and this judge must take it into consideration, please address the merit of that fact/argument clearly.

7. This litigant cites this case law for reconsideration as the following: This judge needs to address this issue on the merits and not on the ruling of Judge Dooley as there exists a "need to correct a clear error or prevent manifest injustice," *Virgin Atlantic Airways v. National Mediation Bd*. This Woodbridge Police in their negligence were either lied to, or knew full-well – either way it goes to one of the causes of action. The denial of discovery by this judge makes it more difficult, but without a doubt the Woodbridge Police should never have arrested this litigant.

8. Background: This litigant has made it abundantly clear in prior motions:

    a. There should never have been a protective order issued for the June 22, 2013 ring-and-run as this litigant's phone records proved she was in New York City that night. This litigant has always maintained that Jane Emons and John Whalen allegedly orchestrated the ring and run.

    b. Secondly, the first protective order and the modified both (Exhibit A and Exhibit B) contained no end date and they therefore were therefore expired in one year – at the time of the August 2015 arrest there were no active protective orders as Judge Arnold's protective order expired on October 25, 2014. Please see Exhibit C which is the statute to which this litigant relied (the paragraph entitled: "Length of the Restraining Order" which is located on the last page of the pamphlet). There was no active protective order at the time of the arrest.

    c. Thirdly: this litigant is required by statute to send all court related documents to all defendants. How can sending two court documents on the same day to a named defendant be a violation – not one but *two violations?* That is insane. And,

    d. Fourthly, the Woodbridge Police had already conducted an investigation of the June 22,

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 37 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page37 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 3 of 24

2013 ring and run and determined that there was no criminal wrong doing by this litigant. Please see Exhibit D the last line claims:

> "Based on the lack of further details or other pertinent information it is recommended that active investigation of this incident be suspended at this time and that this investigation be considered Administratively Closed."

9.   Despite the above, the Statewide Prosecution Bureau in the form of John Whalen stepped in to prosecute a case that had already been closed by another police agency! To make their case John Whalen allegedly altered this litigant's phone record on his report #2013-0213 as this litigant's true phone records, obtained via federal subpoena differed than Whalen's report. This litigant has come to believed that John Whalen's role is as Emons' henchman as he was quite openly there to prosecute at the behest of Jane Emons – his "buddy of 35 years" this even after another police agency had deemed the case "administratively closed."

10.   Kirchner's role in the Arrest Report (Exhibit E) is the gravamen of this case and Officer Crowther admits Kirchner's words and stated motivation for Emons. Crowther did not investigate this litigant's statements that there was no protective order. He made no mention of it. He did not even view the correct protective order. He arrested on the words of Judicial Marshal Kirchner and Judicial Marshal Kirchner had been enlisted and obviously lied to by Jane Emons. For this direct relationship, Emons needs to be cited in for her role and action in the August 2015 arrest as her role, and the facts are above dispute – it is fact.

11.   Before examining the specifics of Exhibit E, this litigant wishes to point out that former judge Jane Emons has a history of making behind the scenes demands to law enforcement, and to judges; she gets others to do her bidding like Whalen and Kirchner. She apparently loves shaking that judicial title. She is uber wealthy and apparently very used to getting her way. She has no problem calling upon her judge friends to violate statutes for her and yet if the tables were turned would she lift a finger for these judges? Doubtful. She caused all of this, and she could end this tomorrow, but she won't.  Although she appears as a mild mannered, innocuous, little old lady, she is anything but,

3

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 38 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page38 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 4 of 24

to those people before her in the courtroom – her alleged cruelty and manipulation has been her undoing as she was not reconfirmed amid so many complaints. The People know when they are being treated unfairly. Federal judges suffer no financial downside to throwing a case – but there are other downsides, complaints to the Second Circuit. This litigant states: Emons is not worth protecting. Her lack of reconfirmation was well deserved especially for keeping loved ones apart.

12.     These Judges mistakenly believe they are defending one of their own.  Judge Kari Dooley, a young woman – a new federal judge, via a public Complaint of Judicial Misconduct could be tainted forever as people will believe this litigant because the <u>facts speak for themselves</u>. Why? For Jane Emons – who this litigant believes is a piece of garbage who unlawfully kept children from their own parents  Emons is not worth protecting – look at how much police, administrative and court time for her amusement and personal vendettas. Emons is a predator and her lack of reconfirmation amid the mountain of complaints – the most in Connecticut history, are proof. She allegedly orchestrated the ring and run and if Kirchner had stated so accurately (the June 22, 2013 ring and run), the reason for the protective order is in the transcript of arraignment dated 9-7-13 (Exhibit F), the Woodbridge police would have suspected the truth as they were the investigating agency for the bogus ring-and-run. Perhaps the Officers were browbeat into it by Emons' powerful friends. Put the blame where blame is due, regardless of title or bank account. Emons must be cited in for her role. To not do so, smacks of bias

13.  That being said, it is without dispute that in August of 2015 Emons demanded this litigant's arrest through Marshal Kirchner and the narrative provided by Officer Crowther:

> 1. That on Friday, July 31, 2015, this Affiant received a call from Mr. Robert Kirchner who is in charge of Superior Court Operations for the State of Connecticut. Mr. Kirchner told this of and that he was notified by the victim, Judge Jane Emons, that on Thursday, July 30, 2015, the victim received in her mailbox at her residence in Woodbridge, a document addressed to her with the return address of Whitnum, P.O. Box 7482, Greenwich, CT 06836.
> 2. That Mr. Kirchner told this Affiant that there is a "54-1K Order of Protection", which lists the victim as the Protected Person, and Lisa Whitnum-Baker, d.o.b. June 23, 1960, as the Respondent. Mr. Kirchner said that the victim has been harassed at her home in

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 39 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page39 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 5 of 24

Woodbridge, Connecticut by Whitnum-Baker in the past, and has been arrested by the State Police for an incident that warranted this Order of Protection. This type of order
(This is page 1 of a 4 page Affidavit)

14.      In Exhibit E, Mr. Kirchner lied when he told Officer Crowther that there is a "54-1K Order of Protection," we know this from the direct quote above and Exhibit A, a second page the protective order, the modified on, was a JD-CL-99. The defense in their discovery failed to provide a copy of the correct protective order given to the police. If it was Holden's protective order it was obsolete as it was modified in October 25, 2013 by Judge Arnold and that was the most recent protective order in place. The most recent protective order is a JD-CL-99.

15.    Whichever protective order was handed to the Woodbridge Police by Kirchner – it came from Jane Emons. Without being able to see it we have no way to know as Judge Hall has prematurely, and quite absurdly, in light of the proof of Judge Kari Dooley's bias, closed discovery. A travesty.

16.    Either way if it is Holden's protective order dated 7-9-2103 or Arnold dated Oct. 25-2013 both protective orders had expired as they were both good for only one year based on statute. Please see (Exhibit C) the paragraph about "Length of the Restraining Order.."

17.    In the order Mr. Kirchner said:

> "...that the victim has been harassed at her home in Woodbridge, Connecticut by Whitnum-Baker in the past, and has been arrested by the State Police for an incident that warranted this Order of Protection. This type of order..

Well the only arrest by the State Police was for the May 15, 2013 telephone call. That was not the reason for the protective order. The arraignment the Statewide Prosecutor's Office is clear the protective order is for the ring-and-run (Exhibit F). If Kirchner had told the truth, to the Woodbridge Police, Officer Crowther in August 2015 would said, "The June 22, 2013 ring and run? We investigated that and there was no criminal wrongdoing by Whitnum. Maybe Whitnum is telling the truth, maybe there is no active protective order." To repeat:  In August 2015, Emons lied to Kirchner and Kirchner then lied to the Woodbridge Police which led to the arrest. The Woodbridge Police admittedly relied on Kirchner to make their arrest report, please see report (Exhibit E).  If Jane Emons were rightfully cited in, this case might settle. If not we are looking at years of public appeals. Discovery must continue and face-to-face deposition of Emons, Whalen and Kirchner allowed. If not please provide a merit argument.    Sincerely, L. Lee Whitnum.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 40 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page40 of 123

Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 6 of 24

# Exhibit A

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 41 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page41 of 123

Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 7 of 24

**ORDER OF PROTECTION**
JD-CL-099   Rev. 10-13
C.G.S. §§ 29-25, 29-32, 29-33, 29-36i, 29-36k, 46b-38c(d)(e),
46b-3Jnn, 53a-28(f), 53a-36, 53a-42, 53a-217, 53a-217c,
53a-223, 54-1k 18 U.S.C. §§ 922(g)(9), 2265

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

| | | |
|---|---|---|
| ☐ Protective Order   ☐ Family Violence | ☐ Criminal Case | Superior Court GA 2 - Bridgeport |
| ☐ Standing Criminal Protective Order | ☒ Other 54-1K | |
| ☐ Restraining Order After Hearing | ☐ Ex Parte Restraining Order | Case Number F02B CR13-0139857-T |

☐ This order is sealed from the public    ☐ All information about the protected person is confidential

☐ The protected person's address information is not disclosable

## Protected Person

| Last name | First name | Middle | Date of birth | Sex | Race |
|---|---|---|---|---|---|
| Emons | Jane | | 12 / 11 /1950 | F | White |

| Home address | City | State | Zip |
|---|---|---|---|
| Wherever She May Reside | | | |

| Mailing address   ☐ Same as above | City | State | Zip |
|---|---|---|---|
| | | | |

| Work address | City | State | Zip |
|---|---|---|---|
| | | | |

## Respondent *(Defendant)*

## Respondent Identifiers

| Last name | First name | Middle | Date of birth | Sex | Race |
|---|---|---|---|---|---|
| Whitnum-Baker | Lisa | | 6 / 23 /1960 | F | White |

| Address | Height | Weight | Eyes | Hair | Phone |
|---|---|---|---|---|---|
| 01 Summer Street, Apt. 404 | | | | | (323-)804-0779 |

| City | State | Zip | Distinguishing features/other identifiers |
|---|---|---|---|
| Stamford | CT | 06901 | |

**Cautions/Weapons** *(if information is available):*

☐ Allegedly possesses one or more firearms
☐ Allegedly holds a permit to carry a pistol or revolver.
☐ Allegedly possesses ammunition.
☐ Other: _____

Relationship to protected person *(Present or former)*

☐ Spouse or party to a civil union
☐ Protected person's parent
☐ Intimate cohabitant
☐ Parent of common child
☒ Other: non-dv

## Terms and Conditions of Protection

You, the Respondent, must follow all the orders and conditions checked or indicated by "X" below:
☒ Surrender or transfer all firearms and ammunition.
☒ Do not assault, threaten, abuse, harass, follow, interfere with, or stalk the protected person. (CT01)
☒ Stay away from the home of the protected person and wherever the protected person shall reside. (CT03)
☒ Do not contact the protected person in any manner, including by written, electronic or telephone contact, and do not
contact the protected person's home, workplace or others with whom the contact would be likely to cause annoyance or
alarm to the protected person. (CT05)
☐ Other: _____

Additional terms and conditions are on the following pages:

☐ General Protection Order Notifications, JD-CL-098
☒ Additional Orders of Protection, JD-CL-100
☐ General Restraining Order Notifications (Family), JD-CL-104

| This order remains in effect until: | ☐ Further order of the court. | Expiration date *(if applicable)* / / |
|---|---|---|

☒ The court had jurisdiction over the parties and the subject matter, and the respondent was provided with reasonable notice
and opportunity to be heard. This order shall be enforced, even without registration, by the courts of any state, the District
of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial,
or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

☒ State law provides penalties for possession of firearms, ammunition, or electronic defense weapon (Conn. Gen. Stat.
§§ 53a-217(a)(4) and 53a-217c(a)(5)). Federal law also provides penalties for possessing, transporting, shipping, or
receiving any firearm or ammunition while subject to a qualifying protection order and under the circumstances specified
in 18 U.S.C. § 922(g)(8).

| By the Court | Name of Judge   (Arnold, J.) | Signed *(Judge, Assistant Clerk)* | Date signed 10/25/13 |
|---|---|---|---|

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 42 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page42 of 123

Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 8 of 24

**ADDITIONAL ORDERS
OF PROTECTION**
JD-CL-100   Rev. 10-13
C.G.S. §§ 29-28, 29-32, 29-33, 29-36i, 29-36k, 46b-38c(d)(e),
46b-38nn, 53a-29(f), 53a-36, 53a-42, 53a-217, 53a-217c,
53a-223, 54-1k, 18 U.S.C. §§ 922(g)(9), 2265

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

Superior Court **GA 2 - Bridgeport**

| | | |
|---|---|---|
| ☐ Protective Order   ☐ Family Violence | ☐ Criminal Case | |
| ☐ Standing Criminal Protective Order | ☒ Other | Case number **F02B CR13-0139857-T** |
| ☐ Restraining Order After Hearing | ☐ Ex Parte Restraining Order | |

☐ This order is sealed from the public        ☐ All information about the protected person is confidential

☐ The protected person's address information is not disclosable

## Protected Person

| Last name | First name | Middle |
|---|---|---|
| Emons | Jane | |

## Respondent *(Defendant)*

### Respondent Identifiers

| Last name | First name | Middle | Date of birth | Sex | Race |
|---|---|---|---|---|---|
| Whitnum-Baker | Lisa | | 6/ 23 /1960 | F | white |

You, the Respondent, must follow all the orders and conditions checked or indicated by "X" below:

☐ You may return to the protected person's home one time with police to retrieve belongings. **(CT14)**
☐ If the protected person has moved out of the home of the respondent, the respondent shall permit the protected **(CT15)**
person to return to the respondent's home on one occasion, with police, to retrieve the protected person's
belongings.
☒ Stay 100 yards away from the protected person. **(CT16)**
☐ This order also protects the protected person's minor children. **(CT19)**
☐ This order protects animals owned or kept by the protected person. **(CT31)**
☒ Other: The defendant shall be able to enter & exit the Stamford JD Courthouse at 123 Hoyt Street, Stamford,

CT during normal business hours of operation to conduct reasonable & legitimate court business

related to her pending civil court matters. This includes access to the clerk's office, the law library &

those courtrooms where her pending matters have been assigned on various dates & times for the

purposes of trials, motion hearings &/or pretrial conferences. At no time shall the defendant initiate

or seek to initiate any contact with the victim while upon or in the court premises. The defendant

shall refrain from entering the third floor of the court facility unless authorized or summoned to do

so by court marshals or personnel solely for the purposes of litigating matters in her pending cases.

