UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| L. LEE WHITNUM BAKER, | : | CIV. NO. 3:17cv01362(JCH) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE TOWN OF WOODBRIDGE, | : | |
| ROBERT B. CROWTHER (PERSONALLY | : | |
| and PROFESSIONALLY), FRANK | : | |
| P. CAPPIELLO (PERSONALLY and | : | |
| PROFESSIONALLY), | : | AUGUST 20, 2019 |
| Defendants. | | |

## LOCAL RULE 56(a)2 STATEMENT OF FACTS IN OPPOSITION TO PLAINTIFF'S REVISED STATEMENT OF MATERIAL FACTS IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 56(a)(2), the defendants, Town of Woodbridge, Robert B. Crowther and Frank Cappiello (collectively the "defendants"), offer the following response to plaintiff, L. Lee Whitnum's revised statement of material facts in support of her cross motion for summary judgment.

## GENERAL OBJECTION

The defendants object to each and every separately numbered paragraph of plaintiff's Local Rule 56(a)1 statement as indicated below to the extent that they are not material to the resolution of the defendants' motion for summary judgment or plaintiff's cross motion for summary judgment as contemplated in Local Rule ("L.R.") 56(a)1 and do not cite to a specific affidavit of a witness competent to testify as to the facts at trial or other evidence that would be admissible at trial as required by LR 56(a)3. The defendants further object to the extent that each and every separately numbered paragraph as set forth below fails to cite to any admissible evidence and is not supported by any admissible evidence as required by Rules 56(c)(2) and 56(c)(3) of the Federal Rules of Civil Procedure. Plaintiff's revised statement of material facts is

objectionable for the additional reason that it is longer than twelve (12) double-spaced pages as set forth in LR 56(a)1.[1]

## RESPONSES TO PLAINTIFF'S STATEMENT OF FACTS[2]

1.    According to his testimony in the Arrest Warrant July 31, 2015, Detective Crowther received a call from Mr. Robert Kirchner, who at the time was in charge of Superior Court operations for the State of Connecticut (Exh. E, par. 3).

**Response:**  <u>See</u> General Objection.  Subject to and without waiving the foregoing objection, admit.

2.    Jane Emons had already predisposed the Judicial Marshal Service describing and then accusing this litigant of ringing her bell and ruling on June 22, 2103 (Exhibit Z page 2).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that Judge Jane Emons complained of a ring and run at her house and identified the plaintiff as a potential suspect.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

3.    According to the arrest warrant, Kirchner informed Detective Crowther (Exh. E) that he had received a call from Judge Jane Emons of Woodbridge on July 30, 2015 regarding a

---

[1] The defendants' responses to each numbered paragraph contained in the plaintiff's revised statement of material facts is longer than 24 pages as called for in Local Rule 56(a)2, but is less than twice the length of plaintiff's 21 page revised Local Rule 56(a)1 Statement.  The defendants have responded to each numbered paragraph set forth in plaintiff's revised Local Rule 56(a)1 Statement, even though Paragraphs 54-100 are objectionable as they exceed the 12 page limit set forth in Local Rule 56(a)1.

[2] The defendants have copied the individually numbed statements in plaintiff's revised Local Rule 56(a)1 statement (except for screen grabs and non-text inserts) verbatim including any typographical and formatting errors, i.e., numbering.

4831-2014-7873, v. 1

document that had been mailed to her with a return address of "Whitnum, P.O. Box 7482, Greenwich, CT 06836."

**Response:** <u>See</u> General Objection.  Subject to and without waiving the foregoing objection, admit.

4.      Crowther says in the arrest warrant (Exh. E P 3): "Whitnum-Baker in the past has been arrested by the State Police for an incident that warranted the protective order."  This is not true.  The protective order was based on the 6-22-2013 ring and run (Exh. G) and a telephone call.  This litigant had paid on June 21, 2013 plead guilty for the phone call and paid the $ 85 "creating a public disturbance" fine.  Mr. Ramia stated the following during the hearing for the protective order, (Exh. D paragraph. 2),

> "The state is filing a substitute information your Honor, stalking in the 2nd degree, harassment in the 2nd degree, disorderly conduct.  Allegation involve harassing phone calls and stalking conduct towards a Superior Court Judge at her home as well as phone calls to her son out of state."

False, there was no stalking conduct because this litigant never ran Emons bell and ran.

**Response:** <u>See</u> General Objection.  Subject to and without waiving the foregoing objection, admit the contents of the warrant prepared by Detective Crowther.  The remaining allegations of Paragraph 4 are denied, and the contents of the warrant were and remain accurate as a reading of the quote from Mr. Ramia set forth by the plaintiff establishes that the phone calls to Judge Emons and her son, which were investigated by the State Police, were considered when entering the protective order against the plaintiff.

5.      The protective order was based on lies from the get-go as this litigant never rang Jane Emons bell on June 2, 2013, and there was no "State Police" action that merited a protective order, a telephone call did not garner Emons a protective order.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are not supported by admissible

evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

6.      Additionally, this litigant did not make "phone calls to her son out of state."  This

litigant never knowingly called Emons' son.  He picked up the phone once.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the plaintiff admits she called Emons' son on the

phone on one occasion, and the statements are not supported by admissible evidence as required

by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

7.      To repeat, this litigant never knowingly called Jane Emons' adult child.  This

litigant was calling to find Jane Emons on May 15, 2013 and he answered the phone.  Once.  To

imply that this litigant called him to harass him is an absolute lie – the above arrest warrant

states, "phone calls to her son out of state" this is plural and patently false.  One month later on

6-22-2013 Emons claimed she didn't see anyone but none-the-less accused this litigant, by

name, of ringing her bell and running and demanded her arrest (Exh. G).

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, it is only admitted that Emons identified the plaintiff as a

potential suspect.  The remaining allegations are denied as the plaintiff admits she called Emons'

son on the phone on one occasion, and the statements are not supported by admissible evidence

as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

8.      The Woodbridge Police, mainly Detective Crowther ignored the above and believed the lie by Judicial Marshal Kirchner that the protective order was based on a "state police action" which is not true.  (Exh. E P 3) it states,

> "Whitnum-Baker in the past has been arrested by the State Police for an incident that warranted the protective order"

This litigant was never arrested by the State Police for an incident that warranted a protective order.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.  Additionally, the arrest warrant was based on Detective Crowther's investigation of the complaint received from Mr. Kirchner. <u>See</u> Doc. 234, at ¶¶ 1-11.

