### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| L. LEE WHITNUM BAKER,<br>Plaintiff, | :<br>:<br>: | CIVIL ACTION NO.<br>3:17-CV-1362 (JCH) |
| v. | :<br>: |  |
| THE TOWN OF WOODBRIDGE, ET AL.<br>Defendants. | :<br>: | NOVEMBER 25, 2019 |

**RULING RE: DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (DOC. NO. 203), PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT (DOC. NO. 227), PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES (DOC. 214), PLAINTIFF'S MOTION FOR LEAVE TO FILE LOCAL RULE 56(A)2 STATEMENT OF FACTS (DOC. NO. 253), AND PLAINTIFF'S MOTION FOR SETTLEMENT CONFERENCE (DOC. NO. 284)**

## I.    INTRODUCTION

The plaintiff, L. Lee. Whitnum ("Whitnum"), brings this action against the

defendants Detective Robert B. Crowther, Chief of Police Frank P. Cappiello, and the

Town of Woodbridge (collectively, "the defendants").  In her initial Complaint, Whitnum

alleges that the defendants falsely arrested her, maliciously prosecuted her, negligently

and intentionally inflicted emotional distress on her, and were negligent.  See Complaint

("Compl.") (Doc. No. 1-2) ¶ 7.  In an Amended Complaint, Whitnum reasserted these

allegations and further alleged new causes of action under section 1983 of title 42 of the

United States Code for a violation of her First Amended rights and violations of her right

to due process.  In addition, her Amended Complaint added a claim of conspiracy under

section 1985 of title 42 of the United States Code and a claim of defamation under state

law.  See Amended Complaint ("Am. Compl.") ¶¶ 34–39.

Pending before the court are the defendants' Renewed Motion for Summary

Judgment (Doc. No. 203) and Whitnum's Cross Motion for Summary Judgment (Doc.

No. 227).  Also pending before the court are Whitnum's Motion to Strike Affirmative

Defenses (Doc. 214), Motion for Leave to File Local Rule 56(a)2 Statement of Facts

(Doc. No. 253), and Motion for Settlement Conference (Doc. No. 284).

 For the reasons stated below, defendants' Renewed Motion for Summary

Judgment (Doc. No. 203) is granted and Whitnum's Cross Motion for Summary

Judgment (Doc. No. 227) is denied.  Furthermore, Whitnum's Motion for Leave to File

(Doc. No. 253) is granted.  Whitnum's Motion to Strike (Doc. No. 214) and Motion for

Settlement Conference (Doc. No. 284) are denied as moot.

## II. FACTS[1]

 On July 31, 2015, defendant Robert Crowther, a detective with the Woodbridge

Police Department, received a call from Robert Kirchner, a manager of Superior Court

Operations for the State of Connecticut.[2]  Defendants' Local Rule 56(a)1 Statement in

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement of Facts in Support of Motion for Summary Judgment (Doc. No. 121-1), from defendant's Amended Local Rule 56(a)1 Statement of Facts in Support of Motion for Summary Judgment (Doc. No. 203-2), Whitnum's Local Rule 56(a)1 Statement of Facts in Support of Cross Motion for Summary Judgment (Doc. No. 235), Whitnum's Response to Defendants' Statement of Material Facts (Doc. No. 255), Defendants' Local Rule 56(a)2 Statement of Facts in Opposition to Whitnum's Cross Motion for Summary Judgment (Doc. No. 256-1), Whitnum's Revised Statement of Material Facts (Doc. No. 260), and defendants' Local rule 56(a)2 Statement of Material Facts in Opposition to Plaintiff's Revised Statement of Material Facts (Doc. No. 274).

[2] In response, Whitnum "disputes Defendant's source [Kirchner] of the declaration as she has no way to know.  This plaintiff disputes [the defendants'] reliance on Mr. Robert Kirchner's hearsay as he is a non-involved third party."  Plaintiff's Response to Defendants' Statement of Material Facts (Doc. No. 255) ¶ 2.  ("Pl. 56(a)2").  This response—like most all of Whitnum's responses—fails to adhere to the requirements of the District of Connecticut Local Rules, which state that:

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to  testify as to the facts at trial, or (2) other evidence that would be admissible at trial. . . . The "specific citation" obligation of this Local Rule requires parties to cite to specific paragraphs when citing to affidavits or responses to discovery requests and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length. **Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule**

Support of Motion for Summary Judgment ("Def. LR 56(a)1") (Doc. No. 121-2) ¶¶ 1, 2.

Kirchner informed Detective Crowther that he had received a call form Judge Jane

Emons of Woodbridge the previous day regarding a document that had been mailed to

her with a return address of "Whitnum, P.O. Box 7482, Greenwich, CT 06836." Id. ¶ 3.