## Temporary Child Custody and Visitation *(issued under Section 46b-15)*

☐ The court has jurisdiction to issue a temporary custody order regarding the children listed below under the **(CT20)**
Connecticut Uniform Child Custody Jurisdiction and Enforcement Act, Connecticut General Statutes § 46b-115
et seq., and the court awards temporary custody of the following child(ren) to the protected person:

| | Name | Sex | Date of Birth | | Name | Sex | Date of Birth |
|---|---|---|---|---|---|---|---|
| 1 | | | | 4 | | | |
| 2 | | | | 5 | | | |
| 3 | | | | 6 | | | |

☐ Respondent has visitation as follow: _____ **(CT21)**

☐ Respondent does not have visitation rights. **(CT22)**

Additional terms and conditions are on the following pages:

☒ Order of Protection, JD-CL-099
☐ General Protection Order Notifications, JD-CL-098
☐ General Restraining Order Notifications (Family), JD-CL-104

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 43 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page43 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 9 of 24

# Exhibit B

Case 3:17-cv-01362-JCH  Document 211  Filed 05/17/19  Page 44 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page44 of 123
Case 3:17-cv-01362-JCH  Document 153  Filed 12/26/18  Page 10 of 24

**ORDER OF PROTECTION**
JD-CL-099  Rev. 10/10
C.G.S. §§ 29-28, 29-32, 29-33, 29-36i, 29-38k, 46b-38c(d)(e),
46b-38nn, 53a-28(f), 53a-36, 53a-42, 53a-217, 53a-217c,
53a-223, 54-1k, 18 U.S.C. §§ 922(g)(8), 2265; PA 10-144

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

☐ Protective Order  ☐ Family Violence
☐ Standing Criminal Protective Order
☐ Restraining Order After Hearing

☐ Criminal Case
☒ Other __54-1K__
☐ Ex Parte Restraining Order

Superior Court G.A. 23 New Haven

Case Number **N23NCR130139857S**

☐ This order is sealed from the public   ☐ All information about the protected person is confidential
☐ The protected person's address information is not disclosable

## Protected Person

| Last name | , First name | , Middle | Date of birth | Sex | Race |
|---|---|---|---|---|---|
| Emons | : Jane | . | 12/ 11 / 1950 | F | White |

| Home address | | City | | State | , Zip |
|---|---|---|---|---|---|
| Where ever she may reside | | : | | | |

| Mailing address | ☐ Same as above | City | | State | . Zip |
|---|---|---|---|---|---|

| Work address | | City | | State | Zip |
|---|---|---|---|---|---|

## Respondent (Defendant)

### Respondent Identifiers

| Last name | , First name | , Middle |
|---|---|---|
| Whitnum-Baker | : Lisa | |

| Date of birth | Sex | Race |
|---|---|---|
| 6 / 23 / 1950 | F | White |

| Address |
|---|
| 101 Summer Street, Apt. 404 |

| Height | Weight | Eyes | Hair | Phone |
|---|---|---|---|---|
| | | | | (323) 804-0779 |

| City | State | Zip |
|---|---|---|
| Stamford | : CT | : 06901 |

| Distinguishing features/other identifiers |
|---|

Cautions/Weapons (If information is available):
☐ Allegedly possesses one or more firearms
☐ Allegedly holds a permit to carry a pistol or revolver.
☐ Other: _____

Relationship to protected person (Present or former)
☐ Spouse or party to a civil union
☐ Protected person's parent
☐ Intimate cohabitant
☐ Parent of common child
☒ Other: __Non-DV__

## Terms and Conditions of Protection

You, the Respondent, must follow all the orders and conditions checked or indicated by "X" below:

☒ Surrender or transfer all firearms.
☒ Do not assault, threaten, abuse, harass, follow, interfere with, or stalk the protected person. (CT01)
☒ Stay away from the home of the protected person and wherever the protected person shall reside. (CT03)
☒ Do not contact the protected person in any manner, including by written, electronic or telephone contact, and do not
   contact the protected person's home, workplace or others with whom the contact would be likely to cause annoyance or
   alarm to the protected person. (CT05)
☒ Other:  __Stay 100 yards away from the protected person__

Additional terms and conditions are on the following pages:
☐ General Protection Order Notifications, JD-CL-098
☐ Additional Orders of Protection, JD-CL-100
☐ General Restraining Order Notifications (Family), JD-CL-104

This order remains in effect until:  ☐ Further order of the court.   Expiration date (if applicable) / /

☒ The court had jurisdiction over the parties and the subject matter, and the respondent was provided with reasonable
   notice and opportunity to be heard. This order shall be enforced, even without registration, by the courts of any state, the
   District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265). Crossing state,
   territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).
☒ State law provides penalties for possession of a firearm or electronic defense weapon (Conn. Gen. Stat. §§
   53a-217(a)(3) and 53a-217c(5)). Federal law also provides penalties for possessing, transporting, shipping, or receiving
   any firearm or ammunition while subject to a qualifying protection order and under the circumstances specified in 18
   U.S.C. § 922(g)(8).

| Name of Judge | Signed (Judge, Assistant Clerk) | Date signed |
|---|---|---|
| By the Court | | 1/9/13 |

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 45 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2563749, Page45 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 11 of 24

# Exhibit C

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 46 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page46 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 12 of 24

---

## Domestic Violence Programs

### *Shelter • Information • Referrals*

Domestic Violence programs are located throughout the State of Connecticut. The programs provide a 24-hour hotline, information, referrals, and shelter to victims of domestic violence.

### Statewide Domestic Violence Hotline
### 1-888-774-2900

**ADA Notice**
The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at *www.jud.ct.gov/ADA/*.

**Disclaimer:** This publication has been put together by the Judicial Branch as a public service and under the provisions of section 46b-15b of the Connecticut General Statutes. It is based on the Connecticut General Statutes in effect at the time of publication. This information is not intended as a substitute for getting legal advice from a Connecticut attorney. You are responsible for any actions you take on your own behalf. The clerk's office may assist you with procedural questions; however, the staff cannot act as your attorney or give legal advice and are not responsible for any errors or omissions in these procedures. If you need more information or assistance, you should either contact an attorney or read the appropriate sections of the Connecticut General Statutes and the Connecticut Practice Book.

Copyright © 2015 State of Connecticut Judicial Branch

**JDP-FM-142 (Rev. 1-15)**

# *Restraining Orders:*

# How to Apply for Relief from Abuse



# www.jud.ct.gov

### State of Connecticut Superior Court

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 47 of 123
Case 19-1468, Document 1-2, 05/16/2019, 2563749, Page47 of 123
Case 3:17-cv-01362-JCH Document 153 Filed 12/26/18 Page 13 of 24

## The Forms You Need to Apply for a Restraining Order

Fill out an Application for Relief From Abuse form (JD-FM-137), and an Affidavit – Relief From Abuse form (JD-FM-138).

If you want temporary custody of your children, fill out an Affidavit Concerning Children form (JD-FM-164). If the respondent is your spouse or someone you have a civil union with, or you live with the Respondent and have a dependent child who also lives with you, and you would like to ask the court to make additional orders of maintenance, check the box on the Application for Relief From Abuse form (JD-FM-137) that says that, and fill out the Supplemental Affidavit and Request for Orders of Maintenance form (JD-FM-233). You also need to fill out a Restraining Order Service Respondent Profile form (SMC-2), so that the State Marshal can find and deliver the papers to the Respondent.

**Note:** The person who fills out the Application for Relief From Abuse form (JD-FM-137) is called the "Applicant" in the restraining order process.

The person the Application for Relief From Abuse form is filed against is called the "Respondent."

## Application Procedures

You must give the filled-out forms to the court clerk. The Application and Affidavits must be signed in front of a clerk, notary public or lawyer.

The Application and Affidavits will be reviewed by a Judge. When the Judge reviews the application you may be asked by the Judge to testify in court about why you are asking for the restraining order.

## Fees

You do not have to pay court fees to file the Application or for any motion to change or extend the order. The fee for delivery of the Application (known as service) and any orders issued without a hearing (ex parte) will be paid for by the Judicial Branch.

## After the Judge Rules on the Application

If the Judge grants your request for a restraining order, the clerk's office will process the papers and give you two (2) copies of the:
• Order of Protection form (JD-CL-99) and, if appropriate
• Additional Orders of Protection form (JD-CL-100) and Orders of Maintenance form (JD-FM-234)

The clerk will also return to you the original:
• Application for Relief From Abuse form (JD-FM-137)
• Affidavit – Relief From Abuse form (JD-FM-138)
• Affidavit Concerning Children form (JD-FM-164)

The clerk will also give you the:
• Order and Notice of Court Hearing form (JD-FM-140)
• General Restraining Order Notifications form (JD-CL-104)
• Restraining Order Service Respondent Profile form (SMC-2) if you have not already received one

You should keep one of the copies of the Order of Protection form (JD-CL-99) and Additional Orders of Protection form (JD-CL-100), if ordered, with you at all times and the other copy of the orders in a safe place.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 48 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page48 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 14 of 24

Any ex parte orders granted by the Judge will last no more than fourteen (14) days; they can be extended later at the hearing.

The clerk will send a copy of the order or information in the order to law enforcement within forty-eight (48) hours.

## Delivery to the Respondent (Service of Process)

To make sure that the Respondent knows about the restraining order, if the court ordered one, and about the hearing date, bring all of the forms the clerk gave you to a State Marshal or any proper officer for delivery to the Respondent. (The clerk or someone at a Court Service Center can explain to you who a "proper officer" is). You may get a current list of State Marshals from the clerk's office or the Judicial Branch web site at www.jud.ct.gov. At some courthouses, a State Marshal is at the courthouse at certain times during the day to help with service.

The Restraining Order Service Respondent Profile form (SMC-2) is needed so that the State Marshal can find and deliver the papers to the Respondent. It is very important to give the State Marshal as much information as you can about how to find the Respondent.

The forms must be delivered to the Respondent at least five (5) days before the hearing date. If you do not know where the Respondent lives or cannot give enough information about how to find the Respondent, the State Marshal may not be able to find the Respondent to deliver the papers and your protection might be limited.

After the State Marshal delivers the forms, the original forms must be returned to the clerk's office so that the clerk can schedule the court hearing. It is recommended that the forms be returned to the clerk's office at least two (2) working days before the scheduled hearing date.

## Firearm Restrictions

Firearm restrictions apply to Respondents who are subject to orders of protection. A notice of the firearm restrictions is printed on the General Restraining Order Notification form (JD-CL-104).

## Testimony by Other Means

Before the hearing, you may file a motion asking that your testimony be taken in a different place, away from the Respondent. The Judge may order the use of videoconferencing or another way for you to give testimony. If you want to request this, you should file a motion with the court as soon as possible before the hearing.

## The Court Hearing

You must go to the hearing if you want the court to give you a restraining order, if it hasn't given you one already, or to extend the restraining order if it already gave you one. During the hearing you will be able to tell the Judge why you want the restraining order or why you want to extend one.

If you think you need more security when you are in court for the hearing, contact the clerk's office or the Court Service Center where the hearing will be.

On the day of the hearing and before going in front of the Judge, you and the Respondent must meet separately with a Family Relations Counselor (FRC) from the Court Support Services Division. There will be a sign-up sheet in the area of the courthouse where the FRC has the meetings. A Judicial Marshal can tell you where that is. The FRC will ask for information about any existing court orders, possession of firearms or permits, history of the relationship, and information on child-related matters. The FRC may make recommendations and may refer you to other agencies for other services. At the end of the meeting you and the Respondent will go to the courtroom to wait for your hearing.

Case 3:17-cv-01362-JCH  Document 211  Filed 05/17/19  Page 49 of 123
Case 19-1468, Document 1-2, 05/16/2019, 2563749, Page49 of 123
Case 3:17-cv-01362-JCH  Document 153  Filed 12/26/18  Page 15 of 24

Witnesses or evidence that will support your claims should be brought to the hearing.

If the court is closed on the scheduled hearing date, the hearing will be held on the next day the court is open and any ex parte order will stay in effect until the hearing is held.

## After the Hearing

If the restraining order is granted by the Judge, you will get two (2) copies of a new Order of Protection form (JD-CL-99) and, if ordered, a new Additional Orders of Protection form (JD-CL-100) and Orders of Maintenance form (JD-FM-234). A copy of the order(s) will be given or mailed to the Respondent by the clerk.

The clerk will send a copy of the order(s) or the information in the order(s) to law enforcement within forty-eight (48) hours.

You should keep one of the copies of the Order of Protection form (JD-CL-99) and, if ordered, a new Additional Orders of Protection form (JD-CL-100) and Orders of Maintenance form (JD-FM-234) with you at all times and the other copy of the orders in a safe place.

## Change of Address

If you move after the court issues the restraining order, contact the clerk's office to find out how to update your information.

## Length of the Restraining Order

The new Order of Protection, and Additional Orders of Protection if ordered, are good for one (1) year, unless the Judge orders a different length of time. If Orders of Maintenance were made, they are good for a maximum of 120 days. It is important to make sure that you understand the order and know how long each part of it lasts. Ask someone at the Court

Service Center or Clerk's Office to help if you do not understand what the orders say or how long they will remain in effect.

About five (5) weeks before the end of the restraining order, the Office of Victim Services will mail you a letter to the address listed in the order, or your new address if you gave it to the court, telling you when the restraining order will end.

## Violating the Restraining Order

If the Respondent did not follow any part of the order you should contact the police immediately and file a complaint.

## Extending the Restraining Order

If you want the restraining order to continue after the period ordered by the court, you must file a Motion to Extend with the clerk's office. To keep the order from running out, you should file the motion at least two (2) to three (3) weeks before the restraining order ends.

After the motion is filed, the clerk will schedule a hearing, and return the motion to you for delivery to the Respondent. Delivery may be made by first-class mail to Respondent's last known address. You cannot extend or modify the Orders of Maintenance.

On the hearing date, the same court procedures apply as described in "The Court Hearing" section of this brochure.

---

**For more information contact:**

**Office of Victim Services**
**1-800-822-8428**
225 Spring Street
Wethersfield, CT 06109
**www.jud.ct.gov/crimevictim**

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 50 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page50 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 16 of 24

# Exhibit D

Run Time: 15:00

Page 1 of 2

# Woodbridge Police Department

4 Meetinghouse Lane, Woodbridge CT 06525

(203) 387-2511

**SUPPLEMENTARY** [X]

## CASE/INCIDENT REPORT

| CFS NO. | DAY | INCIDENT DATE | TIME | DATE OF RPT | TIME OF RPT | TYPE OF INCIDENT | | INCIDENT CD | INVESTIGATING OFFICER | BADGE NO |
|---|---|---|---|---|---|---|---|---|---|---|
| Y300010304 | 7 | 06/22/2013 Thru 06/22/2013 | 01:38 | 09/17/2013 | 13:47 | SUSPICIOUS ACTIVITY | | 028 | Officer DeMatteo, Thomas R. | 002 |

| DIVISION | DIVISION NO. | REFERENCE DIVISION | REFERENCE DIVISION NO. | CASE X-REFERENCE | UNIT ID | TYPIST | DATE TYPED | TIME TYPED |
|---|---|---|---|---|---|---|---|---|
| | | | | | 113 | TRD0167 | 09/17/2013 | 13:47 |

| STREET NO. | STREET NAME AND TYPE | APARTMENT NO / LOCATION | INTERSECTING STREET NAME AND TYPE | STATUS | TOWN CD |
|---|---|---|---|---|---|
| | | | | Closed | 167 |

| OFFENSE | LOCAL X-REF CODE | IBR CODE | ATT/COMP | LOCATION |
|---|---|---|---|---|
| Supplemental Investigation | 8326 | INF | Completed | Other/Unknown |
| Suspicious Person/Vehicle/Incident | 8305 | INF | Completed | Residence/Home |

STATUS CODE C=COMPLAINANT V=VICTIM A=ARRESTEE J=JUVENILE H=OTHER M=MISSING W=WITNESS O=OFFENDER D=DRIVER S=SUSPECT P=POLICE OFFICER T=TOT

| STATUS | NAME | SEX | RACE | D.O.B. | | TELEPHONE | ADDRESS | OP STATE & NO. |
|---|---|---|---|---|---|---|---|---|
| H | EMONS, JEFFREY | M | W | 10/20/1953 | Bus | (203) 468 - 3213 | | CT |
| H | Whitnum-Baker, Lisa | F | W | 06/23/1960 | Cel | (323) 804 - 0779 | 101 Summer St Stamford Apt #: 404 CT | CT |
| | | | | | Cel | (203) 692 - 5027 | | |
| H | New Haven Superior Court G.A. # 23 | | | | Bus | (203) 789 - 7455 | 121 Elm St New Haven Ct | |
| H | Sprint Nextel Corporation | | | | | | 6480 Overland Pkwy Overland Park KS | |

1=NONE 2=BURNED 3=COUNTERFEIT/FORGED 4=DAMAGED/DEST 5=RECOVERED 6=SEIZED 7=STOLEN 8=UNKNOWN 9=IMPOUNDED/FOUND T=TOWED E=EVIDENCE A=ABANDONED

| CODE | QTY. | DESCRIPTION | BRAND | MODEL | YEAR | STATE | REG | MAKE | MODEL | COLOR | VIN/SERIAL NO. | EST.VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E | 1 | Telephone records obtained via Ex Parte O | | | | | | | | | | |

This investigation continued as follows.