9.      According to the affidavit of Mary Puzone (Exh. H), this litigant could not have rung Jane Emons' bell and ran on June 22, 2013 for several reasons.  Number one, it is patently impossible for two calls from the same phone to end at the same time and be linked to two separate cell towers 2 ½ hours apart.  This litigant's true phone records (exh. aa and below) stated she made a call on June 22. 2013 that ended at 19:13.  Notice there is another call above it that ends at the EXACT millisecond 19:13 and yet both calls are linked to two separate towers 56 which is Woodbridge and 72 which ins New York City.  Impossible according to Puzone.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated

in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.

10.     Further, Puzzone says that planted calls (those two calls with zero in the last two columns and associated with tower 56 (in Woodbridge)) are neither to nor from this litigant's phone number.

Whitnum's rendition of her phone records: (omitted non-text insert)

Versus Whalen's rendition of the same portion of the phone records: (omitted non-text insert)

**Response:** See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.

11.     Further according to Puzone, an INBOUND for the call ending 19:13 to tower 72 means the call was non re-routed – this places this litigant in New York City at the time of the call which was the time of the ring-and-run (exh. G).

**Response:** See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.

12.     Since Tower 72 is in New York City and this litigant's number is 203-692-5027 is clearly visible, and the call was Inbound, it was not re-routed and it is proof positive this litigant was in New York City at a restaurant on Amsterdam Avenue on the night before her birthday.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

13.     Correspondingly, for that <u>same call ending at 19:13</u>, on the Statewide prosecutor's report #2013-0213, was changed from INBOUND to OUTBOUND.  John Whalen or Charles Coffey both signed this report.  Someone changed INBOUND to OUTBOUND so that the narrative on the next page could state that this litigant was in the vicinity of Woodbridge at the time of the ring-and-run.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

14.     Whalen, this litigant believes never expected this litigant to get her phone records.  She was denied four times by three judges to get a subpoena signed – including Judge Arnold in the attached transcript (Exh. V).  She got her true Sprint Corporation Phone records via a federal subpoena.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are based on plaintiff's opinions and not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

15.     Further Emons claimed in her testimony (exh. W) that someone rang her bell and ran – twice.  This was also reported stated by Emons in the police report of the ring-and-run (Exh. G).  Emons told the police report to do a phone investigation which they did.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that Emons identified the plaintiff as a potential suspect.  The remaining allegations are denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

16.     The Defendants had administratively closed the 6-22-2013 stalking charge finding no connection to this litigant and Jane Emons' doorbell (Exh. F last paragraph), also, John Whalen then dropped the same stalking charge on the record on March 13, 2014 (Exh. R p. 3 line 14-25 and p. 4 line 10-13.)  A protective order should never have been issued for a case administratively closed – twice!

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that the Woodbridge Police Department administratively closed their investigation of the ring and run and that the prosecutor indicated that the stalking charges would be resolved by issuance of a substitute information.  The remaining statements are denied as the harassment charges against the plaintiff stemming from the same incident as the stalking charges, which together formed the basis for the issuance of the protective order, were not disposed of until the state moved to dismiss the charges on June 10,

2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  See Docs. 234, 249, at p. 2.

17.     Reverting back to the May 15, 2013 phone call to Emons – Emons has kept loved ones apart unlawfully and it is one of the reasons she was not reconfirmed as a judge.  At the time of the phone call on May 15, 2013 to Emons, this litigant has been kept from her husband with no contact, for 13 month.

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

18.     This litigant was very kind and cordial to Emons' son, May 15, 2013 when he accidentally picked up the phone as this litigant had no dispute with him.  She stated quite clearly "I'm looking to speak with Jane Emons she has kept me from my husband unlawfully for 13 months."  This litigant was calling to beg Emons to allow access to her husband after unethically being denied court-ordered Conciliation a right by 46(b)-53 (Exh. w) for 13 months at that point.

> "Sec. 46b-53.  Conciliation procedures; privileged communications. … prior to the expiration of the ninety-day period specified in section 46b-67 either spouse or the counsel for any minor children of the marriage may submit a request for conciliation to the clerk of the court."

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the plaintiff admits she called Emons' son on the phone on one occasion, and the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

9

19.     This litigant had submitted and it was signed by Robert Villacis of the clerk's office in Stamford a Motion for Conciliation, and Jane Emons unlawfully and unethically quashed it.  (Exh. T).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

20.     The Woodbridge Police, the defendants, had administratively closed (Exh. F last paragraph) the 6-22-2013 ring and run allegation on 9-17-2013 – finding no connection to this litigant.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that the Woodbridge Police Department administratively closed their investigation of the ring and run, which is not relevant here.

21.     Additionally the state's attorney had closed the ring and run allegation and the stalking charges that came from it on March 13, 2014.

 **Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied because even once the prosecutor indicated that the stalking charges would be resolved by issuance of a substitute information, the harassment charges stemming from the same ring-and-run incident were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective  Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  <u>See</u> Docs. 234, 249, at p. 2.

22.     The two mailings to Jane Emons contained legal documents, 2 motions including an emergency motion for injunction, which had been filed in the United States District Court for the District of Connecticut in case 3:15-cv-0959 to which Emons is a named defendant.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

23.     At the time of the mailing Emons was aware she was a defendant in a federal law suit as the lawsuit was filed in 2015 (3:15-cv-0959).  She was served through Philip Miller at the Attorney General's office.  The gravamen of that case is that this litigant had never rang Jane Emons' bell and ran on June 22, 2103.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

24.     Judge Emons was a named defendant and being sued in an individual and personal capacity as she acted on her own time when she orchestrated the June 22, 2013 ring-and-run and unlawfully and seemingly knowingly filed a false police report of the ring-and-run (Exh. G).

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are based on plaintiff's opinions and are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

25.     A study of the Affidavit of Mary Puzone (Exh. H) and circumstantial evidence seems to indicate that someone had allegedly messed with the phone number, this was easy to do via a third-party call.  The only person with anything to gain was Jane Emons who simultaneously was filing a police report (Exh. G) and pointing to this litigant by name and demanding a telephone investigation.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.  It is only admitted that Judge Emons complained of a ring and run at her house and identified the plaintiff as a potential suspect.  The remaining statements are denied as the statements are based on circumstantial evidence, plaintiff's opinions and are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

26.     Emons failed to inform Crowther, and he did not know as stated in deposition (Exh. L., at p. 51) that litigant is required by statute to mail all court document to all defendants.  Crowther admitted in deposition to being ignorant of this important aspect of the law.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that at his deposition Detective Crowther indicated he was not familiar with a provision of the Connecticut General Statutes that plaintiff was referring to.  The remaining statements are denied as the Connecticut General Statutes

12

would not apply in the federal lawsuit that plaintiff had filed against Judge Emons, and plaintiff's contact with Judge Emons via mail was a violation of the valid and active protective order entered against her.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

27.     This litigant's assistant, Mr. Walsh, did what he was told when he mailed to defendant Emons, following Connecticut General Statutes.  At the time Mr. Walsh worked for this litigant one day a week.  It is impossible that the two were mailed on two separate days.  Impossible.  Emons holding one back and reporting it later is possible.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

28.     Detective Crowther claims he attempted to reach the plaintiff by phone on August 3, 2015 but claimed he was unable to contact her as all the numbers he had obtained were either disconnected or incorrect phone numbers.  This litigant had had the same number for years.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that Detective Crowther unsuccessfully attempted to contact the plaintiff by phone as indicated in the police report.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

29.     The Greenwich Police Department came to the plaintiff's house on August 4, 2019 to inform her to call Officer Crowther.