During that call, Kirchner also informed Detective Crowther that there was an active "54-

1K order of protection" which listed Judge Emons as the protected person from the

plaintiff.[3] Id. ¶ 4.  After speaking with Kirchner, Detective Crowther viewed a copy of the

Protective Order on file at the New Haven Superior Court and verified that the

Protective Order was valid.[4]  Defendants' Amended Local Rule 56(a)1 Statement in

Support of Motion for Judgment ("Def. Am. LR 56(a)1") (Doc. No. 203-2) ¶¶ 35, 36.

After speaking with Kirchner and verifying the validity of the protective order,

Detective Crowther called Judge Emons to further investigate the mailing she had

received.  Def. LR 56(a)1 ¶ 6.  Judge Emons informed Detective Crowther that she had

received a medium-sized envelope in the mail.  The envelope was addressed to Judge

---

**56(a)1**, or in the Court imposing sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and when the opponent fails to comply, an order granting the motion if the motion and supporting materials show that the movant is entitled to judgment as a matter of law.

D. Conn. L. Civ. R. 56(a)(3) (emphasis added).  Whitnum's Local Rule 56(a)1 Statement in Support of Cross Motion for Summary Judgment (Doc. No. 235) and Whitnum's Revised Statement of Material Facts (Doc. No. 260) also largely fail to adhere to Local Rule 56(a)3.

To the extent that Whitnum fails to adhere to Local Rule 56(a)3 when disputing defendants' statements, those statements will be deemed admitted so long as those statements are supported by the evidence in accordance with Local Rule 56(a)1.

[3] Whitnum responds that "there was no active protective order at the time of the arrest."  Pl. 56(a)2 ¶ 4.  However, Whitnum does not dispute that Kirchner told Detective Crowther that there was an active order of protection.  That statement is therefore deemed admitted.

[4] Whitnum responds that there had been two protective orders but that both had expired.  Pl. 56(a)2 ¶ 4.  However, the court concludes that the evidence she cited does not support that proposition. See infra § IV(A)1.

Emons and contained legal documents, including an emergency motion for injunction. Id. ¶¶ 7, 8.  The injunction had supposedly been filed in the United States District Court for the District of Connecticut.  At the time Judge Emons received the mailing from Whitnum, however, Judge Emons had not been served with a federal lawsuit.  Id. ¶ 9. Judge Emons informed Detective Crowther that Whitnum should have served her by State Marshal at her home or place of work if she was being sued in her individual capacity or through the Attorney General's office if she was being sued in her official capacity.  Id. ¶ 10.

After speaking with Judge Emons, Detective Crowther attempted, without success, to contact Whitnum by phone.  Id. ¶ 12.  After a United States Postal Inspector confirmed that Whitnum was renting P.O. Box 7482 (the return address on the mailing that Judge Emons had received), Detective Crowther asked Officer Morris of the Greenwich Police Department to visit Whitnum's home and to inform her that Detective Crowther needed to speak with her.  Id. ¶ 14.  During that visit, Whitnum agreed that she would contact Detective Crowther.  Id. ¶ 15.

On Tuesday, August 4, 2015, Whitnum contacted Detective Crowther.  Id. ¶ 16. During that call, Whitnum confirmed that she had mailed documents to Judge Emons but that the mailings were required by statute.  Id. ¶ 18.  Detective Crowther reminded Whitnum that, based on the Order of Protection against her on behalf of Judge Emons, she was to have no contact whatsoever with Judge Emons.  Id. ¶ 19.  Detective Crowther also explained that the Order of Protection was going to be enforced, and that Whitnum was going to be arrested for the applicable criminal charges related to Judge Emons' complaint.

On August 5, 2015, Detective Crowther prepared an arrest warrant application and affidavit seeking to charge plaintiff with two counts of Criminal Violation of a Protective Order and two counts of Harassment in the Second Degree.  Id. ¶ 23.  The arrest warrant was subsequently reviewed and signed by State's Attorney Michael Dearington and Superior Court Judge Patrick Clifford.  Id. ¶ 24.  On August 11, 2015, Whitnum was arrested and subsequently released on bond.  Id. ¶¶ 25, 26.

On December 17, 2015, Whitnum voluntarily applied for and was granted accelerated rehabilitation by the court for the charges contained in the warrant.  Id. ¶ 29. On December 16, 2016, after Whitnum successfully completed the accelerated rehabilitation program, the criminal charges contained in the warrant prepared by Detective Crowther were dismissed.  Id. ¶ 34.

## III.    STANDARD OF REVIEW

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the moving party bears the burden of establishing the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party satisfies that burden, the nonmoving party must set forth specific facts demonstrating that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor.  See, e.g., Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The court's role at summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh, 642 F.3d 110, 116 (2d Cir. 2011). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998) (collecting cases). Additionally, the evidence the court considers in ruling on a motion for summary judgment must be admissible evidence, or evidence that could be readily reduced to an admissible form at trial. See LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005); Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.") (citation omitted).