On August 2, 2013 the writer received by mail from the Sprint/Nextel Corporation a telephone information package, assigned Sprint Case Number 2013- 202577, in compliance to their receipt of the Ex Parte Order. Upon completion of investigative use, this correspondence was placed into Evidence using Tag # 8088.

A review of these records revealed that only two telephone calls were made from telephone number (203)-692-5027 twelve minutes after this reported incident time (0138 Hrs). The first call was placed at 0150 Hrs, 33 seconds and lasted 34 seconds. The second call was placed at 0151 Hrs,19 seconds and lasted for a duration of 32 seconds. Both of these calls were placed to telephone number 1(413)-923-8536, which

| OFFICER SIGNATURE | SUPERVISOR SIGNATURE | SUBSCRIBED &SWORN BEFORE ME: NOTARY |
|---|---|---|
| DET | Sgt. | THIS _____ DAY OF _____ YR._____ |

Report #: 1300010304 - 00017052 Cont.                                                                                                Page 2 of 2

Run Time: 15:00

Woodbridge Police Department

4 Meetinghouse Lane, Woodbridge  CT 06525

(203) 387-2511

SUPPLEMENTARY    X

### CASE/INCIDENT REPORT

was determined through an open source computer search to be a wireless mobile telephone listed to the Northampton, Massachusetts telephone exchange, which is not known to belong to or be associated with the complainant.

Further review of these records indicated that the cell tower location information for when these calls were made was not provided in the correspondence. The writer placed several telephone calls to Sprint Security agent Rundquist, the identified contact person in correspondence sent by the telephone carrier. On August 28, 2013 the writer was finally able to speak with Rundquist and apprise her of this omission. She stated that as the Ex Parte Order lacked specific legal verbiage in its body, i.e. did not specifically include the legal phrases, "Probable Cause", "specific & articulable facts" or cite Federal law 18USC2703(d), it was the Sprint Corporations legal opinion that they did not need to provide any additional information.

The writer then prepared a second Ex Parte Order application, which was re-written and included all three phrases specified. On September 4, 2013, this was also reviewed by Supervising States Attorney Strollo, who approved it for presentation to a presiding Judge of New Haven Superior Court. On September 6, 2013 this application was reviewed by Judge Keegan, whose professional opinion was that the information contained therein was 'stale' and she declined to sign this Ex Parte application. The writer apprised her of the circumstances surrounding this application and she stated that the corporate entity should comply as the Warrant body includes some of the phrases cited. She posited that Sprint/Nextel should be re-contacted relative to their obligation to comply.

On Septembers 11, 16, & 17 , 2013 the writer placed telephone calls to Sprint/ Nextel and finally was able to speak with Ms. Rundquist regarding this matter. She again re-iterated that based on the Ex Parte Order on hand, that it remained their legal opinion that all information they were required to provide had been.

On September 17, 2013 the writer also telephonically contacted Mr. Emons regarding the results and findings of this investigation and of the inability to place the use of the cellular telephones known to be used by Whitnum-Baker in the vicinity of his residence at the time of the incident. It was noted that there have been no other incidences of suspicious activity or surreptitious trespass at, or in the vicinity of, his residence since the date of the original incident.

Based on the lack of further details or other pertinent information, it is recommended that active investigation of this incident be suspended at this time and that this investigation be considered Administratively Closed.

| OFFICER SIGNATURE | SUPERVISOR SIGNATURE | SUBSCRIBED &SWORN BEFORE ME: NOTARY_____ |
|---|---|---|
|  |  | THIS_____DAY OF _____ YR._____ |

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 53 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page53 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 19 of 24

# Exhibit E

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 54 of 123
Case 19-1468, Document 1-2, 08/16/2019, 2583749, Page94 of 123
Case 3:17-cv-01362-JCH   Document 156   Filed 12/04/18   Page 20 of 24

**ARREST WARRANT APPLICATION**
JD-CR-64b   Rev. 3-11
C.G.S §54-2a
Pr. Bk. Sec. 36-1, 33-2, 36-3

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

| For Court Use Only |
| --- |
| Supporting Affidavits sealed |
| ☐ Yes   ☐ No |

| Police Case number 1500011319 | Agency name Woodbridge Police Department | | Agency number 167 | |
| --- | --- | --- | --- | --- |
| Name (Last, First, Middle Initial) Whitnum-Baker, Lisa | Residence (Town) of accused Greenwich | Court to be held at (Town) New Haven - GA 23 | Geographical Area number | 23 |

**Application For Arrest Warrant**
To: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the: ☒ Affidavit Below.   ☐ Affidavit(s) Attached.

| Date | Signed (Prosecuting authority) Michael Dearington | Type/print name of prosecuting authority Michael Dearington |
| --- | --- | --- |

**Affidavit**
The undersigned affiant, being duly sworn, deposes and says:

That the undersigned, Officer Robert B. Crowther, being duly sworn does depose and state that he is a member of the Woodbridge Police Department, and has been a member of said department since May 19, 2003, and at all times mentioned herein was acting as a member of said department. That this officer was a member of the New Haven Police Department from Sept.18, 1978 until May 1, 2003, and was a sworn officer and active member during that time. The following facts and circumstances are from personal knowledge and observations, as well as information received from brother officers acting in their official capacity, and from police reports and statements made by prudent credible witnesses.

1. That on Friday, July 31, 2015, this Affiant received a call from Mr. Robert Kirchner who is in charge of Superior Court Operations for the State of Connecticut. Mr. Kirchner told this affiant that he was notified by the victim, Judge Jane Emons, that on Thursday, July 30, 2015, the victim received in her mailbox at her residence in Woodbridge, a document addressed to her with the return address of Whitnum, P.O. Box 7482, Greenwich, CT 06836.

2. That Mr. Kirchner told this Affiant that there is a "54-1K Order of Protection", which lists the victim as the Protected Person, and Lisa Whitnum-Baker, d.o.b. June 23, 1960, as the Respondent. Mr. Kirchner said that the victim has been harassed at her home in Woodbridge, Connecticut by Whitnum-Baker in the past, and has been arrested by the State Police for an incident that warranted this Order of Protection. This type of order

*(This is page 1 of a 4 page Affidavit)*

| Date 8/5/15 | Signed (Affiant) Robert Crowther |
| --- | --- |
| Jurat   Subscribed and sworn to before me on (Date) 8-5-15 | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public) Sgt. H. Cappillo |

**Finding**
The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| Date and Signature | Signed at (City or town) New Haven | On (Date) 8/5/15 | Signed (Judge/Judge Trial Referee) | Name of Judge/Judge Trial Referee |
| --- | --- | --- | --- | --- |

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 55 of 123
Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 55 of 123
Case 3:17-cv-01362-JCH Document 156 Filed 12/28/18 Page 22 of 24

**ARREST WARRANT APPLICATION**

| | |
|---|---|
| JD-CR-64a  Rev. 3-11 | **STATE OF CONNECTICUT** |
| C.G.S § 54-2a | **SUPERIOR COURT** |
| Bk. Sec. 38-1, 38-2, 38-3 | www.jud.ct.gov |
| JFS #: 1500011319 | |

Woodbridge Police Department

| Name (Last, First, Middle Initial) | Residence (Town)of accused | Court to be held at (Town) | Geographical |
|---|---|---|---|
| Whitnum-Baker, Lisa | Greenwich | New Haven – GA 23 | Area number 23 |

## Affidavit - Continued

specifically addresses harassment and stalking. The order was signed by a judge and issued July 9, 2013 out of New Haven Superior Court, G.A. 23, reads in part, "Do not contact the protected person in any manner, including by written, electronic or telephone contact, and do not contact the protected person's home, workplace or others with whom the contact would be likely to cause annoyance or alarm to the protected person."  A second similar order was issued out of Bridgeport Superior Court on October 25, 2013; it is signed by a judge and lists the same "Terms and Conditions of Protection".

3. That on Friday, July 31, 2015, this Affiant spoke with the victim who stated that on Thursday, July 30, 2015, her husband called and told her that when he retrieved the mail from their mailbox which is at the mouth of their driveway near the road, among the mail was a medium-sized manila envelope addressed to her. That when the victim's husband opened the envelope, he saw that it contained a multiple page legal document of an "Emergency Motion for Injunction". The document was dated July 27, 2015, and was supposedly filed in United States District Court-District of Connecticut.

4. That the victim told this Affiant that she is aware of a pending federal lawsuit that Whitnum is filing against her, but the victim has not been served legal service for this lawsuit. The victim told this affiant that if Whitnum-Baker wished to serve her in her personal capacity, she should have a State Marshal serve her at her residence or at the Court. The victim also said that if she were to be served in her professional capacity, she would have to be served through the Attorney General's Office for the State of Connecticut.

5. That on Monday, August 3, 2015, this Affiant contacted United States Postal Inspector Jason Bourdeau and asked him to verify and confirm who rents Post Office Box 7482 in Greenwich, Connecticut. A short time later Inspector Bourdeau advised this Affiant that Post Office Box 7482 is rented by Lisa Whitnum-Baker.

6. That on Monday, August 3, 2015, this Affiant asked Officer Jeff Morris of the Greenwich Police Department to go to Whitnum-Baker's listed address of 123 Henry Street, Greenwich, Connecticut, to either obtain a good phone number for Whitnum-Baker, or advise Whitnum-Baker to contact this Affiant. Officer Morris went to 123 Henry Street, Greenwich, Connecticut where he did speak to a woman through her locked front door. Upon speaking to this woman, she confirmed to Officer Morris that she was Lisa Whitnum-Baker. Officer Morris told Whitnum-Baker that she was a subject of a criminal complaint lodged against her in Woodbridge, and that this Affiant needed to speak with her.  Whitnum-Baker refused to provide Officer Morris with a phone number, and told him that she would contact this affiant.

*(This is page 2 of a 3 page Affidavit*

| | | | | |
|---|---|---|---|---|
| Date | 8/5/15 | | Signed (Affiant) | |
| Jurat | Subscribed and sworn before me on(Date) 8-5-15 | | Signed (Judge/Clerk-Commissioner of Superior Court, Notary Public) | |
| Reviewed | (Prosecutorial Official) Michael Dearing | Date 8·5·15 | Reviewed (Judge/ Justice Trial Referee) | Date 8/5/15 |

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 56 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page56 of 123
Case 3:17-cv-01362-JCH Document 156 Filed 12/04/18 Page 23 of 24

**ARREST WARRANT APPLICATION**

JD-CR-64a' Rev. 3-11
C.G.S § 54-2a
-. Bk. Sec. 36-1, 36-2, 36-3
JFS #: 1500011319

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**Woodbridge Police Department**

| Name (Last, First, Middle Initial) | Residence (Town)of accused | Court to be held at (Town) | Geographical Area number |
|---|---|---|---|
| Whitnum-Baker, Lisa | Greenwich | New Haven - GA 23 | 23 |

## Affidavit - Continued

7. That on August 4, 2015, this Affiant received a phone call from a woman who identified herself as Lisa Whitnum-Baker. Whitnum-Baker told this Affiant that she had heard that this Affiant wanted to speak to her. Whitnum-Baker went on to say that she had recently mailed Judge Emons legal documents on two occassions and stated, "I plan to do more mailings". This Affiant apprised Whitnum-Baker that an Order of Protection was still in force, and she could not have contact with Judge Emons in any manner. Whitnum-Baker became argumentative and demanded to know the name of Judge Emons's attorney because "We are going to trial". This Affiant again explained to Whitnum-Baker that the Order of Protection was still in effect and she was not to have contact of any manner with Judge Emons which included by mail. This Affiant told Whitnum -Baker that she would have to hire a State Marshal or go through the Attorney General's Office. Whitnum-Baker told this Affiant " I will take care of this myself and I am hanging up on you". She then hung up the phone and the call was terminated.

8. That on Tuesday, August 4, 2015, this Affiant received a call from the victim who stated that on Monday, August 3, 2015, she received in her mailbox a large manila envelope addressed to the victim at her home address, with the name "Whitnum, P.O. Box 7482, Greenwich, CT 06836," in the upper-left, return address section of the envelope. Contained inside the envelope was a "United States District Court-District of Connecticut Motion to Cite Additional Parties".

9. That a Judicial Branch Records Check performed on Lisa Whitnum-Baker, d.o.b. June 23, 1960, shows that she has been arrested in the past, and these cases are currently pending in court. The pending charges are Criminal Trespass 1st Degree, Harassment 2nd Degree, and Creating a Public Disturbance.

10. That a check with the Connecticut Department of Corrections revealed that Lisa Whitnum-Baker, d.o.b. June 23, 1960, was not incarcerated at the time of this alleged crime.

11. That based on the aforementioned facts and circumstances, this Affiant believes that probable cause does exist and therefore respectfully requests that this warrant be issued for the arrest of Lisa Whitnum-Baker, date of birth June 23, 1960, with a last known address of 123 Henry Street, Greenwich, Connecticut, which charges her with two counts of Violation of a Protective Order, 53a-223, and Harassment 2nd Degree, 53a-183.

12. That no applications have been made with any other court for the aforementioned crimes.

*(This is page 3 of a 3 page Affidavit*

| Date | 8/5/15 | | Signed (Affiant) | |
|---|---|---|---|---|
| Jurat | Subscribed and sworn before me on(Date) 8 - 5 - 15 | | Signed (Judge/Clerk/Commissioner of Superior Court, Notary Public) | |
| Reviewed | (Prosecutorial Official) Michael Dearington | Date 8/5/15 | Reviewed (Judge / Judge Trial Referee) | Date 8/5/15 |

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 57 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2563749, Page97 of 123
Case 3:17-cv-01362-JCH Document 156 Filed 12/04/18 Page 23 of 24

| INFORMATION<br>JD-CR-71 Rev. 3-11 | STATE OF CONNECTICUT<br>SUPERIOR COURT | Disposition date |
|---|---|---|
| Police Case number<br>1800011319 | Agency name<br>Woodbridge Police Department | Agency number<br>CT0016700 |

## Arrest Warrant

| Geographical area number  23 | State of Connecticut vs. Whitnum-Baker, Lisa |
|---|---|

To: Any Proper Officer of the State of Connecticut

By Authority of the State of Connecticut, you are hereby commanded to arrest the body of the within-named accused. ("X" all that apply)

☐ A. Accused is ordered to be brought before a clerk or assistant clerk of the Superior Court.

☐ B. Accused is not entitled to bail.

If A, B or both are checked above, you shall without undue delay bring the arrested person before the clerk or assistant clerk of the Superior Court for the geographical area where the offense is alleged to have been committed, or if the clerk's office is not open, to a community correctional center within said geographical area, or the nearest community correctional center if no such center exists in the geographical area, or to the Correctional institution, as the case may be.

☐ C. Bail set at _____

☒ D. Non-financial conditions of release:
_Comply with order of protection concerning the complainant._

☐ E. Conditions of release not determined by the court.

| By the Court | Signed (Judge of the Superior Court) | Date 8/5/15 | Name of the Judge (Print or type) |
|---|---|---|---|

## Return On Arrest Warrant

| Geographical area number  23 | Town of  WoodBridge. | Date 8/11/15 | State of Connecticut |
|---|---|---|---|

Then and there, by virtue of the within and foregoing complaint and warrant, I arrested the body of the within-named accused and read the same in the hearing of said accused; and have said accused here in court for examination.