**Response:**  It is admitted that Officer Crowther requested assistance from the Greenwich Police Department in contacting the plaintiff on August 4, 2015.  See Docs. 121-7, 121-8.

30.     On Tuesday, August 4, 2015, the plaintiff called Officer Crowther.  Plaintiff explained to him that there was no active protective order but he did not want to hear it.  She explained that she was out of town.  This plaintiff said she would come in when she returned and provide the documentation.

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that Detective Crowther spoke with the plaintiff over the phone as part of his ongoing Investigation of the complaint received.  See Docs. 121-7, 121-8.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

31.     Detective Crowther based on his own report (Exh. E), and the report signed by States Attorney Michael Dearington, did not wait for the evidence or to interrogate this litigant, as Dearington is in receipt on August 5, 2019 (Exh. Y).

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection, denied as the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner.  See Doc. 234, at ¶¶ 1-11.

32.     When Crowther did speak with this plaintiff on August 5, 2019 he was adamant she was going to be arrested stating the following in his arrest warrant,

> "Detective Crowther also explained that the order of protection was going to be enforced, and that the plaintiff was going to be arrested for the applicable criminal charges related to Judge Emons' complaint."

14

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection,
admit as the warrant prepared by Detective Crowther speaks for itself.

33.     Crowther next sent the arrest warrant over to States Attorney Michael Dearington
on August 4, 2019 which contained at least three falsehoods:

a.     There was no active protective order.  As it had expired on October 25, 2014

b.     That the statement that Protective order was based on a "State Police Action." is
not accurate (please read Ramia's words above that formed the basis.)

c.     That two motions sent on the same day – motions required by statute to be sent to
a named defendant, merited not one but TWO violation of a protective order and
additional charges.

d.     That there was more than one protective order, there was not.  One superseded the
other.  The modification on October 25, 2013 was to allow access to this litigant
to the courthouse as Emons was demanding her arrest at every appearance.

e.     That the defendants had conducted an investigation.  Absolutely not, they failed to
interrogate this litigant or her assistant.

f.     Stated in his arrest warrant "this type of order specifically addresses harassment
and stalking."  Implying he had investigated with the State Police, which he did
not.  He relied on hearsay of Judicial Marshall Kirchner an unrelated third party,
Emons mouthpiece and personal friend.  (Incidentally, there was no stalking – the
ring and run was a fabrication.)

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection, it is
only admitted that the warrant was submitted to State's Attorney Michael Dearington for review.
The remaining statements are denied as they are not supported by admissible evidence as

required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3, and the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner.  See Doc. 234, at ¶¶ 1-11.

34.     At no time did Officer Crowther speak with this plaintiff's assistant or ask to speak with plaintiff's assistant.  The plaintiff was clear her assistant had mailed the two motions to Jane Emons a defendant in a lawsuit and that they are required by statute to do so, and that the protective order, based on the fabricated ring and run (Exh. G), was eight months expired as protective orders without end dates are good for one year (cited later).

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection, it is only admitted that Detective Crowther did not speak with plaintiff's assistant.  It is denied that the protective order had expired as the harassment charges underlying the § 54-1k order of protection were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  See Docs. 234, 249, at p. 2.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3, and the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner.  See Doc. 234, at ¶¶ 1-11.

35.     Officer Crowther claimed in deposition that he spoke with a clerk and yet is unable to state the clerk's name.  Because of the unnamed clerk's advice he filed the arrest warrant with the State's Attorney Dearington who believed Crowther's three stated falsehoods.

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection, it is only admitted that Detective Crowther went to the Courthouse to view the order of protection that was on file, that he spoke with the clerk while there and that he submitted the arrest warrant

to State's Attorney Dearington for review.  See Doc. 203-3, at p. 38.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3, and the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner.  See Doc. 234, at ¶¶ 1-11.

36.     On August 4, 2015, Detective Crowther prepared an arrest warrant application and affidavit seeking to charge plaintiff with two counts of Criminal Violation of a Protective Order (C.G.S. § 53a-223) and two counts of Harassment in the 2nd Degree (C.G.S. § 53a-183). (Exh. E).

**Response:**  Paragraph 36 is admitted.

37.     Detective Crowther submitted the warrant application to G.A. 23 iIn New Haven on August 4th, where it was reviewed and signed by State's Attorney Michael Dearington the next day on August 5, 2019 and by Superior Court Judge Patrick Clifford based on their belief that Crowther's affidavit established probable cause.  The arrest warrant (exh. E) contained three falsehoods.

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection, it is denied that the warrant contained any falsehoods as that statement is not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3, and the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner.  See Doc. 234, at ¶¶ 1-11.  It is admitted that the warrant was sent to G.A. 23 for review where it was signed by State's Attorney Dearington and Judge Clifford based on their independent determinations that the warrant established probable cause for plaintiff's arrest.

4831-2014-7873, v. 1

38.     On August 11, 2015, this litigant returned from vacation, gathered her paperwork and travelled to Woodbridge Police station for her interrogation and to provide documented proof that there was no active protective order.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are based on plaintiff's opinions and are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

39.     Instead of interrogation, this plaintiff was arrested on August 11, 2015 with no interview or investigation.  Her assistant was never questioned.

**Response:**  <u>See</u> General Objection.  Subject to and without waiving the foregoing objection, it is only admitted that Detective Crowther did not speak with plaintiff's assistant and that plaintiff was arrested on August 11, 2015.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3, and the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner.  <u>See</u> Doc. 234, at ¶¶ 1-11.

40.     This litigant on August 11, 2015 tried to explain to the defendants that she had run for Congress in 2008 and Senate in 2012 and that she had been vocal against the funding of Israel as counterproductive to the peace process and the wellbeing of the United States and that she believed Emons had targeted her because of it.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

41.     The defendants did not believe plaintiff had run for public office, they did not understand there is a larger picture at play.  The defendants twisted her words in their report giving no respect to the truth, dismissing it as a "rant", misquoting her and implying antisemitism.  Not at all.  All they had to do was look at the Secretary of State's office to see that this litigant had been a candidate.  Or the debate with Senator Chris Murphy 2012 where this litigant talks about the United States funding of Israel as counterproductive.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

42.     Plaintiff was released from custody after posting a $10,000 bond via a bail bondsman.  Incident Report Dated August 11, 2015 (Exh. P).