## IV.   DISCUSSION

### A.   Whitnum's Original Claims

#### 1.   Malicious Prosecution and False Arrest

Whitnum first alleges that the defendants subjected her to malicious prosecution and false arrest. Am. Compl. ¶¶ 44, 45. Defendants respond that her claims fail because she cannot allege favorable termination, a prerequisite for both claims.[5]

---

[5] Furthermore, defendants argue that they are protected by the doctrine of qualified immunity. Id. at 2. The court does not reach this basis for summary judgment.

Defendants' Memorandum in Support of Motion for Summary Judgment ("Def. Mem. in Supp. of Mot.") (Doc. No. 121-1) at 1, 2.   The court agrees.

"[I]t is well-settled that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor." Singletown v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980).   "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty."   Id.   In the Second Circuit, favorable termination is also an element of a section 1983 claim sounding in false arrest.   Miles v. City of Hartford, 445 Fed. Appx. 379, 383 (2d Cir. 2011).

Here, the undisputed evidence affirmatively establishes that the prosecution of the charges listed in Detective Crowther's warrant did not terminate in Whitnum's favor. The record clearly demonstrates that Whitnum voluntarily applied for and was accepted into the accelerated rehabilitation ("AR") program.   See Ex. E (Doc. No. 121-9), at 14–26.   The Second Circuit has held that "a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit."   Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992); see also Murphy v. Kearney, No. 3:08-CV-1486, 2010 WL 2640041, at *4 (D. Conn. June 28, 2010).   For this reason, Whitnum's malicious prosecution and false arrest claims fail.[6]

_____

[6] Whitnum admits that the dismissal she received under the AR program does not constitute a favorable termination for purposes of her civil rights claim.   Whitnum's Cross Motion for Summary Judgment ("Pl. Mot.") (Doc. No. 227) at 21.   She nonetheless argues that she had filed six motions to dismiss these charges and that she "could not have fought harder" to be heard on these motions.   Id. She further argues that the favorable termination requirement does not apply because it "requires a normal courthouse where justice actually prevails."   Id. at 22.   The alleged circumstances of this argument do not constitute "favorable termination."

The court recognizes that Roesch's holding on the issue of favorable termination has been questioned.  In Weyant v. Okst, the Second Circuit stated that, "while it is clear under New York law . . . that favorable termination of litigation is not an element of a claim for false arrest, Connecticut law is less clearly settled." 101 F.3d 845, 853 (2d Cir.1996); see also Russo v. City of Bridgeport, 479 F.3d 196, 204 n.9 (2d Cir.2007) (discussing the tension between Roesch and Weyant ); Zainc v. City of Waterbury, 603 F. Supp. 2d 368, 386–87 (D. Conn. 2009) (acknowledging the tension between Roesch and Weyant and not deciding the issue); Holman v. Cascio, 390 F.Supp.2d 120, 125–26 (D. Conn. 2005) (same); Colon v. Ludemann, 283 F.Supp.2d 747, 753–54 (D. Conn. 2003) (same).  However, "despite the uncertainty surrounding the holding in Roesch, it remains good law that this Court must follow absent a ruling to the contrary from the Second Circuit or a Connecticut appellate court." Miles v. City of Hartford, 719 F.Supp.2d 207, 213 (D. Conn. 2010) (collecting cases).  Because favorable termination is an element of a false arrest and malicious prosecution claim, and because AR does not constitute favorable termination, Whitnum's false imprisonment and malicious prosecution claims fail.

Even if Whitnum had created a material issue of law as to favorable termination as an element of these claims, her claims fail because her arrest pursuant to the warrant prepared by Detective Crowther was supported by probable cause.  The existence of probable cause is a complete defense to claims alleging false arrest or malicious prosecution.  See Curley v. Village of Suffern, 268 F.3d 65, 69–70 (2d Cir. 2001) ("[N]o factual civil rights claim for false arrest can exist where there is probable cause."); see also Burton v. Undercover Officer, 671 Fed. Appx. 4, 5 (2d Cir. 2016)

("[P]robable cause is a complete defense to a claim of malicious prosecution . . ."). "[A] plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). That plaintiff must show "that the officer 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause.'" Kaskel v. Compagone, 664 Fed. Appx. 109, 110 (2d Cir. 2016) (citing Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).