Attest (Officer's signature and Department) _M.A.B.C.te – WoodBridge P.D._

| Date | Other Court action | Judge |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*This is page 3 of a 3 page Information*

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 58 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2563749, Page58 of 123
Case 3:17-cv-01362-JCH   Document 153   Filed 12/26/18   Page 24 of 24

## CERTIFICATION

This litigant hereby certify that on December 26, 2018 a copy of the foregoing was sent via US mail to the following:

KARSTEN & TALLBERG, LLC - Attorneys At Law
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067
860-233-5600

Philip Miller
Office of the Attorney General
Attn. Philip Miller
55 Elm St.
Hartford, CT

Sincerely,

s/L.Lee This litigant

# CURRENT
# EXHIBIT
# C

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 60 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page60 of 123
Case 3:17-cv-01362-JCH   Document 200   Filed 03/22/19   Page 1 of 9

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| L. LEE WHITNUM | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:17-CV-1362 (JCH) |
| v. | : | |
| | : | |
| TOWN OF WOODBRIDGE, ET AL., | : | MARCH 22, 2019 |
| Defendants. | : | |

## RULING RE: PLAINTIFF'S MOTIONS FOR RECONSIDERATION
### (DOC. NOS. 139, 145, 147, AND 153).

### I.    INTRODUCTION

Pending before the court are the plaintiff's Motions for Reconsideration of several of this court's prior Orders.  Specifically, L. Lee Whitnum's ("Whitnum") seeks reconsideration of the following Order: (1) Order Granting Motions to Quash Subpoenas for Rule 31 Depositions (Doc. No. 131); (2) Order Denying Motion to Compel Full Report (Doc. No. 134); (3) Order Granting in Part and Denying in Part Motion to Compel and for Sanctions (Doc. No. 135); and (4) Order Denying Motion to Cite in John Whalen and Jane Emons (Doc. No. 136).

For the reasons stated below, the Motions for Reconsideration are granted in part and denied in part.

### II.    JURISDICTION

Whitnum filed Notices of Appeal to the Second Circuit as to each of the Rulings for which she also moves this court for reconsideration.  See Clerk's Certificate Re: Index and Record on Appeal (Doc. No. 173).  Generally, "the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." United States v. Rodgers, 101 F.3d 247, 251 (2d Cir. 1996).  However, the

1

Federal Rules of Appellate Procedure provide that, if a party files a notice of appeal after the district court enters judgment "but before it disposes of any motion listed in [Federal] Rule [of Appellate Procedure] 4(a)(4)(A)[,] the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B).  Included in the list of motions in Rule 4(a)(4)(A) are motions to "alter or amend the judgment under [Federal] Rule [of Civil Procedure] 59." Fed. R. App. P. 4(a)(4)(A).  Therefore, where a party files a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59, before it files a notice of appeal, the district court retains jurisdiction to rule on the motion for reconsideration.

Whitnum filed her Motions for Reconsideration before she filed her Notices of Appeal.  While Whitnum did not state the rule under which she sought reconsideration, the District of Connecticut Local Rules provide for such motions under Rule 7(c).  See D. Conn. L. Civ. R. 7(c).  The Second Circuit has held that motions for reconsideration under the Local Rules are "as a practical matter the same thing as motions for amendment of judgment under Fed. R. Civ. P. 59(e).  City of Hartford v. Chase, 942 F.2d 130, 133 (2d Cir. 1991).  The Second Circuit has further held that, for purposes of Federal Rule of Appellate Procedure 4(a)(4), a motion for reconsideration under the District of Connecticut Local Rules must be treated the same as a motion under Rule 59. Id.[1]  Because Whitnum filed her Motions for Reconsideration prior to filing her Notices of Appeal, the Notices will become effective to appeal from this court's rulings

─────────────────────

[1] At the time Chase was decided, District of Connecticut Local Rule 9 provided for motions for reconsideration.  Local Rule 7(c) now provides for that same motion.

2

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 62 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page62 of 123
Case 3:17-cv-01362-JCH   Document 200   Filed 03/22/19   Page 3 of 9

when this court has disposed of the last of the pending motions for reconsideration.
See Fed. R. App. P. 4(a)(4)(B)  This court therefore has jurisdiction to resolve the
pending motions.

## III.    LEGAL STANDARD

Motions for reconsideration require the movant to set "forth concisely the matters
or controlling decisions which [the movant] believes the Court overlooked in the initial
decision or order." D. Conn. L. Civ. R. 7(c).  "The major grounds justifying
reconsideration are an intervening change of controlling law, the availability of new
evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl.
Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation
marks omitted).  The standard for granting a motion for reconsideration is strict.
Reconsideration will be granted only if the moving party can identify controlling
decisions or data that the court overlooked and that would reasonably be expected to
alter the court's decision.  See Analytical Surveys, Inc. v. Tonga Partners, 684 F.3d 36,
52 (2d Cir. 2012) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).
A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the
case under new theories, securing a rehearing on the merits, or otherwise taking a
second bite at the apple." Analytical Surveys, 684 F.3d at 52 (quotation marks omitted).

## IV.    DISCUSSION

### A.    Motion for Reconsideration of Order Granting Motions to Quash
Subpoenas for Rule 31 Depositions (Doc. No. 145).

Whitnum seeks reconsideration of this court's Order (Doc. No. 131) granting the
defendants' Motion to Quash Subpoenas addressed to former Superior Court Judge
Jane Emons and Supervisory Assistant State's Attorney John Whalen.  See Mot. for

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 63 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2583749, Page63 of 123
Case 3:17-cv-01362-JCH   Document 200   Filed 03/22/19   Page 4 of 9

Reconsideration (Doc. No. 145).  The court quashed the subpoenas for failure to comply with the requirement, under Federal Rule of Civil Procedure 31, that a plaintiff first serve a copy of her written questions to a non-party upon the defendants.  See Order (Doc. No. 131) at 2–3; Fed. R. Civ. P. 31.  Further, the court determined that the non-parties were entitled to a protective order because "[a]lmost every question, in each of the subpoenas, relate to events in 2013 and the plaintiff's divorce proceeding, are argumentative, and are not discoverable under the Rules in this case, which involves claims arising from a 2015 arrest."  Id. at 3.

Whitnum argues that she complied with Federal Rule of Civil Procedure 31 because the "deposition by written question for Emons and Whalen were given . . . . [and] was also served."  Mot. for Reconsideration (Doc. No. 145) at 1 ¶ 2.  The attached Affidavit, on which Whitnum relies for support, does not establish that Whitnum complied with Rule 31 by serving a copy of written questions upon the defendants.  See Affidavit (Doc. No. 145-1).  The Affidavit merely states that the affiant accompanied Whitnum to the Office of the State Prosecutor to review records "in compliance with a duly served subpoena."  Id.  Assuming that the document is referring to the same subpoenas at issue in the Motions to Quash, which is not clear from the face of the Affidavit, the Affidavit assumes that the subpoenas were properly served, but does not provide any basis for such a finding.  Because the Affidavit cannot reasonably be expected to alter the court's earlier Ruling, the Motion for Reconsideration (Doc. No. 145) is denied, insofar as it seeks reconsideration of this court's grant of the defendants' Motions to Quash.

4

B.    Motion for Reconsideration of Ruling Denying Motion to Compel Full
Report #2013-0213 (Doc. No. 139)

Whitnum also seeks reconsideration of this court's Ruling (Doc. No. 134) denying

her Motion to Compel disclosure of a report numbered "#2013-0213." See Mot. for

Reconsideration (Doc. No. 139).  This court previously concluded that the Motion to

Compel was moot because the defendants had already produced the document at

issue. See Ruling (Doc. No. 134) at 1.  Nonetheless, the court ordered the manager or

supervisor responsible for the subpoena recipient to submit an affidavit attesting that the

report had been produced in its entirety. Id. at 1–2.  The defendants submitted the

affidavit as ordered, confirming under oath that the requested report had been produced

in its entirety. See Affidavit of John R. Whalen (Doc. No. 175).

In her Motion for Reconsideration, Whitnum restates her argument that the report

was not produced in its entirety. See Mot. for Reconsideration (Doc. No. 139) at 5

¶¶ 23–24.  However, Whitnum has provided no legal or factual basis for this court to

conclude that there is "new evidence that was not available when the original motion or

response was filed," or that there is a "need to correct a clear error or prevent manifest

injustice." Virgin Atl., 956 F.2d at 1255.  The Motion for Reconsideration (Doc. No. 139)

is denied.

C.    Motion for Reconsideration of Order Granting in Part and Denying in Part
Motion to Compel and Denying Motion for Sanctions (Doc. No. 147).

Whitnum moves this court to reconsider its Order (Doc. No. 135) granting in part

and denying in part her Motion to Compel and denying her Motion for Sanctions. See

Doc. No. 147.  In her original Motion to Compel and for Sanctions (Doc. No. 102),

Whitnum argued, inter alia, that the defendants altered evidence. See Order (Doc. No.

135) at 2–3.  Whitnum asserted that that the defense counsel "took the first page from

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 65 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2563749, Page65 of 123
Case 3:17-cv-01362-JCH   Document 200   Filed 03/22/19   Page 6 of 9

Judge Holden's protective order dated 7-9-2013 (docket #50) and used the second

page from Judge Arnold's modified protective order dated October 23, 2013 (docket

#54). The attorneys altered evidence! See Exhibit C pages 5-6 and 7-8." Id. at 2.

The court, in denying Whitnum's Motion, concluded that the documents and

pages referenced by Whitnum did not provide evidence of "alteration." Id. at 3.  In her

Motion for Reconsideration, Whitnum argues that "Judge' Holden's order was ONE

page and Judge Arnolds' order was two pages," and that "by taking the second page of

Arnold's order and filing [it[ directly behind the Holden[ ] order," the defendants implied

that "both the original protective order and the second – the modification - both have

identical second pages. They do  not."  Mot. for Reconsideration (Doc. No. 147) at 1–2.

A review of the documents indicates that, while Whitnum requested that the court

compare pages 5-6 of Exhibit C with pages 7-8 of Exhibit C, her allegation of "alteration"

was in fact directed to pages six and 10 of the Exhibit.  Page six of Exhibit C appears to

be an attachment to an Order of Protection signed on 7/9/13.  See Exhibit C (Doc. No.

102-1) at 6.  In the section following the description. "You, the Respondent, must follow

all the orders and conditions checked or indicated by "X" below," the document on page

six includes identical language as the same section of the document on page 10, which

appears to be an attachment to an Order of Protection signed on 10/25/13.  Compare

Exhibit C (Doc. No. 102-1) at 6 with id. at 10.  This provides, at least circumstantial

support, for Whitnum's argument that the submissions contain an error, though it is

possible that the Orders simply used the same language, or that an extra page was

attached in error.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 66 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page66 of 123
Case 3:17-cv-01362-JCH   Document 200   Filed 03/22/19   Page 7 of 9

The court does not at this time find a sufficient basis to award sanctions. However, evasive or incomplete responses to discovery would reasonably be expected to alter this court's prior ruling on sanctions.  See Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").  Whitnum's original Motion directed the court to incorrect pages of the exhibits, an avoidable error which would provide a sufficient basis to deny the Motion for Reconsideration.  However, in the interests of justice and given Whitnum's pro se status, the court grants the Motion to Reconsider for the limited purpose of ordering the defendants to submit an affidavit confirming that the copies of the protective orders, as submitted in response to Whitnum's document requests, are complete and accurate.  If the submitted documents are not complete and accurate, the defendants shall file a correction of any error along with a statement showing cause why the error should not result in sanctions.  The Motion for Reconsideration (Doc. No. 147) is granted in part.

   D.   Motions for Reconsideration of Orders Denying Motions to Cite in John Whalen and Jane Emons (Doc. Nos. 145 and 153)

In two of her Motions for Reconsideration, Whitnum moves this court to reconsider its Order (Doc. Nos. 136) denying her Motions to Cite in John Whalen and Jane Emons.  See Motions to Reconsider (Doc. Nos. 145 and 153).  In her first Motion (Doc. No. 145), Whitnum argues that her Motion to Cite In was not, as the court concluded, untimely,  See Mot. for Reconsideration (Doc. No. 145) at 1–2 ¶ 3.  She argues that the court should allow her Motion because she has the "right to amend the complaint" and because a pro se complaint should be liberally construed.  Id.  In her related Motion for Reconsideration (Doc. No. 153), Whitnum argues that Emons "needs

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 67 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page67 of 123
Case 3:17-cv-01362-JCH Document 200 Filed 03/22/19 Page 8 of 9

to be cited in for her role and action in the August 2015 arrest." <u>See</u> Mot. for Reconsideration (Doc. No. 153) at 3.

However, Whitnum provides no support, in either filing, for a finding that there is new, previously unavailable evidence, to support her Motion to Cite in John Whalen and Jane Emons. Nor has Whitnum provided any basis to conclude that, in denying Whitnum's attempt to join parties to this case at this juncture, when motions to join parties were due by October 11, 2017, <u>see</u> Order (Doc. No. 79), the court committed a clear error or manifest injustice. The Motions for Reconsideration (Doc. Nos. 145 and 153) are denied.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' Motions for Reconsideration (Docs. No. 139, 145, and 153) are **DENIED**. The Plaintiff's Motion for Reconsideration (Doc. No. 147) is **GRANTED IN PART**. The defendants are **ORDERED** to submit an affidavit confirming that the copies of the protective orders, located at Exhibit C (Doc. No. 102-1), pages 6–10, submitted in response to Whitnum's document requests, are complete and accurate. If the submitted documents are not complete and accurate, the defendants shall file a correction of any error along with a statement showing cause why the error should not result in sanctions. The defendants shall submit said affidavit or correction and statement by April 1, 2019.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 68 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page68 of 123
Case 3:17-cv-01362-JCH   Document 200   Filed 03/22/19   Page 9 of 9

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of March 2019.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

# CURRENT EXHIBIT D

1

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF CONNECTICUT

3    _____
     L. "Lee" Whitnum     )
4            Plaintiff  )    NO: 3:17cv1362(JCH)
                        )    February 5, 2019
5    vs.                )    11:00 a.m.
     Town of Woodbridge, )
6    et al              )
             Defendants. )
7    _____)    141 Church Street
                             New Haven, Connecticut
8

9

10                   HEARING

11

12

13   A P P E A R A N C E S :

14   For the Plaintiff :  L. "Lee" Whitnum
                          P.O.Box 7482
15                        Greenwich, CT 06830

16   For the Defendants: James Newhall Tallberg
                         Karsten & Tallberg LLC
17                       500 Enterprise Drive, Suite 4B
                         Rocky Hill, CT 06067

18

19

20

21

22

23

24

25

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 71 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page71 of 123

2

1            THE COURT:  Please be seated, everyone, and good

2     morning to you.

3            MR. TALBERG:  Good morning, Your Honor.

4            THE COURT:  We're here this morning in the

5     matter of L. Lee Whitnum versus the Town of Woodbridge,

6     et al, Case Number 17cv1362.  If I can have appearances

7     please.

8            MS. WHITNUM: Lisa Whitnum, Plaintiff.

9            THE COURT:  Good morning.

10            MR. TALBERG:  Good morning, Your Honor.  James

11     Talberg for the Defendant Town of Woodbridge, Detective

12     Crowther and Chief Cappiello.

13            THE COURT:  Good morning.  We're here.  I hope

14     it got calendared as a status conference.  I don't intend

15     to take any action for reasons I will explain in just a

16     moment.  If you give me a minute to get organized.  There

17     are quite a few motions pending.  There's a summary

18     judgment motion that's been pending a couple of months, a

19     motion to transfer and a motion to compel a decision on

20     that motion to transfer, various motions to reconsider

21     the rulings the Court issued a month or two ago.  All

22     that are subject to the Notice of Appeal.  There's a

23     motion to restore exhibits to the docket order and a few

24     other miscellaneous motions.

25            I guess the first thing I'd say and I'm not

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 72 of 123
Case 19-1468, Document 1-2, 05/16/2019, 2583749, Page72 of 123

3

 1   absolutely certain.  My general understanding is that

 2   when a person files a Notice of Appeal, Ms. Whitnum, as

 3   you have done, that I lose jurisdiction, if not of the

 4   whole case, at least part of the case.