**Response:**  Paragraph 42 is admitted.

42.(sic.)     After processing the plaintiff on August 11, 2015, Detective Crowther had no further contact with her until deposition for this case.

**Response:**  Paragraph 42(sic.) is admitted.

43.     Detective Crowther was not asked to and did not play any role in the State of Connecticut's prosecution of the charges listed in the warrant.  Instead the statewide prosecutor's office was called in despite the fact that they had administratively closed the stalking charge that the Protective Order was based on in 2014 (exh. S), the ring-and-run the gravamen of the protective order.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, it is only admitted that Detective Crowther did not play any

role in the State of Connecticut's prosecution of the charges listed in the warrant.  The remaining

statements are denied as they are not supported by admissible evidence as required by Fed. R.

Civ. P. 56(c)(2) and LR 56(a)3.

44.     The plaintiff filed six motions to dismiss with evidence of her innocence all were

ignored by Judge Hernandez and Judge Wenzel following John Whalen's lead.  An example of

the fact that no Motion to dismiss could be heard is annexed (Exh. J) John Whalen refused to

allow any to be heard.  This litigant spars with Judge Hernandez repeatedly to allow the

scheduled Motion to Dismiss hearing to continue.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, it is only admitted that the motion to dismiss in the criminal

matter was not heard during one hearing before Judge Hernandez.  The remaining statements are

denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2)

and LR 56(a)3.

45.     This litigant applied for the accelerated rehabilitation rather than face trial in the

Norwalk Court House because she could not have a Motion to Dismiss heard in 41 criminal court

appearances (Exh. X).  This litigant was charged with crimes that were not crimes or literally

orchestrated by the Emons and Whalen (the ring and run (exh. G) and Whalen version of her

phone records (Exh. I), which differs from her true phone records (Exh. aa).  See also the

affidavit of Mary Puzone (Exh. h).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, it is only admitted that the plaintiff applied for the accelerated rehabilitation program. The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3. Additionally, the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.

46.     John Whalen's rendition of her phone records on his report #2013-0213 (Exh. I) differs than that of this litigant's true phone records. (A comparison of Exh. I and Exh. aa). Shows an Outbound change at the call ending on 19:13 from this litigant's telephone number 203-692-5027. Prosecutor John Whalen's rendition of her phone record is contrary to her true Sprint phone records. Please compare and then read Puzone's affidavit (exh. H).

**Response:** <u>See</u> General Objection. Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment. Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3. Additionally, the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.

47.     This litigant's phone records never touched this litigant's hands. They were sent directly from Sprint to Judge Stefan Underhill and Judge Janet hall had them sent in this case (exh. aa) therefore the discrepancy must be in Whalen's rendition.

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

48.     This litigant can prove she never rang Jane Emons' bell as she was in Manhattan and her true phone records proved it (Exh. aa).

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

49.     The Woodbridge Police, the defendants, had Administratively Closed (Exh. F last para.) the ring and run on Sept. 17, 2013.  REPEAT: The Woodbridge Police had investigated and closed the case on 9-17-2013.  This litigant was *still* charged with stalking.

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that the Woodbridge Police Department administratively closed their investigation of the ring and run, which is not relevant here.  The remaining statements are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

50.     Additionally, the state's attorney Assistant Chief States attorney John Whalen had closed the ring and run charge on March 13, 2014 on the record (Exh. R).  REPEAT: The ring-and-run stalking charge was administratively closed twice, including by John Whalen in open testimony in court (exh. R).

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that the Woodbridge Police Department administratively closed their investigation of the ring and run and that the prosecutor indicated that the stalking charges would be resolved by issuance of a substitute information.  The remaining statements are denied as the harassment charges against the plaintiff stemming from the same incident as the stalking charges, which together formed the basis for the issuance of the protective order, were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  See Docs. 234, 249, at p. 2.

51.    In the Arrest Warrant (exh. E) Mr. Kirchner told the defendants that there was an active "54-1K order of protection" listing Judge Emons as the protected person but this was not true as protective orders with no stated end date (open ended) expire in one year (See (Exhibit M p. 2 fifth paragraph from the end, Exhibit N p. 1 para. 17, and Exhibit O).

**Response:**  See General Objection.  Subject to and without waiving the foregoing objection, it is only admitted that Mr. Kirchner informed Detective Crowther that there was an active 54-1k order of protection, which Detective Crowther verified as part of his investigation.  The remaining statements are denied as the harassment charges against the plaintiff, which formed the basis for the issuance of the protective order, were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  See Docs. 234, 249, at p. 2.

52.    Detective Crowther relied on hearsay from Judicial Marshall Kirchner (exh. E). Two violation of a protective order and the other charges equal 14 years in jail.  With so much at

23

stake, shouldn't Crowther have checked himself?  Why didn't he get a copy of any one of the statutes at the clerk's office in pamphlet form ((Exhibit M p. 2 fifth paragraph from the end, Exhibit N p. 1 par. 17, and Exhibit O).  All three are State of Connecticut documents that govern protective orders.

**Response:**  <u>See</u> General Objection.  Subject to and without waiving the foregoing objection, denied as the decision to arrest plaintiff was made following Detective Crowther's investigation of the complaint he had received from Mr. Kirchner, including a visit Detective Crowther made to the Courthouse to view the order of protection that was on file.  <u>See</u> Doc. 234, at ¶¶ 1-11.

53.     The fine print in all Connecticut state protective order statutes state the same thing: Specifically, on form (Exhibit M JD-CV-148 page 2 fifth paragraph from the end states the standard terminology this litigant relied upon.

> "The Order of Protection and any Additional Orders of Protection, if ordered, are good for one (1) year, unless the judge orders a different length of time."

**Response:**  <u>See</u> General Objection.  Subject to and without waiving the foregoing objection denied as § 54-1k order of protection was in effect at the time of plaintiff's arrest since the harassment charges underlying the § 54-1k order of protection were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  <u>See</u> Docs. 234, 249, at p. 2.

54.     Detective Crowther implies that there was more than one protective order this is not true.  The original protective order was superseded by the modification, there was only one active protective order at any given time.  The first was superseded by the Second which is a JD-CL-099 and a 54-k, both expired more than eight months before the arrest for violation (Exhibit M p. 2 fifth paragraph from the end, Exhibit N, p. 1 par. 17, and Exhibit O).