Here, Whitnum has failed to come forward with evidence upon which a reasonable jury could base a finding of lack of probable cause. In contesting probable cause, she asserts that the Protective Order underlying the warrant application was no longer in effect. Pl. Mot. at 30–31. Whitnum states that there had been two protective orders but that both had expired. Pl. LR 56(a)2 ¶ 4. In support of this statement, Whitnum cites to Exhibit B (Doc. No. 149), Exhibit M (Doc. No. 237), and Exhibit N (Doc. No. 238). However, these exhibits do not support Whitnum's statement. Exhibit B is the 54-1K Order of Protection, the same Order of Protection analyzed by Detective Crowther and determined by him to be valid. See Def. Am. LR 56(a)1 ¶ 35. This Order of Protection has no expiry date. Exhibit M, "Information Concerning Civil Protection Orders", only addresses JD-CV-134 Orders of Protection; it does not address 54-1K Orders of Protection. Exhibit N, an informational sheet on restraining orders, is similarly inapplicable. That form, which relates to ex parte Restraining Orders issued under Section 46b-15, notes that "[a] Restraining Order after hearing remains effective for one year from the date of the order unless a shorter period is ordered by the court." This

9

form does not relate to 54-1K Orders of Protection, which are issued under section 54-
1k of the Connecticut General Statutes.  See Conn. Stat. § 54-1k.

 When she focuses specifically on the 54-1K Order of Protection, she argues that,
because it had no expiry date, it must have expired after one year, and that, therefore,
the protective order was expired at the time the warrant was issued.  Id. at 13.  This
argument, however, is not supported by the plain language of section 54-1k of the
Connecticut General Statutes.  That section provides that orders of protection issued
under that section

> shall be made a condition of the bail or release of the defendant and shall
> contain the following language: "In accordance with section 53a-223 of the
> Connecticut general statutes, any violation of this order constitutes
> criminal violation of a protective order which is punishable by a term of
> imprisonment of not more than ten years, a fine of not more than ten
> thousand dollars, or both. . . ."

Conn. Stat. § 54-1k.  Nothing in this section of the statute states that 54-1K Protective
Orders expire after one year.  In the criminal proceeding against Whitnum in the
Superior Court that resulted in the entry of this Protective Order, the court (Arnold, J.)
noted that "a protective order was issued on July 9, 2013 (Holden, J.), pursuant to
General Statutes § 54–1k."  State v. Whitnum-Baker, 2013 WL 6129749, at *1 (Conn.
Supp. Oct. 25, 2013.).  This Protective Order related to charges of stalking in the
second degree, harassment in the second degree, and disorderly conduct.  Id.  Judge
Arnold made it clear that a violation of this Order would also violate a condition of
plaintiff's bail or release.  Id at n.1.  Because, by statute, 54-1k orders of protection
constitute conditions of release, this order of protection remained in effect until the

10

disposition of the underlying criminal charges.[7]  Those charges were disposed of on June 10, 2016, when the state moved to dismiss them.  See Exhibit A (Doc. No. 249-1). Thus, when Detective Crowther prepared the warrant for Whitnum's arrest on August 5, 2015, this 54-1k Order of Protection was in effect and valid.  This Protective Order, along with the information collected by Detective Crowther, gave defendants ample probable cause to arrest Whitnum for criminal violation of the 54-1k Protective Order, which prohibited her from any contact with the protected person.

Because Whitnum has failed to come forward with evidence upon which a reasonable jury could find, under controlling law, that the action brought against Whitnum in Connecticut Superior Court did not result in favorable termination, or that Detective Crowther lacked probable cause to obtain the warrant, defendants' Motion for Summary Judgment is granted on Whitnum's claims of false imprisonment and malicious prosecution as to Detective Crowther.

The court similarly grants summary judgment on this claim as to the remaining defendants.  Whitnum presents no evidence to suggest that Chief Cappeillo was involved in Whitnum's arrest or prosecution.  In fact, Whitnum does not mention Cappiello in her Local Rule 56(a)1 Statement of Facts (Doc. No. 235) nor in her Response to Defendants' Statement of Material Facts (Doc. No. 255).  Even if Cappiello had been involved in Whitnum's arrest, he had probable cause to do so through the collective knowledge doctrine. See United States v. Babilonia, 854 F.3d 163, 178 (2d Cir. 2017) (citations omitted) ("[E]ven if the law enforcement officer actually conducting

---

[7]  Presumably, if bail were revoked, the 54-1K Order would expire because the victim no longer needed protection, the defendant being in jail.  However, nothing appears in the record to suggest that Whitnum was jailed at any time pertinent to the events in the case.

the search lacks the relevant facts to support probable cause, the search may nonetheless be permissible if the officer acted on the assessment or instructions of other officers who did have such facts.").