 5        So given those are still pending up at the Court

 6   of Appeals is what I saw when I checked them last, I'm

 7   not going to be able to act on any of your motions until

 8   I get the case back.

 9        MS. WHITNUM:  Your Honor.

10        THE COURT:  Yes, Ma'am.

11        MS. WHITNUM:  I understand that's the case with

12   the motions for reconsideration.  But I thought that the

13   motions for stay, extension of time, and perhaps the

14   motion to transfer could actually be addressed today.

15        THE COURT:  I'm not really sure how I get

16   jurisdiction if you have appealed.  I actually think it

17   is the opposite of what you just said now that you

18   mentioned those.  The motions to reconsider I probably

19   should do if I'm going to rule a certain way and I don't

20   remember what the rule is, but if I were to rule a

21   certain way, I think the circuit wants to know I will

22   rule that way in light of their having the appeals.  It

23   might make a difference to them.  I will look into those.

24        The motion for stay effectively, you have

25   effectively got a stay by filing your notices.

4

```
 1            MS. WHITNUM:  But, Your Honor, you provided a
 2    30-day stay and then to revisit it in 30 days and --
 3            THE COURT:  So which motion is that?  Do you
 4    know when you filed that motion to extend?
 5            MS. WHITNUM:  Your order was --
 6            THE COURT:  Here it is 157 file a reply.  I see
 7    only one motion to extend.
 8            MS. WHITNUM:  I think it is 180 granting in part
 9    motion to stay, signed by Your Honor and the problem I
10    have with that I asked that the --
11            THE COURT:  Yes.
12            MS. WHITNUM:  I'm asking in that that everything
13    be stayed until 125 is answered which is more than 60
14    days old on whether you know personally Judge Jane Emons.
15    I have asked to transfer the case to New Jersey or other
16    federal district court.  It is a simple question, Your
17    Honor.  I just want to know, you know, if there's a
18    relationship and, you know, I'm trying to cite her in as
19    a defendant in this case for her actions in 2015, not
20    2013.
21            And so, you know, in light of the history that's
22    happened here, you know, as you know, I provided proof
23    that Judge Shea had received a notice from the Sprint
24    Corporation and never put it in a notice or put on the
25    record.  I don't know what's normal and customary.
```

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 74 of 123
Case 19-1408, Document 1-2, 09/10/2019, 2563749, Page74 of 123

5

1           THE COURT:  A notice from whom?

2           MS. WHITNUM:  I made an issue about it because I

3    felt it was prejudicial.  What happened was during the

4    subpoena time, it was approximately September 4th, I had

5    faxed over a subpoena to the Sprint Corporation to again

6    provide me with the exact information they had provided

7    to me back in 2015.  This is all -- 2013.  This is all on

8    the record and then they wrote back to me.  They said we

9    sent a letter to your subpoena in October directly to

10   Judge Shea, and I thought and then they said here's the

11   letter.  So then the Sprint Corporation gave me the

12   letter and I was just surprised because I thought that if

13   Judge Shea had received a letter that he was required

14   maybe to put a notation on the record or something.

15           Maybe you can enlighten me on what happens when

16   a judge gets a piece of evidence from something

17   subpoenaed, do they inform -- I had no idea that they had

18   responded.  It upset me a lot.

19           The second thing was Judge Kara Dooley, when the

20   state police provided their subpoenaed documents, I

21   noticed with the billboard on Route 91, with the

22   investigation of who put up the billboard, there was an

23   email sent to Jane Emons.  On that cc list was Kara

24   Dooley on November 1.  I filed a motion for transfer for

25   no other lack of any motion, but I wanted an explanation

1   as to what her relationship was with Jane Emons.

2           In all honesty, I had felt she had taken the

3   ruling by Judge Shea and this is one of the very

4   contentious issues of this case, Judge Shea said -- I

5   have been trying to have face to face depositions with

6   four people, you know, the two officers from Woodbridge,

7   Jane Emons and John Whalen for a very long time now.

8           Judge Shea in his order said that you have to

9   try in good-faith to subpoena them, to depose them which

10  I believe I did.  I sent out 100 pages of deposition

11  questions.  Some of them poorly written I admit it.  I

12  was suffering from West Nile Virus.  I was still in a

13  fog.  I did the best I could considering I came up with

14  400 questions and exhibits.  It was sloughing through

15  molasses.  I had 40 percent of my red blood cells, but I

16  did it.  Not one question to all four was answered.  So

17  then I asked Judge Dooley.  I said, Your Honor, please,

18  you know, they are not going to answer any questions.

19  This is going to go on forever.  This is not justice.

20          Can I please have what I originally asked for of

21  Judge Shea back in September.  And Kara Dooley in her

22  ruling wrote that he had already ruled on that no.  My

23  argument back, if anybody listens, is that he didn't

24  rule.  He never said no.  He said do a good-faith effort.

25  Well, I did do a good-faith effort.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 76 of 123
Case 19-1468, Document 1-2, 08/16/2019, 2583749, Page76 of 123

7

```
 1          Mr. Talberg seems to think they have been, you
 2   know, all my questions are illegible, illogical or
 3   burdensome, the usual, you know, but this is not true.
 4   They are simple questions like look at Exhibit C.  Please
 5   identify, you know, is this your signature on this
 6   document.  To not answer even one question.  That's all
 7   400 questions were all burdensome, illegible, illogical
 8   and irrelevant.  It is not true.  I would like -- so then
 9   I wrote to --
10          THE COURT:  Can I interrupt for a second?  I
11   think about three or four minutes ago I asked you a
12   notice from who.  I couldn't hear Sprint Corporation.
13   You told me that in this response.  It may be we'll get
14   to these issues.
15          As I said, I'm somewhat -- matters are in
16   abeyance in light of the appeals, but if I could turn to
17   what I had asked to -- why I wanted to have a conference.
18   I will address with defense counsel the deposition of his
19   clients, but I just -- you started out that you didn't
20   want anything to happen in the case until I rule on 125
21   which I think is basically a motion to recuse me and to
22   transfer the case to New Jersey.
23          I would ask you do you know of any legal basis
24   by which a district court judge in Connecticut can
25   transfer a case to New Jersey other than on venue
```

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 77 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2583749, Page97 of 123

8

1    reasons?

2         MS. WHITNUM:  Your Honor, this is not a typical

3    case.  You know Judge Jane Emons is very powerful.

4         THE COURT:  I don't know that.  I don't know

5    that, ma'am.

6         MS. WHITNUM:  Well, it is a well-known fact.

7    She owns a car dealership.

8         Your Honor, please.  John Whalen is the Chief

9    State's Prosecutor.  These are extremely powerful people.

10   This is an extremely small state.

11        THE COURT:  I'm a court of law.  I have to apply

12   the law.  If you can tell me a statute or a case that

13   says that I have the power to do that, I would be happy

14   to look at it.

15        MS. WHITNUM:  Your Honor, I didn't anticipate

16   that question.  I would like a day or two to do some

17   research and provide it back to you.

18        THE COURT:  That would be fine.  It is not in

19   your initial motion.  I don't see any basis to do it.  I

20   don't know of any.  You can take a few days.  I would

21   love to have you file some supplemental pleading because

22   if it is something I'm overlooking, obviously I want to

23   be aware of it.

24        MS. WHITNUM:  Well, your Honor, you're the

25   highest judge in this case.  You are the chief

1    administrative judge.

2              THE COURT:  No.  I stepped down on September 1.

3              MS. WHITNUM:  I apologize.

4              THE COURT:  The chief judge isn't any higher

5    than anybody else in our system.  It is different than in

6    the state system where the chief judge, in effect, is

7    powerful over all other judges in terms of assignments.

8    In our system, the federal system, that's not the case.

9    It is different.  But it is not important.

10             MS. WHITNUM:  Your Honor, is there a federal

11   court in Danbury?

12             THE COURT:  No.

13             MS. WHITNUM:  There is only New Haven and

14   Bridgeport and Hartford.

15             THE COURT:  We have three seats of court.  We

16   used to have one a long time ago in Waterbury.  We don't

17   have it there anymore.  We had to give the space up.

18             MS. WHITNUM:  The proximity factor Jane Emons

19   never worked in Hartford.  The proximity factor in my

20   mind, any way, Rocky Hill, John Whalen, Jane Emons, they

21   all live in the region.  The likelihood of you, Your

22   Honor, most respectfully, belonging to a group or knowing

23   a woman's group of powerful women, you know.  Do you know

24   Jane Emons?

25             THE COURT:  I'm not here to be questioned.  It

Case 3:17-cv-01362-JCH  Document 211  Filed 05/17/19  Page 79 of 123
Case 19-1468, Document 1-2, 08/16/2019, 2563749, Page79 of 123

10

1    is not my deposition, Ms. Whitnum.

2              MS. WHITNUM:  If you don't want to transfer this

3    case out of the state, maybe you should transfer it back

4    up to New Haven so that it's a place where maybe she

5    doesn't know as many people.

6              THE COURT:  I think you might have misspoken.

7    We're in New Haven.  You mean transfer to Hartford?

8              MS. WHITNUM:  Yes.

9              THE COURT:  I guess I think I have -- I might

10   have the authority to do that.  Although I really don't.

11   We're supposed to have what's called random assignments

12   in our district in order to avoid judge shopping.  That's

13   a real purpose for the way our system is.  It is

14   statewide because if we only assigned in each seat of

15   court, there's too few judges.  It could be judge

16   shopping.  That's how our system works.  They are pulled

17   out.

18             So when Judge Dooley decided she couldn't sit on

19   the case any longer, it went into this wheel.  That's how

20   I got it.

21             MS. WHITNUM:  Your Honor, you asked me to come

22   up with a case where there's been a transfer from federal

23   jurisdiction, from federal court to federal court.  In

24   Whitnum versus Hearst Corporation, I filed a lawsuit at

25   district court in White Plains and without any

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 80 of 123
Case 19-1468, Document 1-2, 09/10/2019, 2563749, Page80 of 123

11

1    notification to me, it was transferred up to Judge Shea

2    in Connecticut, so there must be at least one other.

3           THE COURT:  There is a statute.  I hope I didn't

4    misspeak.  There is a statute.  It is called a venue

5    statute basically.  Jurisdiction is like does the court

6    have power over the people involved in front of them to

7    make a ruling to bind them.  Venue is where the place it

8    should be held and like if it were a car accident, the

9    venue is usually where the car accident occurred.  That's

10   kind of simplistic.  So I don't know exactly your case

11   that went from New York to Hartford.  But I'm going to

12   suspect that the judge there -- I'm surprised he didn't

13   wait for motions and he didn't give you notice.  But he

14   probably decided that this has nothing to do with where

15   we are in New York and therefore, it belongs in

16   Connecticut because the parties are in Connecticut, the

17   events occurred in Connecticut, et cetera.

18          So there is a statute that says I could move it,

19   but I don't know anything related to this case that

20   happened in New Jersey.  That's why I was saying if you

21   can give me something, you will find that statute, if you

22   look.  I'm sure.

23          MS. WHITNUM:  Your Honor, actually I understand

24   it is a venue thing and having to do with the parties.

25   The truth is the defendant in that matter was the Hearst

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 81 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2583749, Page81 of 123

12

1    Corporation and Steven Schwartz was named.  He's the

2    president of Hearst.  He's a named defendant.  He resided

3    in New York and the Hearst Corporation is in New York so

4    I don't know why it was transferred to Connecticut.

5              THE COURT:  I don't either.

6              MS. WHITNUM:  I have not pursued the case

7    because I'm not sure I can get a fair trial in

8    Connecticut.  I'm asking you for just a simple

9    explanation.  Do you know Jane Emons?  If you do, maybe

10   is she a friend of yours?  Kara Dooley was called on it

11   and stepped down because I found the documents in the

12   state police report that she was on the cc list and I

13   found it curious and so I questioned her.  As it turns

14   out, they do know each other.  I don't think it's asking

15   too much.  I am trying to get a fair trial.  I'm trying

16   for some fairness.  I have been treated horribly.  I've

17   paid big prices.  Forty-one criminal court appearances

18   that John Whalen tortured me with the court system.  I'm

19   asking for fairness here.  I would like to have face to

20   face depositions with Whalen, Emons and the two police

21   officers.  We would put this case to bed right away.

22             THE COURT:  I doubt that very much.

23             MS. WHITNUM:  Your Honor, I'm very tired.  I'm

24   very easy to please.  They have not approached me in one

25   way.  It could all evaporate overnight.  They don't want

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 82 of 123
Case 19-1408, Document 12, 05/16/2019, 2585/749, Page82 of 123

13

1    to.  They want to fight and that includes the lower court

2    cases.  I don't want to do this anymore.  I'm tired.

3          THE COURT:  You had a motion to extend time.

4    You asked for a motion in number 176.  I granted it in

5    part as you pointed out correctly in early January.  I

6    don't see a subsequent further motion so I can't act.

7          First of all, I don't know that I can act with

8    the Court of Appeals case pending.  Second, if I can act,

9    if I'm correct that because you filed notices, this case

10   is in abeyance, I don't know that you really need a

11   further extension.  If I can act, I can only act if you

12   make a motion.

13         MS. WHITNUM:  In the motion that I asked for, I

14   asked that -- you put in part was a 30-day extension.  I

15   had asked that the extension be extended until the open

16   motions were ruled upon especially number 125 on the

17   docket so by 30 days.  The reason why I was forced to

18   file yet another appeal is because of your 30-day rule.

19   I don't want to fight an appeal on a motion for extension

20   of time.  But the larger ramification force me to.

21         THE COURT:  Before I turn to Attorney Talberg,

22   Ms. Whitnum, I want to address this issue of exhibits

23   that were filed and were stricken.

24         Now you have made a motion to file exhibits, but

25   you also filed exhibits.  Could you tell me on the

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 83 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page83 of 123

14

```
 1    exhibits you filed recently the end of January, Exhibits
 2    D, E, C, A, B, and F, they are number 192 down to 187.
 3    What are they exhibits to?
 4              MS. WHITNUM:  The reply I wrote this morning is
 5    all those exhibits since they were stricken, okay.  I did
 6    in the beginning gratuitously on September whatever it
 7    was, I put most of my exhibits.  I think there was -- I
 8    don't think it was excessive.  And I explained in a
 9    motion why I did that.  You know, in the case of Whitnum
10    v. Town of Greenwich, those exhibits were given to the
11    clerk, never uploaded.  It was A paper file and I have
12    never seen them again so for posterity, when I appealed
13    that to the Second Circuit, I said to them, to the Second
14    Circuit, you need to ask for the exhibits or they will
15    not get them.  They didn't ask for them.  Justice was not
16    served.  For posterity it is not even on the record which
17    is why since the day in this court and every other that I
18    got electronic filing, I like to put my exhibits on the
19    record.  This way there's no disappearing behind the
20    counter and people get a false idea of what happened
21    here.  I explained that pretty clearly.  I did pile them
22    on and I saw Judge Shea's annoyance with that.  I didn't
23    want to annoy him.  I wasn't sure why he was annoyed.
24    Every single one of those exhibits would be going to
25    trial.  Every single one of those exhibits would be going
```

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 84 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page84 of 123

15

1    to one motion or another.

2            Since that time, the motions I filed, if you see

3    A, B, C, D., That all goes to a filed motion.  Attorney

4    Talberg filed an objection the other day.  He wants all

5    my motions stricken and all the exhibits stricken.  Why

6    do we have a case if they can get rid of all of my

7    motions.  If you rule on that, I wrote the reply this

8    morning.  If you rule on that, if there's no motions and

9    no exhibits, the big bulk exhibits, what's going to

10   happen if we go to trial, I'm going to scan them all in.

11   I did this in Whitnum v. Second Town of Greenwich case.

12   I made one great big scan file at the Stamford Library

13   scanned in 250 pages or whatever.  I have a right.

14   There's an element when you go to Pacer trial exhibit to

15   file, click her.  If the right exists, I'm going to put

16   my trial exhibits on file.  As soon as they strickened

17   them, they don't want them on individually.  Maybe they

18   are not relevant.