4831-2014-7873, v. 1

**Response[3]:**  <u>See</u> General Objection.  Subject to and without waiving the foregoing objection denied as the § 54-1k order of protection was in effect at the time of plaintiff's arrest since the harassment charges underlying the § 54-1k order of protection were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  <u>See</u> Docs. 234, 249, at p. 2.

55.    Specifically on form (Exhibit M) JD-CV-148 page 2 fifth paragraph from the end.

"The Order of Protection and any Additional Orders of Protection, if ordered, are good for one (1) year, unless the judge orders a different length of time."

**Response:**  <u>See</u> General Objection.  Subject to and without waiving the foregoing objection denied as the § 54-1k order of protection was in effect at the time of plaintiff's arrest since the harassment charges underlying the § 54-1k order of protection were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  <u>See</u> Docs. 234, 249, at p. 2.

56.    Protective order dated 07/09/13 and then superseded by 10/25/13 are attached hereto as Exhibit bb and Exhibit cc respectively.

**Response:** <u>See</u> General Objection, plaintiff has not filed an Exhibits bb and cc.  Subject to and without waiving the foregoing objections, it is admitted that true and accurate copies of the protective orders are included in the record as Docs. 203-4 and 203-5.

57.    At the time of the arrest for two violation of the protective order, none of the charges that lead to the protective order were open and undecided.  The charge for phone call to

---

[3] For reasons of judicial economy, the defendants have responded to paragraphs 54-100 of plaintiff's revised Local Rule 56(a)1 Statement.  However, the defendants object to each of these paragraphs, which should not be considered by the Court since they are entirely contained on pages 13-21 of plaintiff's revised Local Rule 56(a)1 Statement, which exceeds the 12 page limit set forth in Local Rule 56(a)1.

4831-2014-7873, v. 1

Emons and, only once, to her son accidentally, both were plead guilty to on June 21, 2013 and the $85 file paid.

**Response:** <u>See</u> General Objection. Subject to and without waiving the foregoing objection denied as the § 54-1k order of protection was in effect at the time of plaintiff's arrest since the harassment charges underlying the § 54-1k order of protection were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015. <u>See</u> Docs. 234, 249, at p. 2.

58.     Emons demanded a protective order but Thomas Keily refused to give her one because you can't get a protective order for a phone call. Having a bad night and calling a Judge who had kept you from your husband for 13 months in violation of 46(b)-53.

**Response:** <u>See</u> General Objection. Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment. Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

59.     Emons on July 16, 2012 had unethically denied court-ordered Conciliation a right by 46(b)-53 (Exh. T).

**Response:** <u>See</u> General Objection. Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment. Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

60.     Thirteen months later, distraught with grief realizing she would never see her husband again and being railroaded into divorce by Emons, this litigant called every Emons on the internet and accidentally called Emons' son. For the calls to Emons and the one accidental

call to her son, this litigant apologized and plead guilty and paid the $85 fine for creating a

public disturbance – the lowest charge the State Police had to issue.  This was on June 21, 2013.

**Response:**  See General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are not supported by admissible

evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

     61.     Emons one month later claimed the 6-22-2013 ring and run and demanded a

telephone investigation and pointed to this litigant by name on the police report (Exh. G).

**Response:**  See General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, it is only admitted that Judge Jane Emons complained of a ring

and run at her house and identified the plaintiff as a potential suspect.  The remaining statements

are denied as they are not supported by admissible evidence as required by Fed. R. Civ. P.

56(c)(2) and LR 56(a)3.

     62.     The State's Attorney Ramia got a protective order on September 8, 2013.  The

stated reason from the hearing from state's attorney Mr. Ramia stated words on the record: (Exh.

D paragraph. 2),

> "The State is filing a substitute information, your Honor, stalking in the 2nd degree,
> harassment in the 2nd degree, disorderly conduct.  Allegation involve harassing phone
> calls and stalking conduct towards a Superior Court Judge at her home as well as phone
> calls to her son our of state."

**Response:**  See General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are not supported by admissible

evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

63.     On September 17, 2013 the investigative agency, the Woodbridge Police, these defendants administratively closed the case against this litigant.  The was no evidence connecting this litigant to Emons' doorbell.  They state (Exh F last paragraph) in the police report the case is "administratively closed."

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that the Woodbridge Police Department administratively closed their investigation of the ring and run, which is not relevant here.

64.     This litigant had no idea why there was a protective order, proof of this is the testimony she gives on March 13, 2014 and in her Request for Subpoena (Exh. Q)

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

65.     This litigant was never told that there was an allegation of investigation of a ring-and-run, and that later the Woodbridge police closed the case.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

66.     At the time, this litigant read the element of "stalking" which had suddenly appeared and realized that it required "lying in wait" which never happened.  At that time, she filed the attached request for subpoena which shows she is clearly in the dark.  (Exh. Q).

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

67.     There was no active protective order at the time of the arrest on August 11, 2015. The event that led to the protective order had long been adjudicated with a guilty plea for the phone calls on June 21, 2013.  Also (see 50 above) the Woodbridge Police had administratively closed the stalking charges.  And finally, John Whalen then dropped the same stalking charge on the record on March 13, 2014 (Exh. R p. 3 line 14-25 and p. 4 line 10-13).

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, it is only admitted that the Woodbridge Police Department administratively closed their investigation of the ring and run and that the prosecutor indicated that the stalking charges would be resolved by issuance of a substitute information.  The remaining statements are denied as the harassment charges against the plaintiff stemming from the same incident as the stalking charges, which together formed the basis for the issuance of the protective order, were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  See Docs. 234, 249, at p. 2.

68.     Detective Crowther claims he knew protective orders had an expiration after one year.  Transcript proof one from page 50 (line 24-3nd, and p. 51 line 1):

> **Q.     Did you know that protective orders expire after one year if the judge leaves it open ended? Did you know that?**
> **51**
> **A.  Yes, I did.**

**Response:** <u>See</u> General Objection.  Subject to and without waiving the foregoing objection,

denied as the § 54-1k order of protection was in effect at the time of plaintiff's arrest since the

harassment charges underlying the § 54-1k order of protection were not disposed of until the

state moved to dismiss the charges on June 10, 2016, more than ten months after Detective

Crowther prepared a warrant for plaintiff's arrest on August 4, 2015.  <u>See</u> Docs. 234, 249, at p. 2.

Detective Crowther verified the protective order with a visit to the Courthouse to view the order

of protection that was on file.  <u>See</u> Doc. 234, at ¶¶ 1-11.