Summary judgment is also granted on this claim as to the Town of Woodbridge. Although section 1983 subjects only "person[s]" to liability, 42 U.S.C. § 1983, Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), established that "a municipality [such as the Town of Woodbridge] is a person within the meaning of Section 1983," Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008). To establish liability under Monell, Whitnum must show that she suffered the denial of a constitutional right that was caused by an official municipal policy or custom. See Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). Whitnum has not provided any evidence upon which a reasonable jury could find that her claims involving false arrest and malicious prosecution constitute a denial of a constitutional right, much less one caused by policy or custom. Therefore, summary judgment is granted on these claims as they relate the Town of Woodbridge.

### 2. Negligence

Whitnum next alleges that defendants' actions against her constituted negligence. Am. Compl. ¶¶ 41. Defendants respond that Whitnum's negligence claims are barred by governmental immunity. The court agrees.

Under section 52-557n of the Connecticut General Statues, municipalities and their employees are generally immune from liability for discretionary governmental conduct. See Doe v. Petersen, 279 Conn. 607, 609 (2006) ("[M]unicipalities are statutorily immune from negligence liability resulting from the discretionary acts of their employees, officers and agents."); see also Violano v. Fernandez, 280 Conn. 310, 319

(2006) ("Municipal officials are immunized from liability for negligence arising out of their discretionary acts . . ."). "[T]he operation of a police department is a discretionary governmental function." <u>Gordon v. Bridgeport Hous. Auth.</u>, 208 Conn. 161, 179 (1988). Here, the conduct of which Whitnum complains falls squarely within the typical functions of a police officer. Thus, the defendants' conduct is discretionary and they are entitled to governmental immunity. <u>See</u> <u>Soderlund v. Merrigan</u>, 110 Conn. App. 389, 400 (2008) ("Police officers are protected by discretionary act immunity when they perform the typical functions of a police officer.").

There are three recognized exception to the discretionary act immunity. "[F]irst, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." <u>Mulligan v. Rioux</u>, 229 Conn. 716, 728 (1994) (alterations in original). Defendants assert—and Whitnum does not contest—that the only applicable exception is the first: the identifiable person-imminent harm exception.[8] <u>See</u> Def. Mot. at 22. This exception requires plaintiff to establish: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." <u>Fleming v. City of Bridgeport</u>, 284 Conn. 502, 533 (2018).

---

[8] Even if Whitnum had argued that the third exception applied, Whitnum has not presented evidence upon which any reasonable jury could conclude that the defendants acted with malice, wantonness, or intent to injure. Further, Whitnum did not cite any statute that provides her a cause of action here.

There is no evidence in the record before this court upon which a reasonable jury could make a finding that any of these exceptions apply. The "imminent harm" exception does not apply. Connecticut courts have ruled that the imminent harmed complained of must be physical in nature for this exception to apply. See e.g., Bento v. City of Milford, No. 3:13-CV-1385, 2014 WL 1690390, *7 (D. Conn. Apr. 29, 2014) ("Thus, absent some concrete manifestation of physical symptoms, Plaintiffs' claims fail to fall into the identifiable person-imminent harm exception."); D'Agostino v. Orange, No. 3:13-CV-054011875S, 2006 WL 1320597 (Conn. Super. Ct. Apr. 7, 2006) ("[B]ecause the plaintiff has not alleged that he suffered physical harm as a result of the defendants' alleged negligent acts, the imminent harm exception is inapplicable to the plaintiff's claims."); Chipperini v. Crandall, 253 F. Supp. 2d 301, 312 (D. Conn. 2003) ("Although this exception to governmental immunity is not well developed in Connecticut law it appears that the type of harm required is physical harm or personal danger, not the results of a wrongful arrest.").

Here, Whitnum has failed to raise a genuine issue of material fact as to whether the "identifiable victim/imminent harm" exception applies. Whitnum's only allegation of harm is that she suffered severe emotional distress as a result of the defendants' conduct. Pl. Mot. at 28, 42. However, this harm is not physical in nature. As a result, the imminent harm exception does not apply and Whitnum's claims are barred by the doctrine of governmental immunity. Accordingly, defendants' motion for summary judgment is granted as to Whitnum's negligence claims.

3.      Emotional Distress

Whitnum also alleges two counts of negligent infliction of emotion distress and

two counts of intentional infliction of emotional distress against the defendants.  Am.

Compl. ¶¶ 42, 43.  Because Whitnum's claims relate to discretionary acts of a

municipality, and because no exception to discretionary act immunity applies, see supra

§ III(A)(2), summary judgment is granted to defendants as to Whitnum's claims of

negligent infliction of emotional distress.  See id.; see also Doe v. Town of Greenwich,

3:18-CV-01322, 2019 WL 4804922, *10 (D. Conn. Sept. 30, 2019) ("Accordingly, no

exception to discretionary immunity is applicable and the Officers are entitled to

immunity on the Plaintiff's negligence claims. The motion to dismiss the negligent

infliction of emotional distress claim is granted.").