19           At some point, if we get to that point, unless,

20   of course, you want to bury this and make sure nobody

21   knows what really happened here for friends or whatever,

22   you don't disrespect, but, you know.  I would like to be

23   able to put my exhibits on the record.  I'm not ashamed

24   or embarrassed or hiding from them.  Although I think

25   other people should be because they are pretty damning.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 85 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page85 of 123

16

1     I think exhibits should be allowed on the record.  If you

2     don't allow the exhibits that I put on in September to be

3     on the record, then at the very least, I would like to be

4     able to put them all together.  Maybe they took up too

5     much room and just scan in one great big pile of

6     exhibits, so they are on the record for trial.  In that

7     case, I will put it under trial exhibits with the very,

8     very optimistic belief that we're going to get past

9     summary judgment and we will go to trial.  If the statute

10    gives me a right to file trial exhibits --

11              THE COURT:  We're not at trial, Ms. Whitnum.

12              MS. WHITNUM:  What's the point of excluding all

13    of my exhibits?  Who are we protecting here please?

14              THE COURT:  We're not a trial.  We're not

15    protecting anyone.  Are you familiar with the Federal

16    Rules of Civil Procedure, Number Five?

17              MS. WHITNUM:  I am familiar, Your Honor.

18              THE COURT:  Discovery matters, other types,

19    things like that, unless it is attached to a motion and

20    relevant to the motion, like a summary judgment, you

21    would have exhibits to attach to an opposition to summary

22    judgment, then they come in as exhibits to the opposition

23    to summary judgment.

24              When we get to trial, I believe I hope somebody

25    issued a 26(f) order in this case.  It is not mine at the

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 86 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page86 of 123

17

1    beginning.  What I normally do is I schedule things, set

2    dates and then I attach a pretrial memo which tells the

3    parties what they have to file in advance of trial.  In

4    that order, you have to file, you have to exchange your

5    exhibits and provide electronic versions to the clerk, so

6    they are available for use during trial.  That's how they

7    get a part of the record.  But people aren't allowed to

8    file trial exhibits when we haven't gotten past summary

9    judgment.  It is not timely.

10         MS. WHITNUM:  That's true.  And they have been

11   stricken and I know they are off there.

12         THE COURT:  They are back again.  You say he

13   wanted to strike all your motions.  He didn't say that.

14   He said I want to strike the exhibits.

15         MS. WHITNUM:  No, Your Honor, you're wrong.

16   That's not what's happening here.  Every single exhibit

17   that's been filed since the strickening has been attached

18   to a motion.  He's asking to stricken all my exhibits

19   since that time and all the motions, too.  None of those

20   exhibits are gratuitous.  They are not there just to be

21   there.  They are there attached to a motion.  If you see

22   A, B, C, D because there's an attached motion.  I thought

23   I did a pretty good job about linking them in the system

24   to the appropriate objection or motion or reply.  He's

25   not telling the truth with that.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 87 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page87 of 123

18

1          THE COURT:  You filed, for example, on January

2    23, Number 189 Exhibit C, quote, Mary Fazzone affidavit

3    that we showed up to inspect and were turned away by

4    statewide prosecution bureau guys by L. Lee Whitnum

5    re:182 objection.  That was docketed on January 23.  It

6    is a stand-alone exhibit.  It is not connected to any

7    motion or any opposition or any pleading.

8          MS. WHITNUM:  Actually it was.  It was attached

9    to an objection.  Which one are you talking about?

10          THE COURT:  I picked 189 just as an example.

11          MS. WHITNUM:  Let me look that one up.  I will

12    tell you what it is attached to.  Exhibit C, Mary

13    Fazzone's affidavit that we showed up to inspect and were

14    turned away and this goes directly re:  182 objection.

15    The objection at 182 this was a claim that they had

16    complied with the pretrial order and a motion compel.

17          THE COURT:  How about Exhibit F, 192?  Subpoena

18    for all states attorneys files which Judge Underhill

19    refused to compel.

20          MS. WHITNUM:  Your Honor, this goes towards one

21    of the arguments.  I made the argument for that.  What I

22    was trying to say there and to show you in my objection,

23    that was Exhibit F, see notice how 187 is D, 188 is E,

24    189 is C, 190 was A, 191B and 192 was F.  They are all in

25    the wrong order, but they all go to the same objection.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 88 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page88 of 123

19

 1    I may not have linked it there and made it clear.  They
 2    all go to the objection which was 182.  The objection
 3    which was they claim that they were in compliance.  I'm
 4    saying no, you are not.  No, you are not.  They made some
 5    statements that's not true.  That's why I needed the
 6    affidavit of Mary Fazzone.  We did comply with Rule 31.
 7    We did do this.  All of these exhibits are there because
 8    they go directly to the exhibit.  When I put in the
 9    exhibit here, subpoena for all states attorneys file in
10    315c0959 was twofold.  Was to show that I have been
11    trying for years to get report number 2013-213 from the
12    statewide prosecutor's office.  I had this one.  I had it
13    from the lower court cases that they have refused to
14    provide that document.  Then that was, this was to show
15    that I have been trying.  That was an argument in my
16    reply to their objection. I've been trying for years.
17    Here is another proof of it.  All of these things were
18    not gratuitously put on there.  It is part of an argument
19    is what I'm trying to say.
20         THE COURT:  Okay.  I understand now.  What I
21    don't understand it is your objection to their notice of
22    compliance.  Their notice of compliance was ordered by me
23    when I ordered them to do certain discovery.  Now I
24    understand it is not the discovery you wanted.  It is not
25    the discovery you sought.  But I ordered it.  Maybe the

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 89 of 123
Case 19-1408, Document 1-2, 09/16/2019, 2583749, Page89 of 123

20

1    circuit will tell me I'm wrong.  That's fine.  If they

2    do, I will change it.

3         As of now, I ordered them to do discovery and

4    they filed their compliance report as I ordered them to.

5    I really don't know why who was there when something was

6    served is relevant to your objection.  What I would

7    really like to see in your objection is, Judge, you

8    ordered Mr. Whalen or whoever it is to answer this

9    question and he didn't answer it.  That's what I would

10   like to see because I can deal with that.  I can turn to

11   Attorney Talberg and say what are you doing.

12        MS. WHITNUM:  I thought I did do that.  But I

13   can certainly try to do it a little bit more carefully.

14   I can try to do it more helpfully.  That's why I applied

15   the affidavit for sanctions and asked for $500 for my

16   trouble, takes a lot of time to go through all of this

17   and fight what I think is they are not doing what they

18   are supposed to do.  The affidavit for sanctions which

19   was part of that, was my saying all of that anyway.  That

20   they did not comply, in my opinion, with your order and

21   that's why I asked for.

22        THE COURT:  I think I have read everything

23   that's been filed.  And I don't think I have anything

24   that says, Judge, you ordered them to answer the

25   following question.  See attachment for their answer, it

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 90 of 123
Case 19-1408, Document 1-2, 08/16/2019, 2583749, Page90 of 123

21

1    doesn't answer the question.  Please compel them and

2    sanction them for not following your order.  I want to

3    know.  I know you don't agree with me as to what I told

4    them to answer.  But if they didn't answer what I told

5    them to answer, then I really want to know that and I

6    want to deal with that.  And I would rather -- again I

7    don't know what I can do with the appeals pending, but at

8    some point, I want to be prepared when I can move the

9    case forward, to move it forward and I can't move it

10   forward if I have outstanding discovery and further

11   orders and I'm telling the defendant to do things they

12   should have done a month ago.  If you can file a

13   supplement on your objection, that would be very helpful.

14        MS. WHITNUM:  I will certainly do that.  Your

15   Honor, if I promise to be brief, is there anyway the four

16   people I would like to face to face depose in this

17   courtroom we can just have.  That's a huge portion of

18   this paper is just have depositions here.  I mean.

19        THE COURT:  If you can hold.  I know you made

20   that request.  I wrote it down.  I need to speak to

21   defense counsel.  Let me see what I can do in my

22   conversation with him to find out the history and I will

23   get back to you depending on what I'm going to do and you

24   can make further argument.

25        Attorney Talberg, the two named defendants, the

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 91 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page91 of 123

22

1   two police officers who are parties to this case, have

2   not been deposed?

3           MR. TALBERG:  They have not.  May I explain why?

4           THE COURT:  Yes.

5           MR. TALBERG:  So the case was filed August 2017.

6   There was a preliminary discovery deadline of February

7   10, 2018.  It was extended four times, not at the request

8   of the defendants, but at the request of the plaintiff.

9   It was moved to July 1.  Then let me make sure I have

10  these right.  I know it was moved to July, then moved to

11  September 1.  Then it was moved to October 1.  The first

12  kind of discovery request we received in any form from

13  the plaintiff was on or about September 7, 2018 when we

14  received not a notice of deposition but an attempt to

15  compel written questions by deposition.

16          THE COURT:  I'm familiar with it.  You don't

17  have to describe it.

18          MR. TALBERG:  So you read those.  Those were

19  hundreds of questions.

20          THE COURT:  Those were to the two nonparty as

21  well as to your clients?

22          MR. TALBERG:  As well to my clients.  We did our

23  best to answer the 100 or so questions.

24          THE COURT:  Is it your position that you never

25  received the Notice of Deposition for either Officer

Case 3:17-cv-01362-JCH  Document 211  Filed 05/17/19  Page 92 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page92 of 123

23

1  Crowther or Officer Cappiello?

2          MR. TALBERG:  That is our position.

3          MS. WHITNUM:  Your Honor, I have the people who

4  served them here Mr. Spurt and also Ms. Fazzone are here.

5  They served these.

6          THE COURT:  Served what?  What did they serve?

7          MS. WHITNUM:  Mr. Spurt, who is in the audience,

8  served the two police officers along with all the

9  exhibits.

10         THE COURT:  What did he serve?

11         MS. WHITNUM:  He served more than 100 deposition

12  questions along with the --

13         THE COURT:  I understand that.

14         MS. WHITNUM:  Mary Fazzone and then to the

15  non-named parties, I hired a process server.  He filed an

16  affidavit.  It is all on the record.  And then Mary

17  Fazzone served the deposition by written questions of the

18  non-party witnesses to Attorney Talberg to the glass in

19  their office.  It's all been uploaded.

20         THE COURT:  I'm well aware of that.  I thought

21  you were asking me for the opportunity to take a

22  deposition with the person in the room what is a

23  traditional deposition.  Not one on written questions but

24  where you ask a question and they answer the question

25  with the stenographer taking and making a record.  Is

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 93 of 123
Case 19-1408, Document 1-2, 09/16/2019, 2663749, Page93 of 123

24

1    that you are asking that you want?

2            MS. WHITNUM:  Absolutely not.  I'm countering

3    what he just said.  I would like to be able to have the

4    face to face depositions and Judge Underhill very

5    graciously allowed me to do this in the Whitnum v. Town

6    of Greenwich case and it went smoothly.  When the time

7    came where the person who had, you know, hurt me was put

8    on the stand and Judge Underhill made him answer the

9    question and it solved quite a bit.

10           THE COURT:  The problem is you said probably 20

11   minutes ago.  You reference the two police officers from

12   Woodbridge.  You said you just want their depositions and

13   you have been asking for a long time.

14           Counsel has just told me you never served on

15   counsel a Notice of Deposition which the rules call for

16   if all you want is to question someone face to face on

17   the record.  It doesn't take serving hundreds of

18   questions.  If you want an oral deposition, you file, you

19   serve a piece of paper that says I want to take this

20   deposition on this day.

21           MS. WHITNUM:  Your Honor, please.

22           THE COURT:  Have you ever served that?

23           MS. WHITNUM:  Your Honor, I have been in many

24   depositions and I know what's going to happen.  I'm going

25   to get there.  There's no one like Your Honor to be able

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 94 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page94 of 123

25

1    to say answer the question, tell the truth.  I have had

2    lawyers tag teaming me.  Don't answer that.  $2,000 later

3    and I have no questions answered.  I'm a woman.  I'm pro

4    se.  I have exercised that exercise in futility too many

5    times.  It is expensive.  I don't mind paying for the

6    depositions here, but I want answers to my questions, not

7    games, tricks.  I have seen it all.  I don't have the

8    kind of money to waste the time on that which is why I

9    did deposition by written question because it is a

10   question.  It is in writing and, you know, I can't pay

11   for court reporters in a private place and have a waste

12   of my time.  I know it is going to be a waste of my time.

13        THE COURT:  You can notice the deposition for

14   one of the conference rooms in a courthouse building if

15   you would like.  You can do that.  Whether a judge can be

16   available to help if there are problems.  I'm sure

17   Attorney Talberg will represent his clients, but he's

18   also -- I don't find him to be a particularly difficult

19   attorney, but I can't guarantee that.

20        But I guess bottom line, I don't have a problem

21   with you're way out of time, but if you want to depose

22   the two defendants, I will let you do it, but I'm really

23   confused.  You told me first you wanted to do it.  Then

24   when I asked you had you ever noticed a deposition, you

25   tell me how you have served all these written questions

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 95 of 123
Case 19-1468, Document 1-2, 08/16/2019, 2563749, Page95 of 123

26

1   which isn't what I'm asking do you want.  It is

2   different.  One is a set of written questions.  I ruled

3   on them right or wrong.  The circuit maybe will tell me.

4   But if you want a deposition on oral questions, I thought

5   you said you did, but now I'm confused.

6        MS. WHITNUM:  I don't understand why this is

7   confusing and his timing is wrong.  I asked from the

8   get-go.  A long time ago.  It has to be a full year ago.

9   I asked Judge Shea we need face to face depositions

10  because I have been through a lot of bad experiences.  I

11  would like just to have a judge in the room.  Your Honor,

12  I have been in a room where people have asked me to

13  answer questions. I didn't want to answer it.  They put

14  handcuffs on me.  Drag me away.  Next time I will say

15  drag me away and forced me to answer a question that was

16  irrelevant, unnecessary.  I don't understand why I get

17  the strong arm tactics when people want information out

18  of me and I can't seem to get the same thing.

19       What I have been asking a very long time is

20  Judge Shea, Judge Shea to sit in on deposition for the

21  four defendants.  If I want to be limited to 20 minutes

22  for each one and including the named defendants as

23  witnesses, Judge Emons behavior and her demand of my

24  arrest in 2015 is a well documented fact.

25       There's another factor that you don't know about

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 96 of 123
Case 19-1463, Document 1-2, 05/10/2019, 2585/749, Page96 of 123

27

1   this.  They provided 100 plus pages of discovery items on

2   the penultimate day of discovery.  I found a document

3   there that was very, very, very important.

4           If I had conducted depositions before receiving

5   their paperwork, it would have been a waste of time.  Now

6   that they have submitted all their paperwork, it changes

7   the questions.  Now those 100 questions maybe 120 I don't

8   know.  Probably pared down by now, but if you could just

9   have the opportunity to have 20 minutes with all four, we

10  would cut right to the chase and just get down to what

11  happened here instead of all of these things.

12          MR. TALBERG:  If I may, Your Honor, I think I

13  had the floor and was explaining why my clients weren't

14  deposed.  May I continue?

15          THE COURT:  Sure.

16          MR. TALBERG:  There had never been a written

17  Notice of Deposition.  If there had been, we would have

18  made arrangements.

19          MS. WHITNUM:  Not true.

20          MR. TALBERG:  Plaintiff was warned repeatedly.

21          THE COURT:  Please don't interrupt.  You have

22  spoken for a good thirty minutes this morning.  I turned

23  to counsel for defense.  He has the right to be heard.

24          MS. WHITNUM:  They are on the record so.

25          MR. TALBERG:  So the plaintiff was warned

1    several times by the Court the deadline won't be

2    extended.  It won't be extended.  Then 21 days before the

3    expiration we got this awkward batch of questions.  For

4    the record, when Your Honor did order on the motion to

5    compel, that the defendants must answer certain

6    questions, we answered those certain questions and so the

7    Notice of Compliance that we filed January 2 was just to

8    indicate to the Court that we had complied.