69.     Detective Crowther did not know the ring and run had been administrative closed

by his police department on September 17, 2013 (Exh. L p. page 53 (line 24-end, and p. 54 line

1)::

> **17 MR. TALBERG: The witness can please continue**
> **18 reading here we left off.**
> **19 Q. Mr. Kirshner told me.**
> **20 A. That Judge Emons has been harassed at her home**
> **21 in Woodbridge, Connecticut by Whitnum Baker in the past.**
> **Q. Stop right there.  Like what? Did he tell you specifics? Did you know that your**
> **own police department at the time had concluded administratively closed the case**
> **and that there was no proof that anybody rang Emons 54**
> **bell?  Did you know that?**
> **A.  I was aware of the ring, the doorbell being**
> **3 rang.**
> **4 Q. Right. Were you aware that it was**
> **5 administratively closed?**
> **6 A. No, I was not.**
> **7 Q. You were not aware of your own police report?**
> **8 A. It was no my police report.**
> **9 Q. In your own police department?**
> **10. Sometimes we don't always have the opportunity**
> **11. to share information back and forth.**

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, it is only admitted that the Woodbridge Police Department

4831-2014-7873, v. 1

administratively closed their investigation of the ring and run, which is not relevant here.  The §
54-1k order of protection was in effect at the time of plaintiff's arrest since the harassment
charges underlying the § 54-1k order of protection were not disposed of until the state moved to
dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a
warrant for plaintiff's arrest on August 4, 2015.  See Docs. 234, 249, at p. 2.

70.     At Jane Emons' reconfirmation hearing other citizens reported being unlawfully
kept from loved ones, misuse of the protective order statutes and other behind the scenes
manipulation (Exh. X).  Specifically, the testimony of Mr. Myers (Exh. dd), and his attorney
Paul Garlinghouse: https://www.youtube.com/watch?v=TFQZWm37jSM

**Response:**  See General Objection.  Defendants further object to this statement as it is not
material to a decision on any pending motion for summary judgment.  Subject to and without
waiving the foregoing objections, denied as the statements are not supported by admissible
evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

71.     Disgraced former Judge Jane Emons was not reconfirmed as a judge in 2018 due
to her behavior which including violating Connecticut General Statutes, and abusing her role as a
judge, behind the scenes, to law enforcement agencies.

**Response:**  See General Objection.  Defendants further object to this statement as it is not
material to a decision on any pending motion for summary judgment.  Subject to and without
waiving the foregoing objections, denied as the statements are not supported by admissible
evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

72.     Several litigants sent letters to their legislators about Emon's behind the scenes
antics with law enforcement.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

73.    Several of Emons' former litigants wrote to their legislators and complaint that Emons had abused her role and violated Connecticut General statutes.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

74.    For the first time in more than 200 years a judge was not given a vote state of Connecticut.  That judge was Jane Emons.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

75.    Plaintiff is a former candidate for Governor in 2018, US Congress in 2008 and US Senate 2010.  She has been vocal against the United States funding of Israel as counterproductive.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

76.     In at least two other cases besides plaintiff's Emons unlawfully and unethical kept loved ones apart with her rulings based on the 2-16-18 transcript of her reconfirmation hearing (Exh. W) and (Exh. dd).

**Response:**   <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

77.     On July 16, 2012 Jane Emons quashed a Motion for Conciliation a right by statute and denied subpoena for this litigant to see her infirmed husband who was being kept from her. The transcript of her unethical violation of plaintiff's rights is annexed (Exh. T).

**Response:**   <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

78.     Emons then denied all production of the Wells Fargo Transfer document despite the fact that she had been told of the fraudulent conveyance of Whitnum's husband's portfolio into a trust controlled by his children.  Despite being married to a man worth $5 million this litigant was railroaded into divorce and awarded not even a dime.

**Response:**   <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

79.     Emons on July 16, 2012 was told that Baker had disappeared for more than seven weeks (Exhibit T).  Emons knew full well of Baker's disappearance and the fraudulent conveyance of his portfolio and yet she made no effort to bring him in or compelled the financial disclosure.  Had she, 8 years and counting of legalities could have been avoided.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

80.     By unethically denying due process Emons took away the only bargaining chip this litigant had to negotiate with his powerful adult children to get her informed husband home.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

81.     On July 16, 2012, In the near-empty court room, a Zionist political heckler stood behind plaintiff in the area usually reserved for lawyers and hissed at her.  Emons did not ask hm to leave (Exhibit T).  This litigant wrote to Barbara Quinn, Chief administrative judge and asked for the removal of Emons to no avail (Exh. ee).

**Response:**  <u>See</u> General Objection, plaintiff has not filed Exhibit ee.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment. Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

82.     On July 16, 2012 divorce Judge Jane Emons shot down Statute 46b-53 is the right to conciliation between people divorcing.

> "Sec. 46b-53.  Conciliation procedures; privileged communications. … prior to the expiration of the ninety-day period specified in section 46b-67 either spouse or the counsel for any minor children of the marriage may submit a request for conciliation to the clerk of the court."

This was a right plaintiff had by statute and it had already been court-ordered and signed by Robert Villacis the Clerk.

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

83.     In the divorce, 5 judges denied Request for Production or capias of the Wells Fargo Transfer documents.  Discovery was this wife (defendant in the divorce's) right if allowed, plaintiff could have negotiated with her husband's powerful children to get plaintiff's husband home.  Judges Emons, Schofield, Heller, Richard & Munro all denied due process.

**Response:**  See General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

84.     The existence of the James J. Baker Trust was proof of the fraudulent conveyance of plaintiff's husband's portfolio during the marriage into a trust controlled by his adult children (see Whitnum v. Court of Probate), FST-12-5013979-S.  This was without the consent of Whitnum nor of her husband.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

85.     Despite, plaintiff's lawyers Request for Production of the Wells Fargo Transfer documents they were all denied or marked 'off.'  The docketed requests on the record (#115, #120, #121, #139, #141, #157 and denial of capias at trial.  FST-FA12-4023288-S).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

86.     A year passed; plaintiff was frantic having no idea if plaintiff's husband was still alive, drugged, strapped down, grieving; time was running out, plaintiff was being railroaded into divorce so plaintiff called upon Judge Genuario on July 2, 2103 via injunction to try to get mail or speak to plaintiff's husband whose children had the Atria Corporation acting as gatekeeper.  That was in case Whitnum v. Atria FST-CV13-5014028-S.  Genuario denied the request.  (Exh. FF).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

87.     This litigant denied by 4 judges, 4 times, denied motion for telephone conversation.  Judge Hernandez and three other judges hinted on the record of being privy to a circulating file (Exh. J).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

88.     This plaintiff at the 13-month mark with no private contact with plaintiff's husband was still married and decided, along with her assistant to visit her own husband.  She was armed with the law to show the police.  According to the law, James Baker, plaintiff's husband, had exclusive possession of his residence and it was only Baker who could press trespassing charges, not the staff of a senior residence under order of Baker's son.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