Whitnum's intentional infliction of emotional distress similarly fails.  A plaintiff

asserting an intentional infliction of emotional distress claim must prove:

> (1) that the actor intended to inflict emotional distress or that he knew or
> should have known that emotional distress was the likely result of his
> conduct; (2) that the conduct was extreme and outrageous; (3) that the
> defendant's conduct was the cause of the plaintiff's distress; and (4) that
> the emotional distress sustained by the plaintiff was severe.

Watts v. Chittenden, 301 Conn. 575, 586 (2011) (internal quotations omitted).

Whitnum has not presented evidence upon which a reasonable jury could find

that she proved any of these elements.  Notably, no reasonable jury could find,

based on the undisputed record, that the defendants harbored the requisite

intent.  Detective Crowther simply received a complaint, investigated the

complaint, and took measures in accordance with standard law enforcement

protocol.  Whitnum has produced no evidence to support an inference that he did

so with the intent to inflict emotional distress.

15

As to Chief Cappiello, she merely states that "[his] behavior resulted in the mushrooming of this issue into this a four year and counting legal matter." Pl. Mot. at 42. However, she fails to provide any evidence demonstrating that Cappiello was involved in her arrest or that he acted with the requisite intent.[9]

Because Whitnum has presented no evidence upon which a reasonable jury could find that the defendants harbored an intent to inflict emotional distress, defendants' Motion for Summary Judgment is granted as to Whitnum's claims of intentional infliction of emotional distress.

B.     New Claims in the Amended Complaint

In her Amended Complaint, Whitnum reasserts the above claims and also asserts additional causes of action for a First Amendment violation, and a violation of her right to due process under section 1983 of title 42 of the United States Code. Am Compl. ¶¶ 34–40. In addition, her Amended Complaint added a claim of conspiracy under section 1985 of title 42 of the United States Code, and a defamation claim. These claims, like those addressed above, fail to survive summary judgment.

---

[9] Because Whitnum has failed to produce any evidence upon which a reasonable jury could find that any municipal employee was negligent, she has failed to raise a question of material fact as to the liability of the Town of Woodbridge pursuant to section 52-557n of the Connecticut General Statutes (extending liability to municipalities for "negligent acts or omissions of . . . any employee, officer or agent thereof acting within the scope of his employment or official duties").

As to Whtinum's intentional infliction of emotional distress claim, the Connecticut Supreme Court has specifically held that, under section 52-557n, a municipality cannot be held liable for its employee's intentional infliction of emotional distress. Pane v. City of Danbury, 267 Conn. 669, 685-686 (2004); see also Miles, 719 F. Supp. 2d at 218 ("Ms. Miles has no claim for intentional infliction of emotional distress against the City of Hartford. The Connecticut Supreme Court has clearly held that a political subdivision of the state is immune to suit based on intentional infliction of emotional distress by an employee."). Therefore, the town is immune to its employee's intentionally tortious acts, were any committed.

16

1.     First Amendment violation

The Amended Complaint alleges a "[v]iolation of the Constitution right FIRST
AMENDMENT."  Am. Compl. ¶ 34.  In her Cross Motion for Summary Judgment,
Whitnum clarifies that this claim relates to the defendants' alleged retaliation against
Whitnum's political views.  See Pl. Mot. at 3, 4.  To prevail on such a First Amendment
claim, a plaintiff must prove that "(i) he has an interest protected by the First
Amendment; (ii) the defendant's actions were motivated by or substantially caused by
the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the
exercise of the plaintiff's First Amendment rights.  Connell v. Signoracci, 153 F. 2d 74,
79 (2d Cir. 1998).

Here, on summary judgment, Whitnum has failed to come forward with evidence
upon which a reasonable jury could find that the actions of the defendants in seeking a
warrant for her arrest were motivated by her political views.  In support of her First
Amendment claim, Whitnum asserts that, "[i]t seems highly unlikely that [defendants]
were unaware of Whitnum's public stands."  Pl. Mot. at 4.  Even if defendants knew
about Whitnum's political views, Whitnum's bald assertions do not present enough
evidence upon which any reasonable jury could find that the defendants retaliated
against Whitnum for exercising her First Amendment right.  And there is no evidence—
other than Whitnum's unsubstantiated speculation—that any defendant knew of her
political views.

Summary judgment is therefore granted as to Whitnum's First Amendment claim
as to Detective Crowther and Chief Cappiello.  Because Whitnum has failed to provide
evidence upon which a reasonable jury could find that any municipal employee violated

her First Amendment right, summary judgment is also granted on this claim as to the Town of Woodbridge.  See Wray v. City of New York, 490 F.3d at 195 ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.") (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983)).