9            So here at this last point, we filed our motion

10   for summary judgment, November 20.  It would seem to be a

11   hardship at this point and prejudicial to reopen

12   discovery when plaintiff let the deadline pass and expose

13   our clients to depositions and so, I would have to object

14   to that, Your Honor.

15           I suppose there's nothing pending before the

16   Court in that regard because there hasn't ever been a

17   Notice of Deposition.

18           And I also agree with what you said at the

19   beginning.  We're in this awkward procedural phase.  It

20   is my understanding any time the Second Circuit takes an

21   interlocutory, there is no jurisdiction with the district

22   court.  That's why we're so puzzled by all these things

23   that keep getting filed.

24           For example, January 2, there were 13 of these

25   exhibits filed by plaintiff which they redundant,

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 98 of 123
Case 19-1408, Document 1-2, 08/16/2019, 2603749, Page98 of 123

29

1    duplicative.  They have been filed before.  I'm trying to

2    manage this and narrow this dispute, Your Honor.

3              MS. WHITNUM:  Your Honor, first of all.

4              THE COURT:  Excuse me, ma'am.  I'm still

5    speaking to counsel.

6              MR. TALBERG:  They shouldn't be filed just for

7    posterity.  We're trying to narrow the issue so when we

8    get to the core legal issues that are framed in our

9    motion for summary judgment.

10             MS. WHITNUM:  Your Honor.

11             THE COURT:  I haven't finished with Attorney

12   Talberg.  I get to pause and think about what I want to

13   say to him.

14             It is your representation to the Court, counsel,

15   that you have never received a Notice of Deposition for

16   either of your clients?

17             MR. TALBERG:  There appears to be no dispute.

18             THE COURT:  Don't say that.  Just answer.

19             MR. TALBERG:  That's correct. I have not, Your

20   Honor.

21             MS. WHITNUM:  That's not true.  I have the guy

22   who served it over here.  He can testify to it.  That's

23   just not true.  He's lying.

24             THE COURT:  You are misunderstanding, Ms.

25   Whitnum.  I asked the question.  I will go back and read

Case 3:17-cv-01362-JCH  Document 211  Filed 05/17/19  Page 99 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page99 of 123

30

1    it from the transcript was a Notice of Deposition that's

2    under Rule 30 for a deposition on oral questions.  It

3    provides a location, and a date, upon which a person.  In

4    this case, a party, is required to appear and answer

5    questions on a stenographic record face to face as you

6    keep saying.

7         It is a not a list of written questions which

8    the person it served on can when they feel like it, they

9    can sit down on Saturday, sit down on Monday, they get to

10   answer the questions.  If they don't object and they

11   provide the answers in the time period allowed by the

12   rule.  That's a different rule.

13        He has said that you never filed a Notice of

14   Deposition under Rule 30 which is a party may by oral

15   questions depose any person including a party without

16   leave of court except as provided in another part of the

17   rule.

18        B says a party who wants to depose a person by

19   oral questions must given reasonable written notice to

20   every other party and must state a time and place of the

21   deposition.

22        MS. WHITNUM:  And I've said to you that I never

23   wanted to do oral deposition in a place, in an obscure

24   place, paying for a court reporter.  I have done that

25   many times and it is usually a waste of time.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 100 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page100 of 123

31

1      Can you read the statute that says for

2   deposition by written question which I didn't even know

3   existed until Federal Judge Underhill gave me that option

4   one day.  So please do not read me the Notice of

5   Deposition for a deposition when I have already told you

6   I never wanted to depose him because I don't have

7   thousands of dollars to bang my head against the wall

8   with a bunch of lawyers preventing their client from

9   answering any questions which is why I come back to my

10  original question asked to Judge Shea a year ago.  Let's

11  cut to the chase in this case.  Let's have the

12  depositions in the courtroom, 20 minutes and we're done

13  and it's finished.  I'm asking you.  That's still a

14  question on the table, Your Honor.

15      He before said before he said 21 days before

16  the end of discovery, they were served with the

17  deposition by written question.  21 days.  According to

18  statute, they have 20 days.  So they had a full extra day

19  to answer the questions.  Now you've looked at the

20  questions.  You have agreed with them that they are

21  illegible, illogical, burdensome even questions which is

22  why this is at the appeals court.  A simple question like

23  identify on the exhibit the signature there.  These are

24  not all illegible and illogical.  They are questions.

25  Four hundred questions all of them are burdensome,

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 101 of 123
Case 19-1468, Document 1-2, 05/10/2019, 2583749, Page101 of 123

32

1    illogical, illegible, irrelevant.  It is impossible.  I

2    am not that stupid.  So, you know, I served it in time.

3    I got the guy who served it here.  They didn't answer

4    anything.  They turned in to you.  I ask them to compel.

5    Can we believe have face to face depositions and you tell

6    me I didn't file a notice for oral deposition.  I have

7    been fighting against that from the get-go from a year

8    ago.  That's not going to work.  They are not going to

9    answer anything.

10           The only thing that's going to work.  These are

11   powerful people.  These are powerful people and they are

12   all lawyers and they know the game.  The only thing

13   that's going to get them to answer questions is someone

14   who can peel the layers of friendship, of camaraderie, of

15   cocktail party camaraderie and say to John Whalen, sir,

16   this police report differs from her phone records.  Isn't

17   it true, sir, that you altered her phone records on your

18   report 2013-213?  That's very, very hard.

19           You're asking for the second highest law

20   enforcement person in the State to admit he criminally

21   framed a political candidate for a friend.  That is

22   monstrously huge.  I understand the situation you are in

23   which is why I asked you please, please, allow this case

24   to be transferred to New Jersey or New York.  It's too

25   dangerous even for me.  Please transfer this.  You get to

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 102 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page102 of 123

33

1    wash your hands of it.  You keep your friendship circle.

2    There's nobody mad at you.  Everything is good.  We need

3    justice.

4              THE COURT:  Do you know I have lifetime tenure?

5              MS. WHITNUM:  I know that.

6              THE COURT:  I don't care when people are mad at

7    me.  It is the beauty of the federal system.  Unlike the

8    state system.  People are always mad at me.  They don't

9    like my rulings.  I ruled against them.  Why didn't I rule

10   for them.  It doesn't matter to me because, you know, I'm

11   here and I will be here tomorrow and what people think is

12   really not what drives a federal judge.  I understand you

13   don't agree with my rulings.  And I could be wrong, you

14   know, I'm not perfect but there's absolute.  That's the

15   beauty of the federal system.  I just am not.  I don't

16   really care what people think.  I hope they think I'm

17   thoughtful and that I listen and that I spend time to try

18   to figure out what's the right answer.  Might not always

19   get it right but I try.  At the end of the day, that's

20   all that matters to me.  I digressed.

21             I have to say, Ms. Whitnum, I am confused.  In

22   the space of a page on the transcript, you said, quote,

23   and I never said to you I never wanted to do oral

24   deposition in a place, then less than a page later, you

25   say let's have a deposition.

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 103 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2583749, Page103 of 123

34

1          MS. WHITNUM:  Okay.  All right.  A Notice of

2     Deposition would have been sent out if judge -- if I were

3     going to hold my own deposition with my own private court

4     reporter and I made this abundantly clear.  That's a huge

5     waste of time.  That's very expensive.  There's no

6     governing body.  No one to say you're lying.  They will

7     play games with me.  I've sat in depositions where I had

8     lawyers tag teaming me on my dime, a thousand dollar

9     later and there's no discernible answerable question.

10    When you say oral deposition, yes, I would like oral

11    deposition.  I have been begging for it for a year.  In

12    this courtroom, I will stand right there.  Twenty minutes

13    top with each one.  We'll go right to the question.  If

14    they don't want to answer the question.  Mr. Whalen is

15    this your signature.  Answer the question.  It is not

16    burdensome.  It is not irrelevant.  Answer the question.

17    If they don't want to answer, I will turn to you and say,

18    Your Honor, please make him under threat of arrest and

19    the way I have been put under threat of arrest in the

20    past, make him answer the damn question.  That's all.

21    That's all I want.  I want to cut to the chase.  Maybe

22    five, six questions to each person.  It is not years and

23    months and games and tricks.  I just want the questions

24    answered.  That's all so I mean.

25          THE COURT:  I know of no procedure that would in

1    any of the rules.  Well, you're exacerbated with me.  I

2    appreciate you may think it is more practical to do what

3    you want to do.  I took an oath to uphold the law and the

4    law tells me if you want discovery then you do it a

5    certain way.  That way doesn't include convening court

6    and taking testimony.  That's called a trial.  That's

7    where we have a trial.

8         MS. WHITNUM:  No, no.  Your Honor please.  If I

9    hadn't done it with Judge Underhill.  I asked Judge

10   Underhill.  I said they are wholly non-responsive to

11   deposition by written question and I said can we hold

12   deposition in the courtroom.  Judge Underhill said

13   absolutely.  Just like that.  We had the player that was,

14   you know, noncompliant in the courtroom and he had to

15   answer the questions honestly.  It was fast.  I paid for

16   it.  It was fine.  I don't understand why this is a

17   problem unless you're protecting your friends.  I'm

18   sorry, Your Honor.  I mean you no disrespect.  This is

19   done all the time.

20        THE COURT:  I have been a judge 21 years.  I

21   have never done it.  Maybe Judge Underhill did it.  I

22   don't know.  Maybe I will ask him how he did it or why he

23   did it.  Maybe I will do it.  I don't know.  It is not

24   done all the time.  I can tell you that, Ms. Whitnum.  It

25   is definitely not done all the time.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 105 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page105 of 123

36

1          MS. WHITNUM:  I draw your attention to the

2     record, Your Honor, Federal Judge Shea in his ruling said

3     something like okay, but before we take that step, try to

4     do it yourself and have a good-faith effort.  He didn't

5     say this is not done.  I never heard of such a thing.  He

6     seemed to think it was okay.  I will show you his ruling

7     if you like.

8          THE COURT:  Is it on the docket?

9          MS. WHITNUM:  Yes, it is.  Yes, it absolutely

10    is.

11         THE COURT:  37 you think, Muji?

12         MS. WHITNUM:  It is 37.

13         THE COURT:  Yes.

14         MS. WHITNUM:  Here it is.  This is Judge Shea's

15    words. Plaintiff suggests that she anticipates that

16    certain witnesses may refuse to answer certain questions

17    she may pose at the deposition.  If those questions seek

18    discovery within the scope of Federal Rules of Civil

19    Procedure 26I(e) discovery that does not seek privileged

20    information and is relevant to a claim or defense, and

21    proportional to the needs of the case.  Then he says see

22    26B then a failure to answer by a witness may result in

23    sanctions including, for example, second deposition

24    conducted at the witness's and/or the witness's counsel

25    expense at which the witness could be required by court

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 106 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page106 of 123

37

1    order to answer relevant questions that he or she had

2    previously refused to answer.  The parties are reminded

3    those conducting depositions are also bound by -- okay.

4    The Court expects the parties and counsel to comply with

5    these rules.  If there is a problem at the deposition

6    with respect to a particular question, each side should

7    make a record as to that question and the witness counsel

8    should set forth the objection, any proper basis to

9    instruct the witness to refuse to answer and the

10   examining party should set forth why the question should

11   be answered so that the record will be available to the

12   Court and the deposition should then continue with

13   respect to the remaining questions.

14        After the deposition, the party may, after

15   making good-faith efforts to resolve the dispute

16   themselves, which may be documented by the affidavit,

17   file a discovery motion with the Court, requesting that

18   the Court resolve the dispute and supply the Court with

19   pertinent record.

20        THE COURT:  I would have said exactly the same

21   thing.  That's how I expect somebody who wants an oral

22   deposition.  He's basically warning the parties to

23   behave.  Then he says if you don't behave, there will be

24   a motion.  If I agree with person making the motion that

25   the other side didn't behave under the rules, I will

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 107 of 123
Case 19-1408, Document 1-2, 05/16/2019, 2583749, Page107 of 123

38

1   sanction them and we'll have another deposition that will

2   be paid for by the offending party.  He's not saying he's

3   going to sit in the courtroom and preside over the

4   deposition.

5          MS. WHITNUM:  But I was asking for that.  He

6   didn't say no.  He didn't say it is not done because I

7   have done it before.  Judge Underhill did it.  He didn't

8   say it is not done. He's saying this what you do.  I

9   submitted their answers and you came back that you agreed

10   100 questions, 400 questions were irrelevant, burdensome

11   you read some of them.  Seems to me they have answered

12   some questions, yeah, name, rank and serial number; name,

13   rank, and serial number.  These are irrelevant questions.

14   You agreed with them.  That looks like they did their

15   part.  No.  That's why we have an appeal.  They didn't do

16   their part.  They didn't answer any questions.  They

17   didn't answer any questions.  I already know their names.

18          THE COURT:  Can I state for the record that the

19   judge's order at Docket 37 which was just read in part by

20   Ms. Whitnum was a denial of a motion for judicial

21   intervention during deposition.  Now I don't have a copy

22   of that in front of me.  But certainly by its title it

23   suggests that you were looking to take an oral deposition

24   under Rule 30 and you wanted the judge to intervene and

25   that was his ruling.  Now it is possible in your motion,

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 108 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page108 of 123

39

1   can you open number 36, Muji, and tell me if there's

2   anything in there about written questions?

3          Attorney Talberg, I understand we're out of

4   time.  I know I've said I wasn't going to extend the

5   time.  As long we're delayed with the Court of Appeals

6   business, I don't see why the two clients that are

7   parties to the case can't give an hour deposition and

8   that we can't hold it in the courtroom, subject to Judge

9   Shea's exhortation about what's allowed in a deposition

10   by way of objection and a record will be made and if

11   Ms. Whitnum's optimism is mistaken that she can in 20

12   minutes get the answer she needs because there isn't a

13   judge sitting in the room, then she can make a motion and

14   I will have the transcript, and if I decide that your

15   client should have answered, well, you will be paying for

16   the second one.  If your answers were fine, if your

17   objection was reasonable because well, not many

18   objections are reasonable in a deposition so I won't say

19   that.  But if they were, then her motion to compel would

20   be denied.  What's wrong with that, Attorney Talberg?

21   Other than I know you would rather not have your clients

22   give depositions but.

23          MR. TALBERG:  What's wrong with that is

24   basically was the road map that was given to the

25   plaintiff back 10 months ago in April.  If we received

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 109 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page109 of 123

40

 1    the notice, we would have complied.  It never happened.

 2            THE COURT:  I'm not sure she wants one now.  But

 3    my view is it can be held in the courtroom if I'm

 4    available to intervene if there's a problem, I will

 5    intervene that day. I can't guarantee you I will be

 6    available.  I may have something else scheduled or not be

 7    in the courthouse.  If I'm available, I will intervene.

 8    If not, I will ask Magistrate Judge Merriam to intervene

 9    as to whether a question should be answered or not

10    answered.  If nobody is available, there's a record and

11    we'll hear it later.  I think a good place would be the

12    lawyer's lounge across the hall.  It be done in the next

13    couple of weeks and let's see if that takes care of it

14    all as Ms. Whitnum seems to think it will.

15            MR. TALBERG:  I can't imagine a scenario where I

16    would need a judge to referee any question in a

17    deposition.  It seems that plaintiff is committed to 20

18    minutes of limited questions.  I wouldn't have a problem

19    with that.  I have stated my objection.  I understand you

20    are overruling me already.

21            THE COURT:  I know you have to object.  I'm a

22    firm believer in deadline lines.  I think Judge Shea

23    couldn't have been clearer and extended it once.  I

24    extended it to require the discovery that I ordered.  I

25    am not going to order it as to the non-parties.  I'm not

 1  letting it be cited in.  I think as the two officers who

 2  are defendants in the case, a short deposition is

 3  perfectly reasonable and probably a good thing to have

 4  happen.  If you don't want to do that because you think

 5  it will be a waste of time, I understand that, Ms.