89.     This wife claims she was unlawfully arrested on April 18, 2013 by the Darien Police, her own husband who was informed and did not have an outside phone, was never called by the front desk staff.  Despite the fact that she presented the Darien Police with the Connecticut Police Training Manual for Landlord/Tenant which details Baker's rights as a rent-paying tenant.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

90.     Baker, two years later stated in deposition that he did not know she was there and he would have accepted the visit.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

91.     According to the law Baker had the right to see whomever he chose.  And it is only Baker who could press trespassing chards not his son, a third party, who did not live at Atria, Darien.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

92.     Baker later during deposition admitted he has never been told his wife was there and that he would have taken the visit.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

93.     This litigant was desperate now.  It seemed she would be railroaded into divorce, without a private conversation with her own husband, that was when Plaintiff called Jane Emons

on the phone on May 15, 2013 to be for access to her husband.  This litigant plead guilty and paid

the fine.  One more later Emons claims this litigant rang her bell and ran in order to get the

protective order and then two months later Emons was demanding, to the State Police, that this

litigank.t be arrested every time she walked into the Stamford Courthouse.  Her bizarre request

prompted the State Police to ask this litigant to modify the protective order to allow access to the

courthouse to get Emons off *their* back.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are not supported by admissible

evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

94.    Plaintiff never saw plaintiff's husband again nor spoke to him in private again.

She fought hard, but was denied until his death 4 ½ years after his disappearance.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not

material to a decision on any pending motion for summary judgment.  Subject to and without

waiving the foregoing objections, denied as the statements are not supported by admissible

evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

95.    Jane Emons has a history of abusing protective order statutes and abusing her role

to keep loved one's apart including the Myers child kept three of the four years of his short life in

foster care – unlawfully – with no legal right (Exh. dd) according to his lawyers Paul Greenan and

Paul Garlinghouse.

https://youtube.com/watch?v=ypEl4WwW-d8

https://youtube.com/watch?v=TFQZWm37jSM

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

96.     The Manchanda father was kept from his children for 15 months (Exh. W) and other violations like requiring Attorney Mark Sargent and others to put up a financial bond in order to take the child on vacation or to a ballgame.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

97.     The details of Emons' cruelty was all in sworn testimony on the transcript of Emons reconfirmation hearing 2-16-18 (Exh. w) available on line and/or in letters to legislators and/or those filed at the JUD committee at the Capitol.

**Response:** <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

98.     By not allowing the hearing of any of the filed Motions to Dismiss with evidence to be heard, Whalen was burying the evidence of plaintiff's innocence and his and Emons' guilt in the role of criminally framing her for the 2013 ring and run.  Please see the Affidavit by telephone expert Mary Puzone (Exhibit h).

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.  Additionally, the affidavit of Mary Puzzone should not be considered as it would unduly prejudice the defendants since she was not disclosed as an expert as contemplated in the Court's discovery orders and the defendants were not given a fair opportunity to review or rebut her opinions and affidavit via deposition during discovery or with their own expert.

99.     This litigant has claimed in Whitnum v. Office of the Chief State Attorney 3:18-cv-01991 that John Whalen choosing to defend himself by burying evidence is a Brady Violation to protect himself, as his rendition of plaintiff phone records on report #2013-0213 differs from the true phone records.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

100.     This litigant a political candidate was smeared all over the press (exh. hh) as a woman who stalked a judge, an event that never happened.

**Response:**  <u>See</u> General Objection.  Defendants further object to this statement as it is not material to a decision on any pending motion for summary judgment.  Subject to and without waiving the foregoing objections, denied as the statements are not supported by admissible evidence as required by Fed. R. Civ. P. 56(c)(2) and LR 56(a)3.

4831-2014-7873, v. 1

### ADDITIONAL MATERIAL FACTS

101.    At all times relevant, Robert Crowther was employed as a Detective with the Woodbridge Police Department ("WPD").  See Doc. 121-6, at ¶ 2; Doc. 121-7, at p. 1.

102.    On July 31, 2015, Detective Crowther received a call from Mr. Robert Kirchner, who at the time was in charge of Superior Court Operations for the State of Connecticut.  Doc. 121-7, at ¶ 1; Doc. 121-4, at p. 21.

103.    Mr. Kirchner informed Detective Crowther that he had received a call from Judge Jane Emons of Woodbridge on July 30, 2015 regarding a document that had been mailed to her with a return address of "Whitnum, P.O. Box 7482, Greenwich, CT 06836."  Doc. 121-7, at ¶ 1.

104.    Mr. Kirchner also told Detective Crowther that there was an active "54-1K order of protection" which listed Judge Emons as the protected person from the plaintiff.  Id., at ¶ 2.

105.    In his arrest warrant application, Detective Crowther noted that the 54-1k order of protection in favor of Judge Emons specifically addressed harassment and stalking charges.  Id.

106.    After speaking with Mr. Kirchner, Detective Crowther called Judge Emons to further investigate the mailings she had received.  Id., at ¶ 3; Doc. 121-4, at p. 25.

107.    Judge Emons informed Detective Crowther that her husband had retrieved a medium-sized manila envelope in the mail that was addressed to her.  Doc. 121-7, ¶ 3.

108.    According to Judge Emons, the mailing contained legal documents including an emergency motion for injunction, which had supposedly been filed in the United States District Court for the District of Connecticut.  Id.

109.    However, at the time Judge Emons received the mailing from the plaintiff, she had not been served with a federal lawsuit.  Id., at ¶ 4.

4831-2014-7873, v. 1

110.     Judge Emons informed Detective Crowther that plaintiff should have served her by State Marshal at her home or place of work if she was being sued in her individual capacity or through the Attorney General's office if she was being sued in her official capacity.  Id.

111.     On August 4, 2015, Judge Emons informed Detective Crowther that she had received additional mail from the plaintiff containing more legal documents.  Id., at ¶ 7; Doc. 121-5, at pp. 4-6.

112.     Detective Crowther attempted to reach the plaintiff by phone on August 3, 2015, but was unable to contact her as all the numbers he had obtained were either disconnected or incorrect phone numbers.  Doc. 121-8, at p. 2.

113.     That same day, United States Postal Inspector Jason Bourdeau was able to confirm that the plaintiff was renting P.O. Box 7482 in Greenwich, Connecticut, which was the return address on the mailings that Judge Emons had received.  Doc. 121-7, at ¶ 5.