　　　　2.　　Due Process violation

In her Amended Complaint, Whitnum alleges "Violation of the Constitution right to Due Process Specifically the Due Process Clause of the FIFTH and FOURTEENTH AMENDMENT of the United States Constitution."  Am. Compl. ¶ 37.  Whitnum's Memorandum clarifies that she "is asking the Court to recognize a substantive due process right to be free from criminal prosecution except on probable cause."  Pl. Mem. in Supp. of Mot. at 59.

The Supreme Court has held that, where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. 386, 395 (1989).  Since Whitnum's allegations set forth in support of her due process claim are duplicative of those forming the basis of her Fourth Amendment false arrest claim—a claim which this court has already dismissed, see supra § IV(A)(1)—no general substantive due process claim is available to her.  See Bryant v. City of New York, 404 F.3d 128, 135 (2d Cir. 2005).  Thus, summary judgment is granted to defendants on Whitnum's due process claims.

3.      Conspiracy

In order to survive defendants' Motion for Summary Judgment on her claim of

section 1985 conspiracy, Whitnum must come forward with evidence upon which a

reasonable jury could find that there existed "(1) a conspiracy; (2) for the purpose of

depriving a person or class of persons of the equal protection of the laws, or the equal

privileges and immunities under the laws; (3) an overt act in furtherance of the

conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a

right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146

(2d Cir. 1999) (citing 42 U.S.C. § 1985(3)).  "The essence of a conspiracy claim is a

combination of two or more persons acting in concert to commit an unlawful act, the

principal element of which is an agreement by the parties to inflict wrong upon or injure

another." Almonte v. Florio, No. 02-CV-6722 (SAS), 2004 WL 60306, at *4 (S.D.N.Y.

Jan. 13, 2004) (summary judgment in defendant's favor on a conspiracy claim was

appropriate where the plaintiff did not demonstrate the existence of an agreement); see

also Zaidi v. Amerada Hess Corp., 723 F. Supp. 2d 506, 515 (E.D.N.Y. 2010)

("[C]onspiracy claims . . . must contain factual allegations. Conclusory or vague

allegations of conspiracy are insufficient to survive a motion for summary judgment.").

Here, liberally construing Whitnum's pro se Amended Complaint and

submissions, Whitnum has failed to come forward with evidence upon which a

reasonable jury could find that a conspiracy existed.  Whitnum asserts that "she could

convince a jury that defendants were doing the bidding of [Judge] Emons," and that the

lack of due process, lies in the arrest warrant, and defamation "smacks of a concerted

effort to stifle [Whitnum's] First Amendment rights."  Whitnum's Reply to Defendant's

Objection (Doc. No. 264) at 5.  However, Whitnum provides no evidence upon which a reasonable jury could find that this conspiracy existed or that any defendant had the intent to deprive her of a constitutional right.  Because bald assertions, unsupported by evidence, are insufficient to defeat a well-founded motion for summary judgment, see Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996), summary judgment is granted to the defendants as to Whitnum's conspiracy claims.

4.   Defamation

In her Amended Complaint, Whitnum alleges two counts of defamation and two counts of defamation per se against the defendants.  Am. Compl. ¶¶ 38, 39.  In her Cross-Motion for Summary Judgment, Whitnum argues that "[t]he false arrest is defamation.  The report of alleged anti-Semitic statement is farther [sic] proof of defamation and malice."  Pl. Mot. at 61.  In her Reply to Defendants' Objection ("Pl. Reply to Def. Obj.") (Doc. No. 264), Whitnum alleges that a Case/Incident Report filed by Crowther contained defamatory statements about her.[10]  Pl. Reply to Def. Obj. at 9.

Crowther's Report states: "During the course of booking Lisa Whitnum-Baker on August 11, 2015, Whitnum-Baker kept interrupting me during the booking process with meaningless rantings and ravings about her running for office, lawsuits she has filed, and topics of similar nature."  See Exhibit P (Doc. No. 258).  According to Whitnum, "[t]he choice of the word 'ranting' is defamation."  Pl. Reply to Def. Obj. at 9.  Next, Whitnum claims that the allegedly false information contained in the arrest warrant (involving the existence of an order of protection) is further evidence of defamation.  Id.

---

[10] As a preliminary matter, the court notes that Whitnum's defamation claims are focused on statements made only by Crowther.  Summary judgment is therefore granted on this claim as to Chief Cappiello.

at 9.  Finally, Whitnum alleges that defendants "twisted this litigant's words" in order "to say something disparaging about 'Jews.'"  Id. at 9.  Whitnum provides no further information as to the nature of these statements.