 6  Whitnum.  But I'm saying that if you want to notice it

 7  for the lawyer's lounge in this courthouse, 141 Church

 8  Street in the next couple of weeks.  I will try to make

 9  myself available or I will see the magistrate judge is

10  available.  She does discovery disputes as well.  I would

11  allow you an hour with each.  I know you said 20 minutes

12  but it takes a while to get going and whatever. I would

13  say an hour deposition.

14          I would reinforce to Attorney Talberg what Judge

15  Shea said in his order, but I would also emphasize to you

16  because you sometimes do bring in issues that obviously I

17  don't think are relevant.  This case relates and these

18  two defendants are sued for arresting you in 2015 based

19  upon what I think you believe and you may be right but

20  what you believe was a terminated protective order.  In

21  other words, a protective order that wasn't in effect so

22  they had no basis to arrest you.  No probable cause.  And

23  so that's what I would like you to focus on in the

24  deposition for these two officers.

25          MS. WHITNUM:  But, Your Honor, there is, okay,

Case 3:17-cv-01362-JCH  Document 211  Filed 05/17/19  Page 111 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page111 of 123

42

1    maybe I don't have a strong legal argument to cite in

2    John Whalen in 2015.  But in 2015, jane Emons was wholly

3    instrumental, the Woodbridge Police had already done an

4    investigation that I did not ring her bell and run back

5    in 2013.  She put up Marshal Kirschner, and I didn't find

6    this out until the penultimate day of discovery that she

7    put up Marshal Kirshner who is a judicial marshal, to

8    call up the Woodbridge Police Department.  These poor

9    guys I feel badly for them.  I didn't mean to drag them

10   into this.  They were totally manipulated by Marshal

11   Kirshner who was quite unabashed, according to Officer

12   Karuther was put there by Jane Emons.  These officers

13   only knew what they were told.  They are not telepathic.

14          The problem is by not citing in Jane Emons,

15   okay, by not citing, now should they have investigated

16   when I was telling them you're wrong.  There's no active

17   protective order.  This protective order was bogus from

18   the get-go and based on an investigation that you guys

19   had already concluded I was not guilty.  They didn't

20   believe me at the time.  They believed people with

21   position and authority.  I'm a nobody.  Jane Emons lied

22   to Kirshner who then lied to the police officers.  The

23   police officers were negligent in not doing their

24   investigation and believing me but you cannot, Your

25   Honor, you cannot not include Jane Emons and Marshal

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 112 of 123
Case 19-1468, Document 1-2, 05/16/2019, 2563749, Page112 of 123

43

```
 1    Kirshner, Kirshner needs to be deposed.  He was the one
 2    who told the police officers that the protective order
 3    was not based on what they had already investigated and
 4    concluded --
 5              THE COURT:  Why didn't you depose them a year
 6    ago?
 7              MS. WHITNUM:  Because I just got the document
 8    the penultimate day of discovery.  I have no way of
 9    knowing Marshal Kirshner's involvement.  I had no way of
10    knowing.  Marshal Kirshner was put up to it --
11              THE COURT:  I'm looking at an arrest warrant
12    application.  I believe signed by Sergeant Cappiello, one
13    of the defendants.  It is dated August 5, 2015.  He
14    swears -- actually it is Officer Crowther being sworn and
15    deposed, et cetera, et cetera.  Then he says paragraph 1
16    on Friday, July 31, 2015, this affiant received a call
17    from Robert Kirshner who is in charge of the Superior
18    Court operations.  That he was notified by the victim
19    Jane Emons.  I don't know.  When you are charged in state
20    court, don't you get discovery?  You never got a copy of
21    the warrant application?
22              MS. WHITNUM:  Your Honor, that is another motion
23    that's coming.  Okay.  I never got any of the
24    documentation.  When I was there to turn myself in they
25    gave me the arrest record.  That report that you read
```

Case 3:17-cv-01362-JCH Document 211 Filed 05/17/19 Page 113 of 123
Case 19-1408, Document 1-2, 05/10/2019, 2563749, Page113 of 123

44

1  from I got it from him the penultimate day of discovery.

2  During discovery.  I didn't have it.  I don't know.  Do

3  you think that when I went there --

4          THE COURT:  I have to interrupt you.  I

5  scheduled this for 30 minutes.  I have a 12:00 conference

6  call in my chambers in a criminal matter so I have to

7  recess.

8          MR. TALBERG:  Quickly, Your Honor.  It's hard to

9  say in the next couple of weeks we're going to just drop

10  into my calendar.  I don't know about my officers'

11  availability.  Frankly all due respect, if we were

12  strictly following the law, does the court have

13  jurisdiction at this point to compel us to do that or

14  would it be more appropriate for us to wait until it

15  comes back from the Second Circuit say there's going to a

16  window 30, 60 days after it's back in the district court.

17          THE COURT:  You can strike the 60.  Strike the

18  30.  If we wait until it comes back from the circuit, I

19  will give you two weeks' notice and your officers will be

20  available and you will be available.  That's fine.  We

21  can wait until it comes back and I will issue an order.

22          MS. WHITNUM:  Your Honor, what are we doing

23  here?  Discovery --

24          THE COURT:  We're standing in recess is what

25  we're doing.  Thank you.

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 114 of 123
Case 19-1468, Document 1-2, 05/10/2019, 2563749, Page114 of 123

45

1          (Whereupon, the above hearing adjourned at 12:01

2     p.m.)

3

4

5          COURT REPORTER'S TRANSCRIPT CERTIFICATE.

6     I hereby certify that the within and foregoing is a true

7     and correct transcript taken from the proceedings in the

8     above-entitled matter.

9

10    /s/   Terri Fidanza

11    Terri Fidanza, RPR

12    Official Court Reporter

13

14          .

15

16

17

18

19

20

21

22

23

24

25

# CURRENT EXHIBIT E

Case 3:17-cv-01362-JCH   Document 211   Filed 05/17/19   Page 116 of 123
Case 19-1458, Document 11   Filed 05/10/2019   Page 46 of 123
Case 3:17-cv-01362-JCH   Document 137   Filed 12/12/18   Page 1 of 4

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| L. LEE WHITNUM,<br>    Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-1362 (JCH) |
|   v. | : | |
| | : | |
| TOWN OF WOODBRIDGE, ET AL | : | DECEMBER 12, 2018 |
|     Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION TO AMEND COMPLAINT (DOC. No. 105)**

By Motion filed on October 16, 2018 (Doc. No. 105), the plaintiff, L. Lee Whitnum, has requested leave to amend her Complaint. As grounds for her request, she cites 68 pages of discovery recently received.[1] The defendants have objected to the Motion for Leave to Amend (Doc. No. 109).

The plaintiff correctly cites Rule 15: "(a) A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). There are two aspects to the proposed amended complaint, which the court addresses. First, beginning at paragraph eight and continuing to paragraph 33, the plaintiff seeks to add pages of pleadings which are not appropriate allegations in connection with stating a claim pursuant to Rule 8 (a complaint should contain a "short and plain statement" showing entitlement to relief). In effect, the plaintiff appears to plead evidence. This is inappropriate.[2] Further,

---

[1] However, the court does not see reference in her Motion to Amend or Reply to any of this new discovery as it would relate to the proposed amendments, and justify the amendment.

[2] In making this observation, the court does not in any way suggest that what is alleged in these paragraphs is relevant evidence to the plaintiff's claims plead in the first 7 paragraphs.

1

the additional pleading in paragraphs 8-33 relate to former Superior Court Judge Jane

Emons, the plaintiff's divorce proceedings, the plaintiff's arrest in 2013 and related court

proceedings, and Judge Emon's re-confirmation hearing in 2018.  None of this is

relevant to this case, which was brought to assert causes of action arising out of an

arrest of the plaintiff in August 2015.  Thus, the court will permit the plaintiff to docket an

amended complaint that contains paragraphs one through seven of her proposed

amended complaint, which contain additional allegations that relate to her 2015 arrest.

The other aspect of the plaintiff's proposed amended complaint is that she seeks

to add seven new causes of action against all defendants: first amendment, conspiracy,

section 1983 violation, due process, another conspiracy, speedy trial, and defamation.

The defendants object to the addition of new causes of action claiming that discovery is

closed, they are in the midst of preparing a dispositive motion,[3] and this will prejudice

them.  While the court understands that the allowance of the filing of an amended

complaint may necessitate the defendants' modification of their summary judgment

motion, the court can cure that by providing the defendants with an additional,

reasonable time period to file a supplemented or amended summary judgment motion.

As the court has limited the amendment to some additions to plaintiff's original claims as

set forth in paragraphs 1-7, the basic allegations of fact by the plaintiff have not

changed in this proposed amended complaint.  It continues to allege that the

defendants caused her to be arrested for violation of a protective order that did not exist

and, as a result, she was damaged.

---

[3] A Motion for Summary Judgment has been filed (Doc. No. 121).

To the extent the plaintiff seeks to add a cause of action under section 1983 of title 42 of the United States Code for a violation: of her first amendment rights; of her right to due process; and of her right to be free from false arrest,[4] an amended complaint may be filed claiming those causes of action.[5]  The court adds that the plaintiff may file an amended complaint, which asserts a cause of action for defamation and defamation per se under state law.

To the extent plaintiff seeks to amend to add claims for "violation of the constitutional right to speedy trial sixth amendment," see Proposed Amended Complaint (Doc. No. 105) at ¶ 46, the Motion to Amend is denied.  The only possible violation of plaintiff's speedy trial rights, even considering allegations the court has not permitted, would have arisen out of the 2013 arrest and prosecution.  No allegation asserts either of the defendants were involved in the 2013 arrest and prosecution.

To the extent the defendants have claimed that the allowing the assertion of causes of action would be futile, the defendants may assert, e.g., a special defense that the plaintiff's claims are barred by the statute of limitations, and move for summary judgment on that basis.

The plaintiff will have 14 days from the date of this Ruling to file an amended complaint consistent with this Ruling.  Any amended complaint filed that sets forth more than paragraphs 1-7 of the proposed Amended Complaint and paragraphs 34-45 will be stricken.  The defendant may file an amended or supplemental summary judgment

---

[4] While it is not clear from the proposed amended complaint, the court reads the proposed amended complaint to assert a false arrest claim under section 1983 and state law.

[5] The court is not addressing whether any newly added causes of action are futile or fail to state a claim; the court expects defendants will raise any such claims in their revised summary judgment motion.

3

motion no later than January 17, 2018.  The plaintiff will file her opposition to the amended or supplemental summary judgment motion and the motion now pending no later than February 17, 2019.

To the extent the amended complaint purports to assert additional allegations, and causes of action, the defendant should ignore such pleadings and proceed to prepare its amended/supplemental summary judgment motion as to claims and allegations as permitted by this Ruling or originally asserted in the Complaint.

**SO ORDERED.**

Dated at New Haven, Connecticut this 12th day of December 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

4

## **CERTIFICATION**

Under penalty of perjury, I hereby certify that on May 9, 2019 copy of the Petition

for Writ of Mandamus, Exhibits and Motion to Proceed Forma Pauperis and T-1080

were sent via Federal Express to the judge of record:

**Judge Janet Hall**
**US District Courthouse**
**141 Church St.**
**New Haven, CT 06510**

Please see the attached receipt of mailing.

Sincerely,


s/L. Lee Whitnum



FedEx Office℠

| | |
|---|---|
| Address: | 4224 VIRGINAI BEACH BLVD |
| | VIRGINIA BEACH |
| | VA 23452 |
| Location: | NTUKI |
| Device ID: | -BTC01 |
| Transaction: | 930230817506 |

---

**FedEx Standard Overnight**
 787161611216     1.6 lbs. (S)      46.55
     Declared Value    100
Recipient Address:
    JUDGE JANET HALL
    US DISTRICT COURTHOUSE
    141 CHURCH ST
    New Haven, CT 06510
    0000000000

Scheduled Delivery Date 5/10/2019

Pricing option:
    ONE RATE

Package Information:
    FedEx Pak

| | |
|---|---|
| Shipment subtotal: | $46.55 |
| **Total Due:** | **$46.55** |
| (S) CreditCard: | $46.55 |

     ************4381

 M = Weight entered manually

## **CERTIFICATION**

Under penalty of perjury, I hereby certify that on  May 2, 2019  copy of the

Petition for Writ of Mandamus, Exhibits and Motion to Proceed Forma Pauperis and T-

1080 were sent via the private carrier United Parcel Services to:

Kirsten & Tallberg, LLC
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067


Please see the attached receipt of mailing.

Sincerely,

s/L. Lee Whitnum

2133 Uptwn Drive
STE 126
Virginia Beach, VA 23454
(757) 430-7881

05/02/19 05:04 PM

e are the one stop for all your
pping, postal and business needs.

e offer all the services you need
to keep your business going.

|||||||||||||||||||||||||||||||||||||||||||||||||||||||

                            TO $ 25.11
01 001015 (001)
   2DA AM
   Tracking# 1ZA9Y5800768574338
                    SubTotal    $   25.11
                    Total       $   25.11

                US DEBIT       $  25.11
                      **************0364

ACCOUNT NUMBER *

Verified By PIN

ENTRY METHOD: ChipRead
MODE: Issuer
AID: A0000000980840
TVR: 8080048000
TSI: 6800
AC: 017D616862341C19
ARC: 00

Receipt ID 83058553224303888218 001 Items
                    Tran: 7141 Reg: 001
CSH: JESSIE

                Sale
                      **************0364

Debit Entry Method: EMV
                            Appr Code:005820
                              Batch #:
Trace:
Retrieval #:MR0149996649
                            $  25.11
                            ==========
Amount                      $  25.11

Merchant Total

                Approved

Thank you for visiting our store.
     Please come back again soon.

Whatever your business and personal
needs, we are here to serve you.

        We're here to help.
Join our FREE email program to receive
        great offers and resources.

                ...com/signup

---

# Shipment Receipt:  Page #1 of 1
THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

| | |
|---|---|
| SHIP DATE: <br> THUR 2 MAY 2019 | SHIPMENT INFORMATION: <br> UPS 2ND DAY AIR AM <br> 1.35 LB ACTUAL WT |
| EXPECTED DELIVERY DATE: <br> MON 6 MAY 2019 10:30 AM <br> SHIP FROM: <br> LISA BAKER <br> 112 SEABRIGHT CT <br> VIRGINIA BEACH  VA 23454 <br> (914) 426-1394 | 2.00 LB BILLABLE WT <br> CARRIER LETTER |

TRACKING NUMBER: 1ZA9Y5800768574338
SHIPMENT ID: MMTSFXRBXYDF8
SHIP REF 1: - -
SHIP REF 2: 4B09JB

SHIP TO:
CARSTEN & TALLBERG LLP
500 ENTERPRISE DR
STE 4
ROCKY HILL CT 06067-3913
BUSINESS

DESCRIPTION OF GOODS:
DOCUMENTS

SHIPMENT CHARGES:
| | |
|---|---|
| 2ND DAY AIR AM | 23.05 |
| SERVICE OPTIONS | 0.00 |
| FUEL SURCHARGE | 1.84 |
| CMS PROCESSING FEE | 0.22 |

SHIPPED THROUGH:
THE UPS STORE #4809
VIRGINIA BEACH,VA 23454-1194
(757) 430-7881

| TOTAL | $25.11 |
|---|---|

COMPLETE ONLINE TRACKING:  ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK:
HTTP://THEUPSSTORE.COM  (SELECT TRACKING, ENTER SHIPMENT ID #)  SHIPMENT
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE.

SHIPMENTID: MMTSFXRBXYDF8  |||||||||||||||||||||||||||||||||||||||||

Powered by (Ship(r))
05/02/2019 02:04 PM  Pacific Time N                    The UPS Store«



SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.    UBD-N-0419