114.     After speaking with the postal inspector, Detective Crowther asked Officer Morris of the Greenwich Police Department to visit the plaintiff's house and inform her that Detective Crowther needed to speak with her regarding a criminal complaint lodged against her in Woodbridge.  Id., at ¶ 6; Doc. 121-4, at pp. 26-27.

115.     The plaintiff refused to provide a phone number, but told Officer Morris that she would contact Detective Crowther.  Doc. 121-7, at ¶ 6.

116.     On Tuesday, August 4, 2015, Detective Crowther received a call from a female identifying herself as the plaintiff.  Id., at ¶ 7; Doc. 121-4, at pp. 27-28.

117.     After the plaintiff asked who Judge Emons' lawyer was so that she could "get on with the case," Detective Crowther asked if she had mailed documents to the Judge's house. Doc. 121-7, at ¶ 7.

43

118.   The plaintiff verified that she had mailed the documents to Judge Emons and claimed that she had to serve her.  Id.

119.   Detective Crowther then reminded the plaintiff that there was a full order of protection against her on behalf of Judge Emons and that she was to have no contact whatsoever with the Judge.  Id.

120.   Detective Crowther also explained that the order of protection was going to be enforced, and that the plaintiff was going to be arrested for the applicable criminal charges related to Judge Emons' complaint.  Id.

121.   When the plaintiff demanded to know what her bond would be Detective Crowther informed her that the warrant was not yet signed.  Id.

122.   The plaintiff then terminated the telephone call.  Id., Doc. 121-5, at pp. 1-2.

123.   On August 5, 2015, Detective Crowther prepared an arrest warrant application and affidavit seeking to charge plaintiff with two counts of Criminal Violation of a Protective Order (C.G.S. § 53a-223) and two counts of Harassment in the 2nd Degree (C.G.S. § 53a-183). Doc. 121-6, at ¶ 8; Doc. 121-7.

124.   Detective Crowther submitted the warrant application to G.A. 23 in New Haven, where it was reviewed and signed by State's Attorney Michael Dearington and by Superior Court Judge Patrick Clifford based on their independent determinations that the facts set forth in Crowther's affidavit established probable cause for the crimes charged.  Doc. 121-6, at ¶ 10; Doc. 121-7.

125.   On August 11, 2015, plaintiff voluntarily turned herself in to be arrested on the charges contained in the warrant prepared by Detective Crowther.  Doc. 121-6, at ¶ 11; Doc. 121-8, at p. 1.

4831-2014-7873, v. 1

126.     Plaintiff was released from custody after posting a $10,000 bond via a bail bondsman.  Doc. 121-6, at ¶ 12; Doc. 121-8, at p. 1.

127.     After processing the plaintiff on August 11, 2015, Detective Crowther had no further contact with her.  Doc. 121-6, at ¶ 13.

128.     Detective Crowther was not asked to and did not play any role in the State of Connecticut's prosecution of the charges listed in his warrant.  Id., at ¶ 14.

129.     On December 17, 2015, the plaintiff applied for and was granted accelerated rehabilitation by the Court, Hudock, J., for the charges contained in the warrant prepared by Detective Crowther.  Doc. 121-9, at pp. 15-26.

130.     Plaintiff applied for the accelerated rehabilitation program of her own free will.  Id.

131.     The accelerated rehabilitation program was granted for one year.  Id.

132.     As a condition of the accelerated rehabilitation program being granted, the Court ordered plaintiff not to threaten, not be violent towards, not to harass and not to have contact with Judge Emons unless it was in Court or for official business for a period of one year.  Id.

133.     In applying for accelerated rehabilitation, plaintiff also bargained for a nolle on a separate pending criminal matter once she withdrew an appeal related to that case.  Id., at pp. 4-7.

134.     On December 16, 2016, after the plaintiff successfully completed the accelerated rehabilitation program, the criminal charges contained in the warrant prepared by Detective Crowther were dismissed.  Doc. 121-10.

4831-2014-7873, v. 1

135.    Upon receiving information from Mr. Kirchner that there was an active "54-1K order of protection" listing Judge Emons as the protected person from the plaintiff, Detective Crowther verified that the protective order was valid and intact.  Doc. 203-3, at p. 12.

136.    To verify the protective orders Detective Crowther went to New Haven Superior Court where he viewed copies of the protective orders that were on file.  Id., at pp. 12-13, 19, 38.

137.    While at the New Haven Superior Court, Detective Crowther spoke with the clerk to confirm that the protective orders were in effect and had not expired.  Id., at pp. 25-27, 38.

138.    Detective Crowther further verified that the protective orders were valid by reviewing copies of them held in the Woodbridge Police Department records division.  Id., at pp. 22, 25-27, 45.

139.    Based on his investigation, Detective Crowther concluded that there was a protective order in effect listing Judge Emons as the protected person from the plaintiff.  Id., at pp. 27.

140.    True and accurate copies of the protective orders dated 07/09/13 and 10/25/13, both of which are marked § 54-1k orders of protection, can be seen as Doc. 203-4 and 203-5 respectively.  See Doc. 121-4 at pp. 42-45.

141.    Orders of protection under § 54-1k, including those at issue in this case, are conditions of a criminal defendant's pretrial release and remain in effect during the pendency of the underlying criminal matter.  See Conn. Gen. Stat. § 54-1k.

142.    The underlying criminal charges for which the § 54-1k protective orders were issued were not disposed of until the state moved to dismiss the charges on June 10, 2016, more than ten months after Detective Crowther prepared a warrant for plaintiff's arrest on August 4, 2015. See Docs. 234, 249, at p. 2.

143.    Since the criminal charges had not been disposed of at the time of plaintiff's

arrest, the order of protection under Conn. Gen. Stat. § 54-1k was in effect at the time plaintiff

was arrested in August, 2015.  <u>See</u> Conn. Gen. Stat. § 54-1k.

<div style="margin-left: 40%;">

DEFENDANTS, THE TOWN OF
WOODBRIDGE, ROBERT B.
CROWTHER, and FRANK P. CAPPIELLO


BY<u>/ss/ James N. Tallberg</u>
    James N. Tallberg, Esq.
    Federal Bar No.: ct17849
    Andrew J. Glass, Esq.
    Federal Bar No.: ct30054
    Karsten & Tallberg, LLC
    500 Enterprise Drive, Suite 4B
    Rocky Hill, CT 06067
    T: (860)233-5600
    F: (860)233-5800
    jtallberg@kt-lawfirm.com

</div>

4831-2014-7873, v. 1

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been electronically mailed, this 20th day

of August, 2019, to the following pro se plaintiff:

L. Lee Whitnum Baker
P. O. Box 7482
Greenwich, CT 06836
leewhitnum@yahoo.com

<div align="right">

/ss/ James N. Tallberg
James N. Tallberg

</div>

48