Section 52-597 of the Connecticut General Statutes states that "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of."  As the statute of limitations in defamation actions "begins to run on the date of publication," Cweklinski v. Mobil Chemical Co., 267 Conn. 210, 224 (2004), any defamatory statements made or written more than two years before the plaintiff requested leave to amend her Complaint on October 16, 2018, to add her claims for defamation, are barred by the applicable statute of limitations,  see Mot. for Leave to Amend Compl. (Doc. No. 105).  For these reasons, the statements made by defendants around the time of her August 11, 2015 arrest are barred by the statute of limitations.  Although Whitnum does not specify when defendants made the allegedly defamatory statements involving her supposed anti-Semitic views, Whitnum has not presented any evidence to suggest that defendants had any interaction with plaintiff after her arrest on August 11, 2015.  Whitnum's defamation claims are thus barred by the statute of limitations.

The one exception would be if Whitnum's Amended Complaint related back to her initial Complaint under Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides that "[a]n amendment of a pleadings relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c).  The central inquiry under Rule 15

21

is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Stevelman v. Alias Research Inc., 174 F. 3d 79, 86 (2d Cir. 1999) (internal quotation and citation marks omitted). "[C]laims that are based on an 'entirely distinct set' of factual allegations will not relate back." Slayton v. Am. Express. Co., 460 F.3d 215, 228 (2d Cir. 2006) (quoting Nettis v. Levitt, 241 F.3d 186, 193 (2d Cir.2001)).

Here, Whitnum's defamation claims do not relate back. To prevail on her defamation claims, Whitnum would be required to allege an entirely distinct set of operational facts involving specific statements allegedly made by the defendants. Even more, her initial Complaint does not contain any factual allegations to support her defamation claims or reasonably put defendants on notice that such claims may be raised. As defendants were not reasonably on notice of the defamation claims at any time before August 11, 2017, and because the claims are based on an entirely distinct set of factual allegations, Whitnum's defamation claims are subject to dismissal as they do not relate back.

Even, assuming arguendo, that Whitnum's defamation claims relate back to the original Complaint and therefore are not barred by the statute of limitations, the court nonetheless concludes, on the record before it, that no reasonable jury could find that Whitnum has created a material issue of fact as to a prima facie case of defamation. To establish a prima facie case of defamation, the plaintiff must demonstrate that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third

person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Gambardella v. Apple Health Care, Inc., 291 Conn. 620, 627–28 (2009).  Furthermore, it is well-established that the truth of an allegedly defamatory statement of fact is an absolute defense.  Goodrich v. Waterbury Republican–American, Inc., 188 Conn. 107, 112–13 (1988).  Statements made in police reports and arrest applications are similarly protected by the qualified privilege afforded statements made during an ongoing police investigation.  See Hopkins v. O'Connor, 282 Conn. 821, 828–831 (2007).

As to the statements made in the arrest warrant involving the existence of an active order of protection, those statements are protected by the absolute defense of truth.  These statements, along with the Case/Incident's description of Whitnum's "ranting", are also protected by the qualified privilege afforded statements made during an ongoing police investigation.  See Hopkins, 282 Conn. at 830 ("We conclude that, because the statement contained in his incident report fell within the scope of a judicial proceeding, the defendant ultimately may be protected by qualified or absolute immunity for that statement.").  As to the statements involving Whitnum's supposed anti-Semitic views, Crowther's Case/Incident Report simply restates Whitnum's unsolicited remark that "[Judge Emons] is a Jew first and a judge second."  Exhibit P (Doc. No. 258).  This statement, like the ones above, are protected by qualified immunity.  See Kelley v. City of Hamden, No. 3:15-CV-0977 (AWT), 2017 WL 3763839, at *3 (D. Conn. Aug. 30, 2017) ("The plaintiff's defamation claim arises out of information contained in police reports and the arrest warrant application. Such reports are protected by the qualified privilege afforded statements made during an ongoing police investigation.").  "[T]he malice required to overcome a qualified privilege in defamation cases is malice in fact or

actual malice." <u>Hopkins</u>, 282 Conn. at 845 (citations omitted). However, Whitnum has failed to present evidence that creates a genuine issue of material fact as to whether the Crowther harbored malice towards her.  For this reason, defendants' Motion for Summary Judgment is granted as to Whitnum's defamation claims.

## V.     CONCLUSION

For the reasons stated above the defendants' Renewed Motion for Summary Judgment (Doc. No. 203) is **GRANTED**. Whitnum's Cross-Motion for Summary Judgment (Doc. No. 227) is denied as moot in light of the grant of defendants' Renewed Motion for Summary Judgment.

Furthermore, Whitnum's Motion for Leave to File (Doc. No. 253) is granted. Whitnum's Motion to Strike (Doc. No. 214) and Motion for Settlement Conference (Doc. No. 284) are denied as moot.

**SO ORDERED**.

Dated at New Haven, Connecticut this 25th day of November 2019.


 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge